IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| *In re:*<br><br>*Data Security Cases Against NELNET SERVICING, LLC* | Case No. 4:22-cv-3191 |

### DEFENDANT NELNET SERVICING, LLC'S
### OPPOSITION TO EDFINANCIAL'S MOTION TO STAY

Defendant Nelnet Servicing, LLC ("Nelnet") submits this Brief in Opposition of Edfinancial Services, LLC's ("EdFinancial") Motion to Stay litigation of the Consolidated Amended Class Action Complaint (the "Motion for Stay") against itself. Nelnet's Motion to Dismiss Plaintiffs' Consolidated Amended Complaint (the "Motion to Dismiss") filed concurrently with this Brief explains in detail that the majority of the thirty-three causes of action included in the Consolidated Amended Class Action Complaint (the "Complaint") cannot be applied to Nelnet due to the absence of any functional relationship between Nelnet and Plaintiffs. Nelnet cannot effectively defend itself without noting such claims are not properly assessed against Nelnet and Plaintiffs are not expected to voluntarily abandon these claims asserted against EdFinancial; many of which authorize statutory damages.

Although Nelnet maintains neither Defendant has liability under any of the claims asserted, Nelnet cannot interpose defenses for EdFinancial. Accordingly, the viability of these claims against EdFinancial should be resolved, and if necessary, EdFinancial should be subject to party discovery so the claims may be resolved. Nelnet also maintains that allowing litigation to proceed against Nelnet only, or on a different schedule against Nelnet than against EdFinancial, would be

1

inequitable and inevitably prove unworkable as it would cause delay, prevent an orderly resolution of the case, and not promote judicial economy.

I.  **RELEVANT FACTUAL BACKGROUND**

The Complaint is brought on behalf of 26 Plaintiffs (the "Plaintiffs") alleging claims arising out of a July 2022 cyber-attack affecting an online platform that Nelnet licensed to EdFinancial Services, LLC ("EdFinancial") and the Oklahoma Student Loan Authority ("OSLA") to service student loans. Complaint ¶ 74 (the "Incident"). Nelnet did not directly service any of the Plaintiffs' loans; it provided EdFinancial and OSLA with an application programming interface ("API") that was integrated directly into EdFinancial's and OSLA's websites. *Id.* ¶¶ 50-53. Indeed, as acknowledged by Plaintiffs in the Complaint, Nelnet had no relationship or contact with the Plaintiffs. *Id.* ¶ 54. Notice of the Incident was sent out to the Plaintiffs and the putative class of individuals they seek to represent on EdFinancial and OSLA letterhead. Complaint ¶ 76-77.

II.  **ARGUMENT**

In general, "the federal judiciary has an obvious interest in every litigation in having the whole case tried at one time." *Hargrave v. Oki Nursery, Inc.*, 646 F.2d 716, 720 (2d Cir. 1980). Accordingly, when evaluating whether to grant a stay, a "Court will consider factors such as the economy of judicial resources and balancing the potential prejudice, hardship, and inequity to the parties." *Blair v. Douglas Cnty.,* No. 8:11CV349, 2013 WL 2443819, at *1 (D. Neb. June 4, 2013); *see also Doe v. Univ. of Nebraska*, No. 4:18CV3142, 2020 WL 5057767, at *1 (D. Neb. Aug. 27, 2020) ("Ultimately, [t]he decision granting or denying a stay calls for the exercise of judgment, which must weigh competing interests and maintain an even balance.").

Further, "the party seeking the stay bears the burden to show that there is pressing need for the delay, and that . . . the other party . . . will [not] suffer harm from entry of the order." *HCI Distribution, Inc. v. Peterson*, No. 8:18CV173, 2018 WL 11317093, at *1 (D. Neb. Aug. 2, 2018)

(internal citations omitted). When evaluating whether a stay is appropriate, a Court must look into whether the stay would "present a clear tactical disadvantage to the non-moving party." *Phil-Insul Corp. v. Airlite Plastics, Inc.*, No. 8:12CV151, 2012 WL 5193814, at *2 (D. Neb. Oct. 18, 2012). Here, EdFinancial has failed to establish any pressing need for a stay, nor shown a lack of harm to Nelnet.

### 1. Nelnet will be Prejudiced if the Case is Stayed as to EdFinancial.

Although Nelnet is challenging Plaintiffs' standing, which may result in a dismissal of the case against all Defendants in its entirety, as further discussed in detail in Nelnet's Motion to Dismiss, Plaintiffs' contract claim, unjust enrichment claim, breach of confidence claim, and <u>all</u> of their statutory claims as to Nelnet separately fail on account of the lack of privity or any consumer relationship between Nelnet and Plaintiffs. *See* Motion to Dismiss §§ III(B)(3-5); III(B)(7)(a-z). If the Court agrees with Nelnet's arguments, as many as 29 of the 33 causes of action at issue could be dismissed pursuant to FRCP 12(b)(6) as to Nelnet, but not dismissed entirely to the extent they may still remain pending as to Edfinancial.

EdFinancial's own arguments about cases needing to proceed against the "true defendant," (*see* Motion for Stay at 10), is exactly why a stay is inappropriate here. Allowing the litigation to proceed against Nelnet only would prevent a determination of whether any, or some, of these 29 claims not viable against Nelnet should proceed as to EdFinancial—the only Defendant they are potentially viable against. Uncertainty on this issue would, at a minimum, complicate discovery as Nelnet may effectively have to stand in EdFinancial's shoes and conduct discovery on up to 29 claims not viable against Nelnet, while neither Plaintiffs nor Nelnet would be unable to conduct party discovery on EdFinancial regarding these issues. Even if Nelnet could elicit information during discovery that would be potentially helpful in seeking dismissal of these claims, Nelnet would be unable to effectively seek dismissal of these claims without EdFniancial's participation,

who could properly seek to dismiss them. As a practical matter, the presence of these unresolved claims could potentially hamper efforts towards a negotiated resolution of the litigation.

Likewise, Plaintiffs may attempt to seek otherwise unnecessary and potentially burdensome discovery from Nelnet regarding these unresolved claims on the assumption they may one day move forward, and Nelnet may be forced to address these claims until they are eventually resolved, delaying resolution of this matter as to Nelnet. In requesting a stay, "[i]f there is even a fair possibility of harm to the opposing party, the moving party must make out a clear case of hardship or inequity in being required to go forward." *Yufa v. Lighthouse Worldwide Sols. Inc.*, No. 09-CV-00968-MEJ, 2015 WL 150757, at *1 (N.D. Cal. Jan. 9, 2015). Here, EdFinancial has failed to make out a clear case of hardship or inequity as to it, especially under these circumstances, where EdFinancial is the only Defendant able to obtain a complete dismissal up to 29 of the 33 claims pending against Defendants, and which are not viable against Nelnet.

### 2. Staying the Case as to EdFinancial Will Not Simplify Issues in the Litigation.

EdFinancial's Motion for Stay focuses exclusively on the negligence causes of action asserted by Plaintiffs, and completely disregards the other 31 claims Plaintiffs assert. *See, e.g.,* Motion for Stay at 11 ("Plaintiffs claims against Edfinancial are grounded in their belief that Edfinancial negligently entrusted Nelnet with their personal information or that EdFinancial negligently supervised Nelnet once Nelnet possessed their data."). As discussed above, rather than simplifying matters, a stay of this litigation as to EdFinancial will only create uncertainty in the case moving forward and serve to complicate the issues in the case.

### 3. EdFinancial Has Not Established Prejudice Requiring a Stay.

EdFinancial argues that Plaintiffs' Complaint is deficient because of the "shotgun" nature of the pleadings, and a lack of required specificity in the allegations — Nelnet agrees. However,

4

Nelnet has independent defenses to up to 29 of 33 claims containing such "shotgun" allegations, and thus need not challenge these claims on this basis. The appropriate remedy for any prejudice suffered by EdFinancial in being named a Defendant in a procedurally or substantively deficient Complaint is not to have this action stayed against it, but to file its own Motion to Dismiss. Further, EdFinancial's claims of a risk of prejudice if the case against Nelnet and EdFinancial were to be tried together is premature, as EdFinancial admits this concern is "distant on the horizon." *Id.* at 14. Before knowing what claims might eventually be brought before a factfinder, there are a number of hurdles Plaintiffs will have to overcome, including having a class certified and surviving a motion for summary judgment. More germane at present, however, is the issue of which claims *should even survive the pleading stage*, and an answer to that question will not be achieved if the case is stayed as to EdFinancial.

### 4. Plaintiffs Are Seeking Discovery From Nelnet, Making a Stay Inappropriate.

Before the Court has set a date for a scheduling conference or issued a scheduling order, Plaintiffs have served a first set of Requests for Production pursuant to FRCP 34 to Nelnet. *See* ECF 59 (Certificate of Service as to Plaintiffs' First Set of Requests for Production of Documents). Contrary to EdFinancial's self-serving assertions that "Nelnet is the only entity in possession of information necessary for Plaintiffs to attempt to prove their claims via discovery," *see* Motion for Stay at 2, EdFinancial is the only Defendant who may have discoverable information relevant to up to 29 of 33 claims; Plaintiffs cannot bring these claims against Nelnet, as these claims require a relationship between then plaintiff and defendant, and Plaintiffs admit they were unaware of Nelnet's involvement until they received initial notice of the incident from EdFinancial and OSLA. Complaint, ¶ 54.

**5. A Stay of the Case as to EdFinancial Will Not Promote Judicial and Party Efficiency.**

A stay is inappropriate where, as here, it would not promote efficient use of the Court's, Plaintiffs' or Nelnet's resources, and would also serve to delay the collection of necessary information or promote the promulgation of potentially unnecessary discovery. *See, e.g., Davis, v. Fiserv, Inc.*, No. 4:19-00686-CV-RK, 2019 WL 13290924, at *2 (W.D. Mo. Oct. 16, 2019) (denying request for a stay where it would stall progress in the case which is not in the interests of judicial economy). Again, in making the claim that a stay would result in "the parties avoid[ing] engaging in duplicative, costly, and ultimately irrelevant discovery," *see* Motion for Stay at 15, EdFinancial is addressing only the Plaintiffs' negligence causes of action and disregarding the other 31 claims.

EdFinancial ignores the likelihood that, even as to the two negligence causes of action, it may have unique relevant discoverable information related to its relationship to Plaintiffs or Nelnet. Such information is relevant not only to Plaintiffs' claim for negligence as to EdFinancial and Nelnet, but also potentially relevant to Nelnet's defenses to this claim. Rather than a stay, a more efficient way to address any concerns EdFinancial has about unnecessary or costly discovery efforts would be for the Court to adopt a discovery plan tailored to specific claims, topics or party concerns to provide for the potential sequential resolution of particular issues or claims during the litigation.

## III. CONCLUSION

For the foregoing reasons, Nelnet maintains that the case should proceed against EdFinancial at this juncture.

Dated: April 24, 2023

BY: **MULLEN COUGHLIN LLC**

/s/ Claudia D. McCarron*
Claudia D. McCarron
James F. Monagle
Mullen Coughlin LLC
426 W. Lancaster Avenue, Suite 200
Devon, PA 19333
(267) 930-4787
cmccarron@mullen.law

*Admitted Pro Hac Vice*

**PERRY, GUTHERY LAW FIRM**
Charles F. Kaplan
Daniel F. Kaplan
233 South 13th Street
Suite 1400
Lincoln, NE 68508
(402) 476-9200
ckaplan@perrylawfirm.com

7

**CERTIFICATE OF SERVICE**

      I hereby certify that on April 24, 2023, a copy of this motion was filed electronically with the United States District Court for the District of Nebraska and served on all counsel of record through the CM/ECF system.

                                            */s/ Claudia D. McCarron*
                                            Claudia D. McCarron

**CERTIFICATE OF COMPLIANCE WITH NEBRASKA CIVIL RULE 7.1(d)(3)**

      I hereby certify that the foregoing Brief in Opposition (the "Brief") complies with the word-count limit described in NECivR. 7.1(d)(1)(A). The actual number of words in the Brief, including all text, is 1,989 words. Undersigned counsel relied on the word count feature of Microsoft Word for Microsoft 365 MSO (Version 2302 Build 16.0.16130.20374) 32-bit to prepare this Brief.

                                                        */s/ Claudia D. McCarron*
                                                        Claudia D. McCarron