UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| In Re:<br><br>Data Security Cases Against NELNET SERVICING, LLC,<br><br>Defendant. | Case No. 4:22-cv-3191 |

**REPLY BRIEF IN FURTHER SUPPORT OF KATHLEEN CARR,
KEEGAN KILLORY, AND KELSIE POWELL'S MOTION TO INTERVENE**

Movants Kathleen Carr, Keegan Killory, and Kelsie Powell (collectively, "Movants"), who are plaintiffs in the class action lawsuit captioned *Carr et al. v. Oklahoma Student Loan Authority and Nelnet Servicing, LLC*, No. 5:23-cv-00099 (W.D. Okla.) (the "Oklahoma Action") by and through their undersigned counsel ("Movants' Counsel"), respectfully submit this Reply Brief in Further Support of Kathleen Carr, Keegan Killory, and Kelsie Powell's Motion to Intervene.

**I.   ARGUMENT**

**A.  Nelnet's Response to Plaintiffs' Motion to Intervene is Untimely.**

As a threshold issue, Nelnet Servicing LLC's ("Nelnet") response to Movants' Motion to Intervene is untimely and should be stricken. *See* ECF No. 86. Movants filed their Motion to Intervene on March 12, 2024. *See* ECF Nos. 83 and 84. Pursuant to Local Civil Rule 7.1(b)(1)(B), Nelnet had two (2) weeks to respond, or until March 26, 2024. Nelnet's response was filed March 27, 2024. *See* ECF No. 86. According to Local Civil Rule 7.1(b)(1)(C), Nelnet's "[f]ailure to file an opposing brief is not considered a confession of a motion but precludes [Nelnet] from contesting [Movants'] statement of facts." Therefore, Nelnet effectively conceded Section II of Movants'

1

Motion to Intervene (ECF No. 84).

### B. OSLA Can Only be Sued in Oklahoma.

The Oklahoma Action was not initiated to challenge Interim Class Counsel's authority nor rival the Nebraska Action—it was initiated in Oklahoma because OSLA could *only* be sued in Oklahoma. As a public trust of the State of Oklahoma OSLA is subject to the Oklahoma Governmental Tort Claims Act ("OGTCA"), which specifically delineates where OSLA can be sued. *See* 51 O.S. § 163(A).[1] Under the OGTCA, Plaintiffs could only sue OSLA in Oklahoma and could not sue OSLA in Nebraska. *See id.* Thus, when Nelnet moved to transfer the Oklahoma Action to this Court, the United States District Court for the Western District of Oklahoma denied transferring the action to Nebraska because Movants were not entitled to bring their action in Nebraska when it was initially filed. *See* ECF No. 41.[2] The only avenue Movants had available to pursue their claims against OSLA was the Oklahoma Action. Even now, the Oklahoma Action remains the only action that properly names OSLA as a defendant and is the only pending action that has jurisdiction over OSLA.

Without jurisdiction over OSLA, the Court cannot approve a proposed settlement that includes OSLA. The Supreme Court has held, "[a] court is powerless to approve a proposed class settlement if it lacks jurisdiction over the dispute…." *Frank v. Gaos*, 139 S. Ct. 1041, 1046, 203 L. Ed. 2d 404 (2019). "An approved settlement takes the form of a judgment of the court, and without both Article III power and proper subject-matter jurisdiction, the court cannot act." *Schumacher v. SC Data Ctr., Inc.*, 912 F.3d 1104, 1105 (8th Cir. 2019). Therefore, when a Court

---

[1] "Venue for actions against the state within the scope of this act shall be either the county in which the cause of action arose or Oklahoma County, except that a constitutional state agency, board or commission may, upon resolution filed with the Secretary of State, designate another situs for venue in lieu of Oklahoma County." 51 O.S. § 163(A).
[2] ECF No. refers to a document filed in the Oklahoma Action.

lacks subject matter jurisdiction, it has no authority to approve a proposed settlement. This Court lacks subject matter jurisdiction over OSLA and therefore, cannot approve a settlement OSLA is a party to.

### C. Interim Class Counsel Are and Were Aware of the Oklahoma Action.

As a point of clarification, Movant's Counsel did not "decide[] to lie in wait in Oklahoma" for their "chance to extract [their] tax" on a forthcoming settlement. ECF No. 85 at p. 4. Movants' Counsel personally notified Interim Class Counsel of the Oklahoma Action shortly after it was filed.[3] On February 8, 2023, Counsel for Plaintiffs in the Oklahoma Action emailed Anthony Christina, one of the attorneys serving as Interim Class Counsel, (before Nelnet tried to transfer the Oklahoma Action to Nebraska) and stated, "I would like to move forward with an agreement to work together…."[4] After initial discussions, Mr. Christina informed Movants' Counsel that Interim Class Counsel were not interested in working together cooperatively.[5] Following this interaction, Movants had two choices, they could either: (i) dismiss the Oklahoma Action and "hope" the Nebraska Action could develop jurisdiction over OSLA and would seek relief in some way from OSLA; or (ii) Movants could pursue relief from OSLA. Movants chose the latter. It would have been a disservice to Movants and the putative Class to dismiss the Oklahoma Action and "hope" the Nebraska Action would somehow seek relief from OSLA. Thus, Movants selected the best choice out of limited options.

Movants were not only transparent with Interim Class Counsel about the Oklahoma Action, but Movants were also transparent with the Western District of Oklahoma about the Nebraska

---

[3] *See* Ex. 1 (referencing a phone call in which Movant's Counsel contacted Interim Class Counsel about the Oklahoma Action).
[4] *Id.*
[5] *Id.*

3

Action. Movants filed a "Notice of Related Cases" (ECF No. 23)[6] in the Oklahoma Action specifically tagging the Nebraska Action *before* Nelnet filed its Motion to Transfer.[7] Movants fulfilled their obligation to inform the Western District of Oklahoma of the Nebraska Action. Interim Class Counsel, as well as Nelnet's Counsel who made appearances in both actions, had the responsibility to notify this Court of the Oklahoma Action.

In sum, it was no surprise to Interim Class Counsel nor Nelnet when Movants sought to intervene—Interim Class Counsel and Nelnet have known of the Oklahoma Action for over a year and are both are well aware of the progress and success Movants' Counsel have had in the Oklahoma Action. This is how Interim Class Counsel knew of the favorable Motion to Dismiss Orders in the Oklahoma Action that they submitted to this Court on October 26, 2023. *See* ECF No. 80. Movants were dutifully pursuing their claims when they were blindsided by the actions of Nelnet, OSLA, and Interim Class Counsel.[8] Despite this, Movants' Counsel remain willing and ready to work cooperatively for the benefit of the putative class and are hopeful a path forward can be forged.

### D. Intervention is Still Warranted.

The responses filed by Nelnet and Interim Class Counsel, whether timely or not, confirm that Movants' interests will be impaired by the disposition of the Nebraska Action and Movants are not adequately protected by Interim Class Counsel.

Interim Class Counsel claim any impairment of Movants' rights is "wholly speculative and premature" because "a potential settlement has not yet been reached—but *may* occur at some point

---

[6] Referenced ECF No. refers to a document in the Oklahoma Action.
[7] *See also* ECF No. 31 (Amended Notice of Related Cases) in the Oklahoma Action.
[8] Movants' Counsel have continued to pursue discovery from OSLA and Nelnet. Nelnet has made two document productions totaling over 1,000 pages and OSLA had made one document production. Movants also recently issued Notice of Depositions and Subpoenas.

4

in the Consolidated Action, *may* encompass the claims in the *Carr* Action, and *may* be insufficient." ECF No. 85 at p. 6 (emphasis in original). But what Interim Class Counsel omit (or perhaps misrepresent), is what Nelnet confirms—"the Parties in the Nebraska Action and OSLA reached a settlement in principle in writing with certain details remaining to be addressed" which will "encompass all of Movant's claims against OSLA." ECF No. 86 at pp. 3–4. It is very odd that Interim Class Counsel and Nelnet cannot agree if a settlement is still on the table or if one even exists. This discrepancy raises serious concerns about the veracity of Nelnet's Counsel and Interim Class Counsel. Nonetheless, Nelnet admits Movants' interests will be impaired, which weighs strongly in favor of allowing intervention.

Movants have also overcome the presumption that Interim Class Counsel are adequate. To date, Interim Class Counsel and Nelnet have worked in tandem to (i) conceal the Oklahoma Action from this Court; and (ii) defy a court order by seeking to settle Movants' claims in the Nebraska Action, knowing e Judge Russell in the Western District of Oklahoma explicitly denied transfer of the Oklahoma Action to Nebraska, to facilitate a reverse auction. Interim Class Counsel are (or were) attempting to settle claims against OSLA, who is not a named party, in a court without jurisdiction, so that Nelnet (and OSLA) can avoid a fair, reasonable and adequate settlement with a larger payout. This is practically the definition of a reverse auction. Movants believe if Nelnet and Interim Class Counsel are confident a reverse auction did not occur, an evidentiary hearing should be held following discovery that will provide transparency to the process. Certainly, these elusive actions do not support the adequacy of Interim Class Counsel. Intervention is necessary to ensure there is transparency, accountability, and honesty in the proceedings going forward.

### E.  Enjoining Prosecution of the Oklahoma Action is Improper.

Despite Interim Class Counsel's arguments to the contrary, the All Writs Act is not

5

applicable here. "Entitlement to a preliminary injunction under the All Writs Act requires consideration of the same factors as a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure, that is, (1) the threat of irreparable harm to the movant; (2) the balance between this harm and the injury caused by granting the injunction; (3) the probability of succeeding on the merits; and (4) the public interest." *Farm-To-Consumer Legal Def. Fund v. Sebelius*, No. C 10-4018-MWB, 2012 WL 219376, at *2 (N.D. Iowa Jan. 23, 2012) (citing *Dataphase Sys. v. C.L. Sys.*, 640 F.2d 109, 113 (8th Cir.1981). Interim Class Counsel fail to address any of these factors in their Response. As such, Interim Class Counsel have yet to make a clear good faith argument warranting a preliminary injunction under the All Writs Act.

Nevertheless, the All Writs Act was "designed for situations where the proposed settlement and release of claims in another judicial district would interfere with the MDL Court's disposition of those same claims." *In re Checking Account Overdraft Litig.*, 859 F. Supp. 2d 1313, 1322 (S.D. Fla. 2012). Here, there is no MDL proceeding nor has this action progressed beyond a Motion to Dismiss. Rather, Interim Class Counsel, in direct contrast to Nelnet's Counsel, are adamant that there is no class action settlement to speak of.[9] Therefore, this argument fails because according to Interim Class Counsel, there is no proposed settlement that would interfere with this Court's disposition of the same claims.

Even if there were a settlement (and an MDL), the mere existence of a more advanced parallel proceeding does not suffice to enjoin the proceeding under the All Writs Act. *See, e.g., Grider v. Keystone Health Plan Cent., Inc.*, 500 F.3d 322, 331 (3d Cir. 2007)("[T]here is simply no support for the proposition that a court may enjoin parties from participating in or reaching a

---

[9] Ian Sloss informed the Court on March 13, 2024, that the parties "have no settlement to move for preliminary approval of." *See* Ex. 2.

6

bona fide settlement in another federal court that may dispose of claims before it—particularly when there is no pending settlement in the enjoining court and the other federal court is an MDL court charged with attempting to reach a global settlement."). Rather, federal courts typically grant injunctions under the All Writs Act *only* where the injunction is necessary to protect a pending or imminent settlement in the enjoining court. *See Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1099-100 (9th Cir. 2008) (finding injunction inappropriate where enjoining court was not approaching settlement); *In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2012 WL 5055810, at *13 (D. Minn. Oct. 18, 2012) (enjoining other litigation only where there was an actual settlement presented to the court); *Pipes v. Life Invs. Ins. Co. of Am.*, 711 F. Supp. 2d 964, 966–67 (E.D. Ark. 2009) ("If the Court had certified a class or conditionally approved a class settlement in this case, the state-court proceedings might present a genuine threat to the Court's jurisdiction—but such is not the case."). As Interim Class Counsel concede there is no settlement, rendering application of the All Writs Act as unnecessary.

## II.   CONCLUSION

For the reasons set forth above, Movants respectfully request they be permitted to intervene in the Nebraska Action to seek a stay of the Nebraska Action pending the outcome of the Oklahoma Action. Alternatively, Movants request they be permitted to intervene to seek appointment of William B. Federman of Federman & Sherwood as Interim Lead Class Counsel or Interim Co-Lead class counsel over all claims, settlements, and releases concerning OSLA and Nelnet.[10]

Dated: April 1, 2024                                             Respectfully submitted,

/s/ *William B. Federman*
William B. Federman
**FEDERMAN & SHERWOOD**
10205 N. Pennsylvania Ave.

---

[10] *See* Ex. 3 (Firm Resume of Federman & Sherwood).

>Oklahoma City, Oklahoma 73120
>(405) 235-1560
>(405) 239-2112 (facsimile)
>*wbf@federmanlaw.com*
>**Counsel for Movants & the Putative Class**

## CERTIFICATE OF SERVICE

I hereby certify that on April 1, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

>*/s/ William B. Federman*
>William B. Federman

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES

In accordance with Local Civil Rule 7.1(d)(3), I hereby certify that this Reply is <u>2,346</u> words and therefore complies with the 6,500-word limit proscribed by Local Civil Rule 7.1(d)(1)(A). In computing the word count I relied on the word-count function of my word-processing software and hereby certify that the function was applied to include all text, including the caption, headings, footnotes, and quotations. The name and version of the word-processing software I used is as follows: Microsoft® Word for Microsoft 365 MSO (Version 2402 Build 16.0.17328.20124) 64-bit.

>*/s/ William B. Federman*
>William B. Federman