# EXHIBIT 1

# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| KATHLEEN CARR; KEEGAN KILLORY; and KELSIE POWELL individually, and on behalf of all similarly situated persons, <br><br> Plaintiffs, <br><br> v. <br><br> OKLAHOMA STUDENT LOAN AUTHORITY; and NELNET SERVICING, LLC, <br><br> Defendants. | No. CIV-23-99-R |

## MOTION TO INTERVENE AND STAY PENDING FINAL APPROVAL OF SETTLEMENT IN RELATED CLASS ACTION AND MEMORANDUM IN SUPPORT

# **TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................. ii

INTRODUCTION ............................................................................................... 1

BACKGROUND ................................................................................................. 2

ARGUMENT ...................................................................................................... 7

I.  MOVANTS ARE ENTITLED TO INTERVENE UNDER
    FED. R. CIV. P. 24(a)(2) .............................................................................. 7

    A.  Movants' Request Is Timely ................................................................. 8

    B.  Movants Have Important Interests Related to the
        Subject Matter of the Case ................................................................ 10

    C.  The Disposition of the *Carr* Action Could Impair
        Movants' Interests ............................................................................ 11

    D.  Movants' Interests Are Not Adequately Represented .................... 12

II. MOVANTS ALSO SATISFY THE REQUIREMENTS FOR
    PERMISSIVE INTERVENTION UNDER
    FED. R. CIV. P. 24(b)(1)(B) ........................................................................ 14

III. THE *CARR* ACTION SHOULD BE STAYED PENDING FINAL
     APPROVAL OF THE SETTLEMENT IN THE NEBRASKA ACTION ............. 15

CONCLUSION .................................................................................................. 18

# <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>                                                                                           <u>Page</u>

*Advanced Internet Techs., Inc. v. Google, Inc.*,
    No. C-05-02579 (RMW),
    2006 WL 889477 (N.D. Cal. Apr. 5, 2006) ............................................................ 17

*Ali v. Wells Fargo Bank, N.A.*,
    No. Civ-13-876-D, 2014 WL 819385
    (W.D. Okla. Mar. 3, 2014) ............................................................................ 16, 17

*Annunziato v. eMachines Inc.*,
    2006 WL 5014567 (C.D. Cal. July 24, 2006) ....................................................... 16

*Arney v. Finney*,
    967 F.2d 418 (10th Cir. 1992) ............................................................................ 14

*Barnes v. Sec. Life of Denver Ins. Co.*,
    945 F.3d 1112 (10th Cir. 2019) .......................................................................... 14

*Beer v. XTO Energy, Inc.*,
    No. 07-cv-798-L,
    2010 WL 2773311 (W.D. Okla. July 13, 2010) .................................................... 10

*Branca v. Iovate Health Scis. USA, Inc.*,
    No. 12-cv-01686 (LAB) (WMC), 17
    2013 WL 1344306 (S.D. Cal. Apr. 2, 2013) ........................................................ 17

*Carr v. OSLA, et al.*,
    Case No. CJ-2023-2 (Oklahoma County District Court) ............................... *passim*

*Coalition of Arizona/New Mexico Counties v. Dep't of Interior*,
    100 F.3d 837 (10th Cir. 1996) .............................................................................. 8

*Elec. Payment Sys., LLC v. Elec. Payment Sols. of Am., Inc.*,
    No. 14-cv-2624 (WYD) (MEH),
    2016 WL 11533348 (D. Colo. Aug. 11, 2016) ..................................................... 17

*Hegarty v. Nelnet Servicing, LLC*,
    No. 4:22-cv-03186 (D. Neb. Sept. 2, 2022) ........................................................... 4

*In re Cmty. Bank of N. Virginia*,
418 F.3d 277 (3d Cir. 2005) ........................................................................ 9, 10, 11

*In re JPMorgan Chase LPI Hazard Litig.*,
No. C-11-03058 JCS,
2013 WL 3829271 (N.D. Cal. July 23, 2013) ...................................................... 17

*In re Nelnet Servicing, LLC*,
2023 WL 1108253 (D. Neb. Jan. 30, 2023) .................................................. 1, 2, 3

*In re Nelnet Servicing, LLC, Customer Data Sec. Breach Litig.*,
MDL No. 3053, 2022 WL 17843103 (J.P.M.L. Dec. 13, 2022) ............................. 3

*In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*,
No. 17-ML-2792-D,
2018 WL 3676971 (W.D. Okla. Aug. 2, 2018) ...................................................... 8

*In re Syngenta Ag Mir 162 Corn Litig.*,
No. 14-md-2591-JWL,
2018 WL 1726345 (D. Kan. Apr. 10, 2018) ......................................................... 9

*Jaffe v. Morgan Stanley DW, Inc.*,
2007 WL 163196 (N.D. Cal. Jan. 19, 2007) ...................................................... 16

*Landis, et al. v. North American Co.*,
299 U.S. 248, 57 S.Ct. 163, 81 L.Ed. 153 (1936) .......................................... 15, 17

*Lindley v. Life Invs. Ins. Co. of Am.*,
No. 08-cv-0379 (CVE) (PJC),
2009 WL 3296498 (N.D. Okla. Oct. 9, 2009) ................................................. 15, 16

*Nat'l Sur. Corp. v. Bozeman*,
No. 20-cv-1187 (WJM)
(GPG, 2020 WL 11038521 (D. Colo. Nov. 2, 2020) ........................................... 14

*National Farm Lines v. Interstate Commerce Comm'n*,
564 F.2d 381 (10th Cir. 1977) ............................................................................ 10

*Natural Res. Def. Council v. United States Nuclear Reg. Comm'n*,
578 F.2d 1341 (10th Cir. 1978) ........................................................................... 12

*Quint v. Vail Resorts, Inc.*,
　　No. 20-cv-03569 (DDD) (NRN),
　　2023 WL 4410458 (D. Colo. June 16, 2023) ........................................................ 16

*RC2 Corp. Toy Lead Paint Prods. Liability Litig.*,
　　No. 07-cv-7184, 2008 WL 548772 (N.D. Ill. Feb. 20, 2008) ................................ 18

*Sanguine, Ltd. v. U.S. Dep't of Interior*,
　　736 F.2d 1416 (10th Cir. 1984) ....................................................................... 8, 12

*Sayers v. Nelnet Servicing, LLC*,
　　No. 4:22-cv-03203 (D. Neb. Sept. 14, 2022) ........................................................ 4

*Sierra Club v. Espy*,
　　18 F.3d 1202 (5th Cir. 1994) ...................................................................... 8, 9, 11

*Stupak-Thrall v. Glickman*,
　　226 F.3d 467 (6th Cir. 2000) .............................................................................. 8

*United Steelworkers of Am. V. Oregon Steel Mills, Inc.*,
　　322 F.3d 1222 (10th Cir. 2003) .......................................................................... 15

*Utah Ass'n of Ctys. v. Clinton*,
　　255 F.3d 1246 (10th Cir. 2001) ............................................................. 8, 9, 10, 12

## Rules and Other Authorities:

Fed. R. Civ. P.  24(a)(2) ...................................................................... 1, 7, 8, 11

Fed. R. Civ. P.  24(b)(1)(B) ...................................................................... 1, 14

Fed. R. Civ. P.  24(b)(3) ...................................................................................... 15

7A C. Wright & A. Miller, Federal Practice & Procedure,
　　§ 1909, at 524 (1972)................................................................................... 12

# INTRODUCTION

Court-appointed lead plaintiffs in the consolidated action *In re Nelnet Servicing, LLC*, 2023 WL 1108253, at *8 (D. Neb. Jan. 30, 2023) ("Movants"), by and through Court-appointed lead counsel, move to intervene in this later-filed case to request a stay pending approval of a Settlement that would fully resolve the claims asserted in this case. As explained herein, Movants meet the requirements for intervention as a matter of right and, in the alternative, permissive intervention, pursuant to Rules 24(a)(2) and 24(b)(1)(B) of the Federal Rules of Civil Procedure.

Movants negotiated the Settlement over several months with each of the entities involved in the 2022 Data Breach that gave rise to the consolidated action, as well as this action: Nelnet Servicing, LLC ("Nelnet"), EdFinancial Services, LLC ("EdFinancial"), and the Oklahoma Student Loan Authority ("OSLA"). If approved, this global settlement would fully resolve the claims asserted against each entity in all twenty-four pending class actions arising from the same data breach. Accordingly, this action (the "*Carr* action")—which is the only parallel action in the country not consolidated with *In re Nelnet*—should be stayed to preserve judicial and party resources while the settlement approval process takes place.[1]

---

[1] The Class asserted in the consolidated action fully subsumes the *Carr* plaintiffs' claims, which are limited to the subset of Nelnet customers who received loans through OSLA. *See In re Nelnet*, Consolidated Amended Class Action Complaint, ECF No. 51 ¶ 353, attached as Exhibit 1 to the June 12, 2024 Declaration of Christian Levis ("Levis Decl.") (defining putative class as "All Persons in the United States whose personal information was compromised in the Data Breach made public by Nelnet Servicing, LLC in August 2022."), compare with *Carr* action, First Amended Class Action Complaint ECF No. 22 ¶

Movants also respectfully request that this Court issue a stay of all proceedings and deadlines in this case pending a final order approving or disapproving the Settlement. Courts routinely exercise their power to grant stays when a pending nationwide settlement would impact (or resolve) the claims in the case before them to avoid unnecessary litigation, inconsistent results, and other issues. Staying these proceedings will present no fair possibility of damage to any party; to the contrary, a stay will allow *all* class members to participate in the Settlement or, if they wish, to exercise their right to opt out. For these and other reasons explained in the accompanying memorandum, this action should be stayed.

## **BACKGROUND**

In June and July 2022, a Data Breach affected over 2.5 million Nelnet student loan borrowers.[2] Following the data breach, twenty-four cases were filed against Nelnet, EdFinancial, and/or OSLA across various jurisdictions around the country.

On September 15, 2022, Movants filed an MDL application with the Judicial Panel on Multidistrict Litigation ("JPML") seeking to centralize all actions arising out of the alleged Data Breach in the U.S. District Court for the District of Nebraska, where Nelnet is headquartered. *See In re Nelnet*, 2023 WL 1108253, at *1.

---

172 (defining putative class as "[a]ll Persons residing in the United States *who received a Notice Letter from OSLA* and had their PII compromised by an unknown third-party cybercriminal as a result of the Data Breach that occurred in or around June 2022 through July 2022.") (emphasis added).

[2] *See, e.g.*, *Information About a Recent Data Security Incident Impacting Certain Federal Loan Servicing Clients*, NELNET, https://nelnetinc.com/july-2022-data-security-incident/ (last visited May 23, 2024).

On December 1, 2022, counsel for the *Carr* plaintiffs, Federman & Sherwood ("F&S"), appeared before the JPML to argue in support of proceeding in Nebraska but against the creation of an MDL given the parties' collective willingness to cooperate and coordinate:

> MR. FEDERMAN: Thank you, your Honors. William B. Federman, Federman & Sherwood, on behalf of plaintiff Jennifer Hegarty. There's **no need for an MDL** here. **All the cases can go to Nebraska. They were all filed there**. Tennessee doesn't want to go to Nebraska. They could be stayed in Tennessee. The plaintiffs' counsel spent a lot of time self-organizing. The court should encourage that rather than running to the MDL. If Nebraska does not want the case, the Western District of Oklahoma does . . . . Oklahoma will get implicated in the case through the Oklahoma Student Loan Authority, the venue issues bringing the case in Nebraska. If you don't want to send it to Nebraska, send it to Oklahoma.

Dec. 1, 2022 JPML Hearing Oral Argument Tr. at 9:4-25 (emphasis added), ECF No. 61, attached as Exhibit 2 to the Levis. Decl.

The JPML denied Movants' transfer motion, finding that centralization under Section 1407 was unnecessary because the parties could voluntarily organize all cases in a single forum (i.e., Nebraska) using Section 1404. *See In re Nelnet Servicing, LLC, Customer Data Sec. Breach Litig.*, MDL No. 3053, 2022 WL 17843103, at *1 (J.P.M.L. Dec. 13, 2022). Following this order, all *federal* cases then pending against Nelnet were subsequently voluntarily transferred to the District of Nebraska, where they were then consolidated on January 30, 2023. *See In re Nelnet*, 2023 WL 1108253, at *8. The Nebraska Court also appointed Movants' counsel as interim class counsel over the consolidated action, rejecting two other competing slates, including one supported by *Carr* plaintiffs' counsel. *Id.* Thus, by the end of January 2023, 23 of the 24 actions arising out of the data

3

breach were consolidated under a single leadership structure in Nebraska. The one outlier was the *Carr* plaintiffs' action in Oklahoma state court, which was removed to this Court the same day the Nebraska Court issued its order. *See Carr v. OSLA, et al.*, Case No. CJ-2023-2 (Oklahoma County District Court), ECF No. 1-1.

Initiated on January 3, 2023—more than two weeks *after* the JPML's ruling on Movants' transfer motion—this state court case sought to pursue claims against Nelnet and OSLA arising out of the same Data Breach covered by the actions consolidated in the District of Nebraska. Indeed, the *Carr* case alleged nearly identical claims to two actions in Nebraska that the *Carr* plaintiffs' counsel filed more than three months earlier. *See Hegarty v. Nelnet Servicing, LLC,* No. 4:22-cv-03186 (D. Neb. Sept. 2, 2022), and *Sayers v. Nelnet Servicing, LLC,* No. 4:22-cv-03203 (D. Neb. Sept. 14, 2022), Attached as Exhibits 3-4 to the Levis Decl. However, because Section 1404 could not be used to transfer a state court action, Nelnet first removed the *Carr* action to the Western District of Oklahoma (*see* ECF No. 1) on January 30, 2023, before moving to transfer the action to Nebraska (where the 23 other actions filed were already consolidated) or, alternatively, stay it pending the outcome of the Nebraska action. ECF No. 27. Despite Mr. Federman's prior representations that "All the cases can go to Nebraska," and representation of plaintiffs in two cases pending in that District, the *Carr* plaintiffs opposed transfer. ECF No. 32. This Court ultimately denied both of Nelnet's requests on June 16, 2023, noting that, at the time, "Nelnet ha[d] not set forth its own clear case of the hardship or inequity it faces should this case proceed." ECF No. 41.

Meanwhile, Movants proceeded to litigate their claims, opposing Nelnet's motion to dismiss and EdFinancial's' attempts to stay the litigation. *See In re Nelnet*, ECF Nos. 73 66, attached as Exhibits 5-6 to the Levis Decl. After nearly a year of litigation, Movants and Nelnet, OSLA, and EdFinancial began exploring the potential for resolution. Working with the Honorable Jay C. Gandhi, U.S.M.J. (Ret.), they engaged in two hard-fought mediation sessions in December 2023 and January 2024. The second mediation session concluded with a tentative agreement among the parties as to certain terms of settlement, but with material issues that remained unresolved. Movants notified the Nebraska court of these developments on January 29, 2024, by email and requested a stay while they continued their discussions. The parties' continued discussions resulted in the execution of a binding settlement term sheet on June 11, 2024, that resolves the claims asserted by the following class:

> All Persons in the United States whose personal information was compromised in the data breach made public by Nelnet Servicing, LLC in August 2022 (the "Data Beach").

This class definition fully subsumes the proposed class, and claims asserted, in this action as the *Carr* plaintiffs and all proposed class members had their information disclosed in the same Data Breach.[3] As stated in the Notice of Settlement Defendant OSLA filed on June 11, 2024, the Settling Parties anticipate moving for preliminary approval of that settlement within 45 days. *See* ECF No. 105.

---

[3] *See Carr* action, ECF No. 22 ¶ 172 (defining putative class as "[a]ll Persons residing in the United States who received a Notice Letter from OSLA and had their PII compromised by an unknown third-party cybercriminal as a result of the Data Breach that occurred in or around June 2022 through July 2022.").

The need for a stay in the *Carr* action is now clear, particularly considering the Settlement's resolution of all claims asserted in the *Carr* action, and the *Carr* plaintiffs' prior attempts to derail the settlement efforts in the consolidated (and first-filed) Nebraska action. Specifically, after learning of the parties' ongoing discussion from OSLA,[4] the *Carr* plaintiffs moved to intervene in the Nebraska action on March 12, 2024, based on purported concerns that Movants and their counsel were engaged in a "reverse auction" that improperly resolved the class's claims. *See In re Nelnet*, ECF Nos. 83-84, attached as Exhibits 7-8 to Levis Decl. Moreover, the *Carr* plaintiffs—despite being part of a tag-along case purporting to represent a class encompassing less than 10% of the individuals whose data was compromised by the same Data Breach—further requested the Nebraska Court stay the consolidated action or, alternatively, displace court-appointed interim class counsel in favor of appointing *Carr* plaintiffs' counsel to lead the consolidated case. *See In re Nelnet*, ECF No. 84, Ex. 8 to Levis Decl.

While the *Carr* plaintiffs are likely to make similar arguments here, their hyperbolic claims against Movants and their counsel are unfounded. Movants have—at all times—sought to incorporate the *Carr* plaintiffs (and their counsel) in the consolidated case. *See In re Nelnet*, ECF No. 92-2 (April 4, 2024 Levis Declaration), attached as Exhibit 12 to Levis Decl. For example, following the JPML's denial of Movants' transfer motion,

---

[4] While Movants were not involved in these discussions, they understand that OSLA's counsel informed *Carr* plaintiffs' counsel on or around March 1, 2024, that Movants had been pursuing a potential global resolution of the claims arising from the 2022 Data Breach with Nelnet, OSLA, and EdFinancial. *See In re Nelnet*, ECF No. 84 at 4, Ex. 8 to Levis Decl.

6

Movants conferred with the *Carr* plaintiffs to request that they transfer their action to Nebraska, consistent with their counsel's representations at the JPML hearing. *Id.* The *Carr* plaintiffs refused to do so unless they were guaranteed a fixed percentage of any attorneys' fees, despite their proposed class representing only a modest subset (9.97%) of all Class members. *Id.* When the *Carr* plaintiffs later raised concerns that they were being excluded from potential settlement discussions, Movants then sought to work together on a "global resolution" of both the Nebraska and *Carr* actions as equal participants. *Id.* The *Carr* plaintiffs rejected these requests, instead demanding their counsel receive a disproportionate amount of any fees awarded, despite accounting for a significantly smaller percentage of the Class and playing no role in the twenty-three other pending cases. Levis Decl. at ¶ 14, filed herewith. Movants did not accept this proposal and the two cases continued separately. *Id.*

Having now reached a settlement with Nelnet, OSLA, and EdFinancial that resolves the later-filed *Carr* plaintiffs 'claims, Movants request that this action be stayed in its entirety pending final approval of that settlement.

## **ARGUMENT**

### I.     **MOVANTS ARE ENTITLED TO INTERVENE UNDER FED. R. CIV. P. 24(a)(2).**

Intervention as of right is authorized by Federal Rule of Civil Procedure 24(a)(2), which provides, in pertinent part, that:

> On timely motion, the court must permit anyone to intervene who . . . claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter

7

impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). The Tenth Circuit has summarized the requirements for intervention as of right under Rule 24 as follows: (1) the application is timely; (2) the applicant claims an interest relating to the property or transaction which is the subject of the action; (3) the applicant's interest may, as a practical matter, be impaired or impeded, and (4) the applicant's interest is not adequately represented by the existing parties. *See Utah Ass'n of Ctys. v. Clinton*, 255 F.3d 1246, 1249 (10th Cir. 2001) (quoting *Coalition of Arizona/New Mexico Counties v. Dep't of Interior*, 100 F.3d 837, 840 (10th Cir. 1996)). The Tenth Circuit has "historically taken a liberal approach to intervention and thus favors the granting of motions to intervene." *In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 17-ML-2792-D, 2018 WL 3676971, *2 (W.D. Okla. Aug. 2, 2018) (internal citations and quotations omitted).

## A. Movants' Request Is Timely.

In the Tenth Circuit, "[t]he timeliness of a motion to intervene is assessed 'in light of all the circumstances, including the length of time since the applicant knew of his interest in the case, prejudice to the existing parties, prejudice to the applicant, and the existence of any unusual circumstances.'" *Utah Ass'n of Counties*, 255 F.3d at 1250 (quoting *Sanguine, Ltd. v. U.S. Dep't of Interior*, 736 F.2d 1416, 1418 (10th Cir. 1984)). "The analysis is contextual; absolute measures of timeliness should be ignored." *Id.* (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1205 (5th Cir. 1994). *See also Stupak-Thrall v. Glickman*, 226 F.3d 467, 475 (6th Cir. 2000) (absolute measure of time between filing of the complaint and the

motion to intervene is one of the least important circumstances). Moreover, "[t]he requirement of timeliness is not a tool of retribution to punish the tardy would-be intervenor, but rather a guard against prejudicing the original parties by the failure to apply sooner." *Utah Ass'n of Counties*, 255 F.3d at 1250. Thus, "[f]ederal courts should allow intervention 'where no one would be hurt and greater justice could be attained.'" *Id.* (quoting *Sierra Club*, 18 F.3d at 1205).

Here, the need to intervene did not arise until recently when Movants executed a binding settlement term sheet with Nelnet, OSLA, and EdFinancial. Intervention is necessary to protect the Class (of which the *Carr* plaintiffs are members) and the benefit secured by the settlement, as the *Carr* plaintiffs have made clear that they seek to use this tagalong action as a vehicle to block or otherwise interfere with Movants' resolution of claims arising from the Data Breach. Because Movants have sought to intervene just one day after executing a binding settlement term sheet, their Motion is timely. *See In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 314 (3d Cir. 2005) (finding motion to intervene was timely when filed two months after being provided notice of settlement).

Regardless, even if this Motion could somehow be construed as untimely (which it is not) there is no prejudice to the *Carr* plaintiffs, who, as settlement Class members, are free to opt out of the settlement if they are somehow dissatisfied and pursue their own *individual* claims. *See In re Syngenta Ag Mir 162 Corn Litig.*, No. 14-md-2591-JWL, 2018 WL 1726345, at *5 (D. Kan. Apr. 10, 2018) ("Finally, in the end, there can be no prejudice, as any dissatisfied class member will be able to opt out of the settlement class."). The timeliness requirement is, therefore, satisfied.

9

### B.  Movants Have Important Interests Related to the Subject Matter of the Case.

As to the second prong, Movants have important interests related to the subject matter of the *Carr* action. "Whether [a would-be intervenor] has an interest sufficient to warrant intervention as a matter of right is a highly fact-specific determination," and "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process[.]" *Coal. of Arizona/New Mexico Ctys.*, 100 F.3d at 841; *see also National Farm Lines v. Interstate Commerce Comm'n*, 564 F.2d 381, 384 (10th Cir. 1977) ("Our court has tended to follow a somewhat liberal line in allowing intervention."). Importantly, the interest of the intervenor "is not measured by the particular issue before the court but is instead measured by whether the interest the intervenor claims is *related to the property that is the subject of the action*." *See Utah Ass'n of Counties*, 255 F.3d at 1252 (emphasis in original).

Here, Movants meet this requirement as they are already court-appointed representatives of a nationwide class that subsumes the Class (and claims) alleged in the *Carr* action. *See In re Cmty. Bank of N. Virginia*, 418 F.3d at 314 (explaining an interest in the subject matter "[is] satisfied by the very nature of Rule 23 representative litigation."); *Beer v. XTO Energy, Inc.*, No. 07-cv-798-L, 2010 WL 2773311, at *5 (W.D. Okla. July 13, 2010) ("As to the second factor, Intervenors clearly have an interest relating to the property or transaction that is the subject of the action as they are members of the class previously certified by the court."). In particular, Movant Mary Traynor is not only one of the settling parties but an absent Class member of the proposed *Carr* Class because her loans were

serviced by OLSA.[5] Thus, Movants have an interest in the *Carr* action sufficient to warrant intervention.

### C. The Disposition of the Carr Action Could Impair Movants' Interests.

To satisfy the third prong, an "intervenor must show only that impairment of its substantial legal interest is *possible* if intervention is denied. This burden is *minimal*." *Beer*, 2010 WL 277311, at *6 (internal citations and quotations omitted) (emphasis added). In evaluating this prong, the Court "is not restricted to a rigid res judicata test[,]" but rather may consider "any significant legal effect in the [would-be intervenor's] interest[.]" *See Coal. of Arizona/New Mexico Counties*, 100 F.3d at 844 (citing *Sierra Club v. Espy*, 18 F.3d at 120)). In the class action context, the third prong of the Rule 24(a)(2) inquiry is, like the second prong, satisfied "by the very nature of Rule 23 representative litigation." *See, e.g., In re Cmty. Bank of N. Va.*, 418 F.3d 277, 314 (3d Cir. 2005).

Here, the continuation of the *Carr* action while a global settlement that would release all claims is pending not only presents a risk of inconsistent results but also poses a direct threat to the settling parties' legal interests in resolving their claims. This threat is especially concrete given the *Carr* plaintiffs have already sought to interfere with these settlement efforts and insert themselves as Class counsel in the *In re Nelnet* action. Courts routinely stay duplicative, parallel class actions pending a settlement that would resolve all claims arising from the same set of facts to avoid unnecessary litigation, inconsistent

---

[5] *See* ECF No. 51 at ¶¶ 344-351, Ex. 1 to Levis Declaration.

results, and other issues. *See* Section III, below. The same considerations support granting Movants' motion here.

###### D.     Movants' Interests Are Not Adequately Represented.

As to the fourth prong, Movants' interests are not adequately represented by the *Carr* plaintiffs, who are *exclusively* OSLA borrowers. "Although an applicant for intervention as of right bears the burden of showing inadequate representation, that burden is the 'minimal' one of showing that representation 'may' be inadequate." *Utah Ass'n of Counties*, 255 F.3d at 1254 (quoting *Sanguine*, 736 F.2d at 1419)). The possibility that the interests of the applicant and the parties diverge "need not be great" in order to satisfy this minimal burden. *Id.* (quoting *Natural Res. Def. Council v. United States Nuclear Reg. Comm'n*, 578 F.2d 1341, 1346 (10th Cir. 1978)). Moreover, as the Tenth Circuit has explained:

> If (an applicant's) interest is similar to, but not *identical* with, that of one of the parties, a discriminating judgment is required on the circumstances of the particular case, but he ordinarily should be allowed to intervene unless it is clear that the party will provide adequate representation for the absentee.

*Nat. Res. Def. Council, Inc*, 578 F.2d at 1346 (quoting 7A C. Wright & A. Miller, Federal Practice & Procedure, § 1909, at 524 (1972)) (emphasis added).

Here, while Movants subsume the *Carr* plaintiffs' claims, the reverse is not true. Movants are a group of 26 individuals, from 17 states[6] that represent all of those affected

---

[6] *See* ECF No. 51 at ¶¶ 118-352, Ex. 1 to Levis Decl.

by the Data Breach, whether EdFinancial borrowers (approximately 90%[7] of those affected) or OSLA borrowers (approximately 10% of those affected). The three *Carr* plaintiffs, by contrast, are from three states, do not name EdFinancial as a party, and only seek relief for OSLA borrowers—a subset of Movants and fraction of the entire *In re Nelnet* Class. As such, there is little reason to expect that Movants' and the *Carr* plaintiffs' interests, objectives, and litigation strategies will coincide at *every* stage of litigation,[8] and there is no reason to expect that Movants will be adequately represented by the *Carr*

---

[7] *See, e.g.*, *Millions Affected by Oklahoma Student Loan Authority Data Breach Leak*, NEWS ON 6 (Sept. 2, 2022, 5:10 PM), https://www.newson6.com/story/630e8c16ac86df072656347a/oklahoma-city-bombing-victims#:~:text=Forensics%20identified%20approximately%202.5%20million,250%2C0 00%20are%20assigned%20to%20OSLA:

> An attorney for OSLA emailed News on 6 the following:
> *Forensics identified approximately 2.5 million borrowers with student loans serviced by EdFinancial and OSLA that were affected by this incident. Approximately 2.2 million affected borrowers are assigned to EdFinancial, while approximately 250,000 are assigned to OSLA. Of the accounts serviced by OSLA, 1,477 borrowers live in Oklahoma.*

[8] *Compare* the *Carr* plaintiffs' **eight** causes of action at ¶¶ 146-229, ECF No. 22 ((1) negligence (against Nelnet); (2) negligence per se (against Nelnet); (3) negligence (against OLSA); (4) negligence *per se* (against OSLA); (5) breach of third-party beneficiary contract (against Nelnet); (6) declaratory and injunctive relief (against Nelnet); (7) negligent training, hiring, and supervision (against OSLA); and (8) invasion of privacy – intrusion upon seclusion & unreasonable publicity (against Nelnet and OSLA), *with* Movants' **thirty-three** causes of action at ¶¶ 397-751, ECF No. 51 at Ex. 1 to Levis Decl. ((1) negligence; (2) negligence *per se*; (3) breach of implied contract; (4) unjust enrichment; (5) breach of confidence; (6) invasion of privacy – intrusion upon seclusion; (7) AZ CFA; (8) CCPA; (9) CA CRA; (10) CA UCL; (11) CLRA; (12) CO SBNA; (13) CO CPA; (14) FDUTPA; (15) IL UDTPA; (16) IN DCSA; (17) MCPA; (18) MITPA; (19) MI CPA; (20) NM UPA; (21) NY GBL; (22) PA UTPCPL; (23) SC DBSA; (24) SC UTPA; (25) TX DTP-CPA; (26) UCSPA; (27) WI NUAPIA; (28) WI DTPA; (29) VPIBA; (30) VCPA; (31) MN CFA; (32) MN UDTPA; and (33) Declaratory and Injunctive Relief under the Declaratory Judgment Act).

plaintiffs' counsel. Indeed, the *Carr* plaintiffs and their counsel have been openly hostile to Movants, seeking to avoid inclusion in the consolidated action by filing an un-transferable case in state court, moving to intervene in the *In re Nelnet* action to block settlement talks, and in the alternative, inserting themselves at the head of the *In re Nelnet* action, rejecting Movants' reasonable proposal to consolidate the actions and jointly prosecute the case. There is, as a result, no reason to believe the *Carr* plaintiffs or their counsel would adequately represent Movants' interests in this case. *See, e.g., Barnes v. Sec. Life of Denver Ins. Co.*, 945 F.3d 1112, 1125 (10th Cir. 2019) ("SLD's counsel cannot be expected to act in the best interests of both SLD and Jackson. Rather, SLD's counsel will, and should act in the best interests of its client, SLD . . . . We therefore conclude that Jackson satisfies the 'minimal' burden of establishing a 'possibility' that its interests will not be adequately represented by SLD."); *Nat'l Sur. Corp. v. Bozeman*, No. 20-cv-1187 (WJM) (GPG, 2020 WL 11038521, at *2 (D. Colo. Nov. 2, 2020) ("State Farm notes that National Surety has incurred different damages in connection with a different party than relevant to State Farm. Thus, State Farm must establish its own damages and cannot rely on National Surety to do so, as National Surety has no incentive to protect State Farm's interests.").

## II.  MOVANTS ALSO SATISFY THE REQUIREMENTS FOR PERMISSIVE INTERVENTION UNDER FED. R. CIV. P. 24(b)(1)(B).

Movants also satisfy the requirements for permissive intervention pursuant to Fed. R. Civ. P. 24(b)(1)(B). Rule 24(b)(1)(B) permits intervention by a movant that "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ.

P. 24(b)(1)(B); *see also Arney v. Finney*, 967 F.2d 418, 421 (10th Cir. 1992) ("Permissive intervention is a matter within the sound discretion of the district court.") (internal citations and quotations omitted). Rule 24(b)(3) further provides that, "in exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

There is no doubt that Movants' claims share common questions of law and fact with the *Carr* plaintiffs' claims in this case, given that the *Carr* action is a tagalong action and purports to represent a *subset* of the Nationwide Class alleged in *In re Nelnet* and covered by the Settlement. Moreover, as described herein, because the *Carr* plaintiffs are members of the settlement Class, there is no prejudice to them if intervention is allowed, since they remain free to opt out of the settlement if they wish to pursue their individual claims. While Movants' intervention and the settlement process will benefit all of the parties involved, the continuation of simultaneous litigation of parallel claims would needly burden the parties and the Court with unnecessary, duplicative litigation.

## III.  THE *CARR* ACTION SHOULD BE STAYED PENDING FINAL APPROVAL OF THE SETTLEMENT IN THE NEBRASKA ACTION.

Finally, Movants also request that this Court stay the *Carr* action until final approval of the Settlement. This Court possesses the inherent authority to control its docket, which includes the power to stay cases in the interest of judicial economy. *Lindley v. Life Invs. Ins. Co. of Am.*, No. 08-cv-0379 (CVE) (PJC), 2009 WL 3296498, at *3 (N.D. Okla. Oct. 9, 2009) (citing *United Steelworkers of Am. V. Oregon Steel Mills, Inc.*, 322 F.3d 1222,

1227 (10th Cir. 2003)); *see also Landis, et al. v. North American Co.*, 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936).

Courts routinely exercise their power to grant stays when a pending nationwide settlement could impact (or resolve) the claims in the case before them. *See Quint v. Vail Resorts, Inc.,* No. 20-cv-03569 (DDD) (NRN), 2023 WL 4410458, at *4 (D. Colo. June 16, 2023) ("courts routinely exercise the discretion to grant stays when a pending nationwide settlement could impact the claims in the case before them."); *Ali v. Wells Fargo Bank, N.A.,* No. CIV-13-876-D, 2014 WL 819385, at *3 (W.D. Okla. Mar. 3, 2014) (granting motion to stay proceedings in a parallel case pending conclusion of settlement proceedings); *Lindley*, 2009 WL 3296498, at *4 (granting motion to stay proceedings in a parallel case pending a fairness hearing of a possible nationwide class settlement); *Jaffe v. Morgan Stanley DW, Inc.*, 2007 WL 163196, at *2 (N.D. Cal. Jan. 19, 2007) (granting two month stay to allow "advanced" settlement negotiations to play out in another case).

Here, the requested stay will allow Movants and Nelnet, OSLA, and EdFinancial to seek preliminary and final approval of an objectively beneficial global settlement that will resolve the claims of *all* Class members in *all* 24 related cases without delay or unnecessary complication. Not only will this benefit all parties, but it will avoid needlessly expending time and resources to continue with the parallel, duplicative litigation. *Lindley*, 2009 WL 3296498, at *3 (granting motion to stay putative class action where stay would "preserve defendant's resources by preventing duplicative and expensive class discovery" and "conserve the Court's resources by deferring consideration of plaintiff's request for class certification until the parties are in a better position to brief the issue"); *Annunziato v.*

*eMachines Inc.*, 2006 WL 5014567, at *5 (C.D. Cal. July 24, 2006) (granting motion to stay putative class action where parallel state court case had settled because stay could save defendants from "hundreds of hours spent on discovery and briefing"); *Advanced Internet Techs., Inc. v. Google, Inc.*, No. C-05-02579 (RMW), 2006 WL 889477, *1–*2 (N.D. Cal. Apr. 5, 2006) (granting stay where settlement in parallel action would have a "material impact" on the case, and where proceeding with parallel litigation would be "a waste of judicial resources").

Moreover, staying these proceedings presents no "possibility" that it "will work damage to someone else[.]" *See Carr* action, ECF No. 41 at 6 (quoting *Landis*, 299 U.S. at 255) (emphasis added). Quite the opposite, staying these proceedings will allow *all* Class members to participate in the global settlement or, if they wish, to exercise their right to opt out. *See In re JPMorgan Chase LPI Hazard Litig.*, No. C-11-03058 JCS, 2013 WL 3829271, at *4 (N.D. Cal. July 23, 2013) (finding no fair possibility that damage would result from stay of putative class action pending settlement of another case); *see also Elec. Payment Sys., LLC v. Elec. Payment Sols. of Am., Inc.*, No. 14-cv-2624 (WYD) (MEH), 2016 WL 11533348, at *2 (D. Colo. Aug. 11, 2016) (plaintiffs were not required to demonstrate a clear case of hardship where administrative closure was expected to promote judicial economy). Should the *Carr* plaintiffs have any unique concerns they wish to raise in a judicial forum, they can do so at the settlement fairness hearing. *Ali*, 2014 WL 819385, at *1 (explaining a stay presents no prejudice because the other plaintiffs "can pursue any concerns about the potential fairness of the proposed settlement [] during the approval process."); *Branca v. Iovate Health Scis. USA, Inc.*, No. 12-cv-01686 (LAB) (WMC), 2013

17

WL 1344306, at *1–*2 (S.D. Cal. Apr. 2, 2013) (imposing a stay where "the real fight [was] for a class action between two warning plaintiffs' firms," reasoning that "if there's something procedurally or substantively unsavory about the [] settlement . . . [the other judge] should be the judge to say so"). And in the event that the Settlement is not approved, the *Carr* plaintiffs have no risk as they can move to lift the stay and resume prosecution of this action. *See, e.g., RC2 Corp. Toy Lead Paint Prods. Liability Litig.*, No. 07-cv-7184, 2008 WL 548772, at *5 (N.D. Ill. Feb. 20, 2008), *as amended* (Feb. 28, 2008) (noting that plaintiffs would be able to proceed with the stayed action in the event the settlement warranting the stay is not approved in the other court).

## CONCLUSION

For the foregoing reasons, Movants respectfully request that the Court grant their motion to intervene and issue a stay of all proceedings and deadlines pending a final order approving the Settlement.

Dated: June 12, 2024                     Respectfully submitted,

                                         */s/ Anthony M. Christina*

                                         Anthony M. Christina
                                         **LOWEY DANNENBERG, P.C.**
                                         One Tower Bridge
                                         100 Front Street, Suite 520
                                         West Conshohocken, PA 19428
                                         Telephone: (215) 399-4770
                                         Fax: (914) 997-0035
                                         achristina@lowey.com

                                         Christian Levis
                                         Amanda G. Fiorilla
                                         **LOWEY DANNENBERG, P.C.**

18

44 South Broadway, Suite 1100
White Plains, NY 10601
Telephone: (914) 997-0500
Fax: (914) 997-0035
clevis@lowey.com
afiorilla@lowey.com

Ian W. Sloss
Steven L. Bloch
Johnathan Seredynski
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, Floor 15
Stamford, CT 06901
Telephone: (203) 325-4491
Fax: (203) 325-3769
isloss@sgtlaw.com
sbloch@sgtlaw.com
jseredynski@lowey.com

*Interim Co-Lead Class Counsel in In re: Data Security Cases Against Nelnet Servicing, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2024, a copy of this Motion to Intervene and Stay Pending Final Approval of Settlement in Related Class Action and Memorandum in Support was filed electronically with the United States District Court for the District of Western Oklahoma and served on all counsel of record through the CM/ECF system.

*/s/ Anthony M. Christina*
Anthony M. Christina