**EXHIBIT 1**

## STIPULATION AND AGREEMENT OF CLASS ACTION SETTLEMENT

**EXECUTION VERSION**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| *In Re:* | Case No. 4:22-cv-3191 |
| *Data Security Cases Against NELNET SERVICING, LLC* | The Honorable John M. Gerrard, U.S.D.J. |
| | The Honorable Jacqueline M. DeLuca, U.S.M.J. |

## STIPULATION AND AGREEMENT OF CLASS ACTION SETTLEMENT

## TABLE OF CONTENTS

1.  Recitals......................................................................................................................2

2.  Definitions ..................................................................................................................5

3.  Settlement Class Certification..................................................................................17

4.  Settlement Fund .......................................................................................................18

5.  Settlement Fund Account..........................................................................................20

6.  Presentation of Settlement to the Court....................................................................22

7.  Settlement Benefits and Distribution Plan................................................................24

8.  Nelnet's Additional Obligations ...............................................................................35

9.  Duties of Claims Administrator.................................................................................35

10. Notice Plan................................................................................................................38

11. CAFA Notice by Defendant ......................................................................................39

12. Mutual Releases and Covenant Not to Sue...............................................................39

13. Effective Date ...........................................................................................................40

14. Termination...............................................................................................................42

15. No Admission of Liability .........................................................................................46

16. Opt-Outs ...................................................................................................................47

17. Objections .................................................................................................................49

18. Service Awards .........................................................................................................50

19. Attorneys' Fees and Expenses...................................................................................51

20. Confidentiality ..........................................................................................................52

21. Notices......................................................................................................................52

22. Stay ..........................................................................................................................54

23. Miscellaneous Provisions..........................................................................................55

This Stipulation and Agreement of Class Action Settlement (the "Agreement" or "Settlement Agreement")[1] is made as of August 16, 2024, by and between (a) Plaintiffs Ian Scott, Jessica Alexander, Pamela Bump, Bridget Cahill, Lesly Canales, Melissa Charbonneau, Douglas Conley, Noah Helvey, Dallin Iler, Dustin Jones, Kayli Lazarz, Brittni Linn, Delilah Oliveira, Devinne Peterson, Eric Polanco, Justin Randall, Sofia Rodriguez, Joshua Sanchez, Charles Sangmeister, William Spearman, Taylor Vetter, Rachel Woods, Garner J. Kohrell, Olivia Covington, Alexis Luna, and Mary Traynor, along with MaKayla Nelson (collectively, the "Plaintiffs"), on behalf of themselves and the Settlement Class; and (b) Nelnet Servicing, LLC ("Nelnet"), Edfinancial Services, LLC ("Edfinancial"), and the Oklahoma Student Loan Authority ("OSLA," and together with Nelnet and Edfinancial, the "Settling Entities"). This Agreement fully and finally compromises and settles any and all claims that are, were, or could have been asserted in *Spearman, et al. v. Nelnet Servicing, LLC*, No. 4:22-cv-03191 (JMG)(JMD) (D. Neb.) (the "Action"), any related member cases consolidated as *In re Data Security Cases Against Nelnet Servicing, LLC* (*see* Memorandum and Order, *Spearman, et al. v. Nelnet Servicing, LLC*, No. 4:22-cv-03191 (JMG)(JMD), ECF No. 43 (D. Neb. Jan. 30, 2023), in which the Action serves as the Lead Case, and any other action based on the same factual predicate as the Action, including, but not limited to, *Carr, et al. v. Oklahoma Student Loan Authority & Nelnet Servicing, LLC*, No. 5:23-cv-00099-R, ECF No. 1 (W.D. Okla.) ("*Carr*") as set forth herein.

---

[1] All capitalized terms are defined in Section 2 below.

## 1.  <u>Recitals</u>

1.1.    Nelnet provides technology services to student loan servicers Edfinancial and OSLA, including a website portal, for Edfinancial's and OSLA's student loan borrowers to access their online loan accounts.

1.2.    Beginning in June 2022, an unauthorized third-party accessed Plaintiffs' and Class Members' student loan account registration information on Nelnet's systems. This unauthorized access continued through July 22, 2022.

1.3.    On or around August 26, 2022, Nelnet began publicly notifying state Attorneys General and approximately 2,501,324 impacted student borrowers of OSLA and Edfinancial that their Personal Information had been compromised in a Data Security Incident. The Personal Information included student loan account registration information, including names, addresses, e-mail addresses, phone numbers, and Social Security numbers.

1.4.    On September 7, 2022, Lowey Dannenberg, P.C. ("Lowey") and Silver Golub & Teitell LLP ("SGT") (collectively, "Lowey/SGT") on behalf of Plaintiffs William Spearman, Brittni Linn, Jessica Alexander, Christopher Sangmeister, Taylor Vetter, Nichole Allocca, Kayli Lazarz, and Bridget Cahill initiated the Action and filed a class action complaint against Nelnet, asserting claims arising out of the Data Security Incident.

1.5.    On September 14, 2022, Lowey/SGT on behalf of Plaintiffs Pamela Bump, Melissa Charbonneau, Douglas Conley, Noah Helvey, Dallin Iler, Dustin Jones, Devinne Peterson, Justin Randall, Sofia Rodriguez, and Rachel Woods filed a class action complaint against Nelnet in the U.S. District Court for the District of Nebraska, asserting claims arising out of the Data Security Incident. *See Bump, et al. v. Nelnet Servicing, LLC*, No. 4:22-cv-03204, ECF No. 1 (D. Neb.) ("*Bump*").

1.6.    On December 7, 2022, Plaintiffs Ian Scott, Lesly Canales, Eric Polanco, Joshua Sanchez, and Delilah Oliveira filed a class action complaint against Nelnet in the U.S. District Court for the District of Nebraska, asserting claims arising out of the Data Security Incident. *See Scott, et al. v. Nelnet Servicing, LLC*, No. 4:22-cv-03259, ECF No. 1 (D. Neb.) ("*Scott*").

1.7.    In total, twenty-three (23) putative class actions against Nelnet and/or Edfinancial were filed in or transferred to the U.S. District Court for the District of Nebraska related to the Data Security Incident.[2]

1.8.    On September 15, 2022, Lowey/SGT on behalf of Plaintiffs in the Action and *Bump* moved under 28 U.S.C. § 1407 to centralize this litigation in the District of Nebraska as a Multi-District Litigation ("MDL") before the Judicial Panel on Multidistrict Litigation ("J.P.M.L."). *See In re Nelnet Servicing, LLC, Customer Data Security Breach Litigation*, MDL No. 3053, ECF No. 1 (J.P.M.L.).

1.9.    On December 13, 2022, the J.P.M.L. denied the motion to consolidate under Section 1407.

1.10.    On December 13, 2022, Lowey/SGT on behalf of Plaintiffs in the Action, *Bump*, and *Scott* moved to consolidate all the related actions against Nelnet and Edfinancial in U.S. District Court for the District of Nebraska.

1.11.    While consolidation motions were pending in the District of Nebraska, plaintiff Kathleen Carr initiated an action against OSLA and Nelnet in Oklahoma state court arising out of

---

[2] *See, e.g.*, (1) 4:22-cv-3181; (2) 4:22-cv-3184; (3) 4:22-cv-3185; (4) 4:22-cv-3186; (5) 4:22-cv-3187; (6) 4:22-cv-3188; (7) 4:22-cv-3189; (8) 4:22-cv-3191; (9) 4:22-cv-3193; (10) 4:22-cv-3194; (11) 4:22-cv-3195; (12) 4:22-cv-3196; (13) 4:22-cv-3197; (14) 4:22-cv-3203; (15) 4:22-cv-3204; (16) 4:22-cv-3207; (17) 4:22-cv-3209; (18) 4:22-cv-3211; (19) 4:22-cv-3227; (20) 4:22-cv-3241; (21) 4:22-cv-3259; (22) 4:22-cv-3267; and (23) 8:22-cv-413.

the same Data Security Incident, which was later removed to the U.S. District Court of the Western District of Oklahoma on January 20, 2023. *See Carr*, No. 5:23-cv-00099-R, ECF No. 1. The *Carr* action was later amended on April 17, 2023, to add plaintiffs Keegan Killory and Kelsie Powell.

1.12.    On January 30, 2023, this Court consolidated the twenty-three (23) putative class actions against Nelnet and Edfinancial and appointed Lowey/SGT as Interim Co-Lead Class Counsel.

1.13.    On March 10, 2023, Plaintiffs filed their Amended Complaint against Nelnet and Edfinancial, which, among other things, asserted claims arising out of the Data Security Incident against Nelnet and Edfinancial for negligence, negligence *per se*, breach of implied contract, unjust enrichment, breach of confidence, invasion of privacy, violations of state consumer protection and notification statutes, and declaratory and injunctive relief.

1.14.    Nelnet moved to dismiss Plaintiffs' Amended Complaint on April 24, 2023. The motion to dismiss was fully briefed by July 10, 2023.  Plaintiffs and Nelnet jointly moved the Court to delay ruling on the pending motion to dismiss while the Parties attempted to reach a settlement. After being advised the parties did not reach a settlement following an unsuccessful mediation session, the Court terminated the motion to dismiss subject to reopening after the Court resolved the issues presented by a Motion to Intervene that had been filed.

1.15.    The Settling Entities have not and do not admit any allegations of the Amended Complaint.

1.16.    The Parties have considered the uncertainty and risk of further litigation of the Action—including through further motion practice, discovery, trial, and any possible appeals—and the duration, expense, difficulties, and delays inherent in such litigation. The Parties are also aware of the burdens of proof necessary to establish liability and damages for the claims alleged in the Action and the defenses thereto. The Parties have determined that the Settlement set forth in this Agreement is in their respective best interests and that the Agreement is fair, reasonable, and adequate. The Parties have therefore agreed to settle the claims asserted in the Action pursuant to the terms and provisions of this Agreement, subject to Court approval.

1.17.    It is the intention of the Parties to resolve the disputes and claims which they have between them on the terms set forth below.

**NOW, THEREFORE,** in consideration of the promises, covenants, and agreements herein described and for other good and valuable consideration acknowledged by each of the Parties to be satisfactory and adequate, and intending to be legally bound, the Parties do hereby mutually agree as follows:

## 2.  <u>Definitions</u>

As used in all parts of this Agreement, including the recitals above, and the exhibits hereto, the following terms have the meanings specified below:

2.1.    "**Action**" means *In re Data Security Cases Against Nelnet Servicing, LLC*, No. 4:22-cv-03191 (JMG)(JMD) (D. Neb.).

2.2.    "**Agreement**" or "**Settlement Agreement**" means this Stipulation and Agreement of Class Action Settlement and all its attachments and exhibits, which the Parties

understand and agree set forth all material terms and conditions of the Settlement of the Action between them and which is subject to approval by the Court.

2.3.    "**Amended Complaint**" means the Consolidated Amended Class Action Complaint, at ECF No. 51, filed in the Action on March 10, 2023.

2.4.    "**Approved Claim(s)**" means a claim as evidenced by a Settlement Claim Form submitted by a Settlement Class Member that (a) is timely and submitted in accordance with the directions on the Settlement Claim Form and the terms of this Agreement; (b) is physically signed or electronically verified by the Settlement Class Member; (c) satisfies the conditions of eligibility for a Settlement Benefit as set forth herein; and (d) has been approved by the Claims Administrator.

2.5.    "**Authorized Claimant(s)**" means a Settlement Class Member(s) that has not timely filed a written request for exclusion and is entitled to payment pursuant to this Agreement or order of the Court.

2.6.    "**Business Days**" means Monday, Tuesday, Wednesday, Thursday, and Friday, excluding holidays observed by the U.S. federal government. For the avoidance of doubt, Business Days shall be defined with reference to Eastern Time (ET).

2.7.    "**CAFA Notice**" means the notice to be disseminated to appropriate federal and state officials pursuant to the requirements of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b) and in accordance with Sections 10 and 11 of this Agreement.

2.8.    "**Cash Payment for Reimbursement of Documented Out-of-Pocket Losses**" means the form of Settlement Benefit for Out-of-Pocket Losses, as described in Section 7.

2.9.    "**Cash Payment for Lost Time**" means the form of Settlement Benefit for Lost Time, as described in Section 7.

2.10.    "*Carr*" means the action entitled *Carr, et al. v. Oklahoma Student Loan Authority &*
*Nelnet Servicing, LLC*, No. 5:23-cv-00099, pending in the U.S. District Court for the
Western District of Oklahoma.

2.11.    "**Claims Administration Costs**" means all reasonable costs and expenses incurred by
the Claims Administrator in carrying out its duties under this Agreement, including, but
not limited to, all costs and expenses incurred in connection with creating and
distributing any notice called for by this Agreement, including, but not limited to, Notice
pursuant to the Notice Plan.

2.12.    "**Claims Administrator**" means any Person or entity that the Court approves to perform
the tasks necessary to provide Notice of the Settlement to the Settlement Class and to
otherwise administer the Settlement Fund, as described further herein. Class Counsel
shall be responsible for selecting a Claims Administrator to be approved by the Court,
subject to the agreement of Settling Entities, which agreement shall not be unreasonably
withheld.

2.13.    "**Class Counsel**" means the undersigned counsel for Plaintiffs from the law firms of
Lowey Dannenberg, P.C. and Silver Golub & Teitell LLP.

2.14.    "**Class List**" means the list of individuals whose Personal Information was compromised
in the Data Security Incident that the Settling Entities will provide to the Claims
Administrator.

2.15.    "**Court**" means the U.S. District Court for the District of Nebraska, where the Action is
pending.

2.16.    "**Credit Monitoring and Identity Theft Protection**" means a credit monitoring product that will provide two (2) years of credit monitoring and identity restoration services and at least one million dollars ($1,000,000) in identity theft insurance.

2.17.    "**Data Security Incident**" means the unauthorized third-party access to Nelnet's systems that was made public by Nelnet in August 2022.

2.18.    "**Defendants**" means Nelnet Servicing, LLC and Edfinancial Services, LLC, who are named as Defendants in the Action.

2.19.    "**Distribution Plan**" means the plan of allocation developed by Class Counsel to allocate the Net Settlement Fund, as described in Section 7 of this Agreement, subject to agreement by the Settling Entities, which agreement shall not be reasonably withheld, and approval by the Court.

2.20.    "**Edfinancial**" means Defendant Edfinancial Services, LLC.

2.21.    "**Edfinancial's Counsel**" means the undersigned attorneys for Edfinancial from the law firm of Baker & Hostetler LLP.

2.22.    "**Effective Date**" means the date when all of the conditions set forth in Section 13 of this Agreement have occurred.

2.23.    "**Fairness Hearing**" means the hearing to be conducted before the Court to determine the fairness, adequacy, and reasonableness of the Agreement pursuant to Federal Rule of Civil Procedure 23 and whether to enter a Final Approval Order and Judgment. The Final Approval Order and Judgment shall be entered no earlier than one hundred twenty-five (125) days after the CAFA Notice is served in accordance with Section 11 of this Agreement to ensure compliance with 28 U.S.C. § 1715.

2.24.    "**Fee and Expense Application**" means any motion or request Class Counsel submit to the Court for payment of reasonable attorneys' fees and reimbursement of expenses incurred in prosecuting the Action and resolving the claims that are the subject of this Settlement.

2.25.    "**Final**" (with respect to a judgment or any other court order) means: (i) if no appeal is taken, the expiration of the time to file a notice of appeal under the Federal Rules of Appellate Procedure; or (ii) if an appeal is taken from the judgment or order: (a) the date of final dismissal of any such appeal, or the final dismissal of any proceeding on certiorari or otherwise; or (b) the date the judgment or order is finally affirmed on an appeal, the expiration of the time to file a petition for a writ of certiorari or other form of review, or the denial of a writ of certiorari or other form of review, and, if certiorari or other form of review is granted, the date of final affirmance following review pursuant to that grant.

2.26.    "**Final Approval**" means entry of a Final Approval Order and Judgment.

2.27.    "**Final Approval Order and Judgment**" means an order and judgment from the Court, the form of which shall be mutually agreed upon by the Parties and submitted to the Court in the same or materially the same form, finally approving of the Settlement following (i) preliminary approval of the Settlement, (ii) issuance of notice to the Settlement Class pursuant to the Preliminary Approval Order, and (iii) the Fairness Hearing.

2.28.    "**Lost Time**" means time spent on or after June 10, 2022, through the date of the Settlement Class Member's claim submission trying to prevent and redress misuse of Personal Information, including monitoring financial or other accounts, researching the

Data Security Incident, researching credit monitoring options and/or communicating with financial or other institutions, or taking other actions reasonably related to or in response to receipt of Nelnet's notice concerning the Data Security Incident.

2.29. "**Long Form Notice**" means the detailed form of notice of the proposed Settlement to be distributed to Settlement Class Members, the form of which shall be mutually agreed upon by the Parties and submitted to the Court for approval in the same or materially the same form in connection with the motion for preliminary approval of the Settlement.

2.30. "**Nelnet**" means Defendant Nelnet Servicing, LLC.

2.31. "**Nelnet's Counsel**" means the undersigned attorneys and all counsel of record in the Action and *Carr* for Nelnet from the law firms of Mullen Coughlin LLC and the Perry, Guthery Law Firm.

2.32. "**Net Settlement Fund**" means the Settlement Fund less any Court-approved disbursements, including: (i) Taxes (ii) Claims Administration Costs; (iii) attorneys' fees and expenses awarded by the Court; (iv) any Service Awards approved by the Court; and (v) any other Court-approved costs and expenses.

2.33. "**Notice**" means reasonable notice of the Settlement provided to Settlement Class Members pursuant to Federal Rule of Civil Procedure 23(e). The Notice shall describe the Settlement and advise the Class Members of the scheduling of a settlement fairness hearing and of any applicable procedure for submitting objections to the Settlement.

2.34. "**Notice Date**" means the date by which Notice will be fully commenced, which shall be forty-five (45) days after the Court enters the Preliminary Approval Order.

2.35. "**Notice Plan**" means the Settlement Notice program to be presented to the Court for approval in connection with a motion seeking a Preliminary Approval Order. The Notice

Plan includes the Settlement Website and toll-free telephone line to be made available to Settlement Class Members.

2.36.  "**Objection Deadline**" means the deadline by which any Settlement Class Member seeking to object to the fairness, reasonableness, or adequacy of any term or aspect of the Settlement, Distribution Plan, the Final Approval Order and Judgment, the Fee and Expense Application, or the Service Awards, or making a request to be heard and appear, in person or by his or her attorney, at the Fairness Hearing, and present evidence or argument that may be proper and relevant, must file the written objection or request to be heard with the Court and serve on the Parties' Counsel, as set forth in the Preliminary Approval Order.  Such deadline shall be sixty (60) days after the Notice Date.

2.37.  "**Opt-Out Deadline**" means the deadline by which the Claims Administrator must receive those requests from Settlement Class Members requesting to be excluded (*i.e.*, opt out), as set forth in the Preliminary Approval Order. Such deadline shall be sixty (60) days after the Notice Date.

2.38.  "**OSLA**" means the Oklahoma Student Loan Authority.

2.39.  "**OSLA's Counsel**" means the undersigned attorneys for OSLA from the law firm of Cipriani & Werner.

2.40.  "**Out-of-Pocket Losses**" are documented unreimbursed costs or expenditures incurred by a Settlement Class Member that are fairly traceable to the Data Security Incident. Out-of-Pocket Losses may include, without limitation, the following: (i) unreimbursed costs, expenses, losses, or charges incurred on or after June 10, 2022 as a result of identity theft or identity fraud, falsified tax returns, or other possible misuse of a Settlement Class Member's Personal Information; (ii) costs incurred on or after June 10,

11

2022, associated with accessing or freezing/unfreezing credit reports with any credit reporting agency; (iii) other miscellaneous expenses incurred related to any Out-of-Pocket Loss, such as notary, fax, postage, copying, mileage, and long-distance telephone charges; or (iv) credit monitoring or other mitigative costs that were incurred on or after June 10, 2022, through the date of the Settlement Class Member's claim submission.

2.41.   "**Parties**" means the Plaintiffs, on behalf of themselves and the Settlement Class, and the Settling Entities, with each being a Party.

2.42.   "**Parties' Counsel**" means Class Counsel and the Settling Entities' Counsel.

2.43.   "**Person**" means a natural person or, in the case of death, any spouses, heirs, predecessors, successors, representatives or assigns of any of the foregoing.

2.44.   "**Personal Information**" is intended to be broadly construed and includes any information that could be used to identify, locate, or contact a person (whether on its own or in combination with other information). The term Personal Information also includes, without limitation, student loan account registration information, including names, addresses, e-mail addresses, phone numbers, and Social Security numbers. For the avoidance of doubt, the term Personal Information includes all information deemed compromised as a result of the Data Security Incident.

2.45.   "**Plaintiffs**" means Ian Scott, Jessica Alexander, Pamela Bump, Bridget Cahill, Lesly Canales, Melissa Charbonneau, Douglas Conley, Noah Helvey, Dallin Iler, Dustin Jones, Kayli Lazarz, Brittni Linn, Delilah Oliveira, Devinne Peterson, Eric Polanco, Justin Randall, Sofia Rodriguez, Joshua Sanchez, Charles Sangmeister, William Spearman, Taylor Vetter, Rachel Woods, Garner J. Kohrell, Olivia Covington, Alexis Luna, MaKayla Nelson, and Mary Traynor.

12

2.46.  "**Preliminary Approval Order**" means an order by the Court, the form of which shall be mutually agreed upon by the Parties and submitted to the Court in the same or materially the same form, issued in response to the motion for preliminary approval of the Settlement and providing for, *inter alia*, preliminary approval of the Settlement, including certification of the Settlement Class for purposes of the Settlement only, a stay of all proceedings in the Action, and issuance of notice of the Settlement to the Settlement Class.

2.47.  "*Pro Rata* **Cash Payment**" means the form of Settlement Benefits as described in Section 7.

2.48.  "**Released Claims**" means any and all manner of claims, including unknown claims, causes of action, cross-claims, counter-claims, charges, liabilities, demands, judgments, suits, obligations, debts, setoffs, rights of recovery, or liabilities for any obligations of any kind whatsoever (however denominated), whether class, derivative, or individual, in law or equity or arising under constitution, statute, regulation, ordinance, contract, common law or otherwise in nature, for fees, costs, penalties, fines, debts, expenses, attorneys' fees, interest, and damages, whenever incurred, for restitution or any other payment of money, and for liabilities of any nature whatsoever (including joint and several), known or unknown, suspected or unsuspected, asserted or unasserted, in any jurisdiction which Releasing Parties or any of them ever had, now has, or hereafter can, shall, or may have, representatively, derivatively or in any other capacity, against the Released Parties arising from or relating in any way to conduct alleged in the Action, or which could have been alleged in the Action against the Released Parties.

2.49.   "**Released Parties**" means the Settling Entities, their predecessors, successors, and assigns, their direct and indirect parents, subsidiaries, affiliates, and joint ventures, and each of their respective current and former officers, directors, employees, managers, members, partners, agents (in their capacity as agents of Nelnet, Edfinancial, or OSLA), shareholders (in their capacity as shareholders of Nelnet, Edfinancial, or OSLA), attorneys, insurers, reinsurers, or legal representatives, and the predecessors, successors, heirs, executors, administrators, and assigns of each of the foregoing. As used in this provision, "affiliates" means entities controlling, controlled by, or under common control with a Released Party. Released Parties includes, without limitation, any Person related to any such entity who is, was, or could have been named as a defendant in any action arising from the Data Security Incident, other than any Person who is found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Security Incident or who pleads guilty or *nolo contendere* to any such charge.

2.50.   "**Releasing Parties**" means each and every Plaintiff and each and every Settling Class Member on his or her own behalf or on behalf of his or her respective predecessors, successors and assigns.

2.51.   "**Remaining Cash Payment Fund**" equals the Net Settlement Fund minus the (i) the cost of Credit Monitoring and Identity Theft Protection for Approved Claims, (ii) the Cash Payments for Documented Out-of-Pocket Losses, and (iii) the Cash Payments for Lost Time.

2.52.   "**Service Award(s)**" means any award to Class Representatives by the Court for their service to the Settlement Class, which shall be paid from the Settlement Fund.

2.53.   "**Settlement**" means the settlement of the Action by and between the Parties, and the terms and conditions thereof as stated in this Agreement.

2.54.   "**Settlement Amount**" means the ten million United States Dollars ($10,000,000.00) that the Settling Entities shall cause to be paid pursuant to Section 4 of this Agreement.

2.55.   "**Settlement Benefits**" means any Settlement Payment, any Credit Monitoring and Identity Theft Protection, and any other benefits Settlement Class Members receive pursuant to this Agreement.

2.56.   "**Settlement Class**" or "**Class**" means all Persons in the United States whose Personal Information was compromised in the Data Security Incident.  The Settlement Class specifically excludes: (i) the Settling Entities, any Person in which the Settling Entities have a controlling interest, and the Settling Entities officers, directors, legal representatives, successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; (iii) any Person that timely and validly opts out of the Settlement and (iv) any Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Security Incident or who pleads guilty or *nolo contendere* to any such charge.

2.57.   "**Settlement Class Member**" or "**Class Member**" means a Person who is a member of the Class.

2.58.   "**Settlement Claim Form**" means the claim form for use by Settlement Class Members to submit a claim to receive Settlement Benefits, as approved by the Court. The Settlement Claim Form must be submitted physically (via U.S. Mail) or electronically (via the Settlement Website) by Class Members who wish to file a claim for their given

share of the Settlement Benefits pursuant to the terms and conditions of this Agreement. The Settlement Claim Form shall be available for download from the Settlement Website. The Claims Administrator shall mail a Settlement Claim Form, in hardcopy form, to any Class Member who so requests.

2.59. "**Settlement Claims Deadline**" means the deadline by which Settlement Class Members must select a payment method for any Settlement Payment to which the Claimant is entitled, which shall be sixty (60) days after the Notice Date, or upon such other date as set by the Court in the Preliminary Approval Order.

2.60. "**Settlement Fund**" means the Settlement Amount plus any interest that may accrue in the Settlement Fund Account.

2.61. "**Settlement Fund Account**" means the account described in Section 5 of this Agreement. The Settlement Fund Account shall be an interest-bearing escrow account controlled by the Claims Administrator, subject to the direction of the Court unless counsel for all Parties can resolve disputed issues by agreement.

2.62. "**Settlement Payment**" means any cash payment to be made to any Authorized Claimant pursuant to Section 7 herein, which consists of either (i) the *Pro Rata* Cash Payment, or (ii) the Cash Payment for Reimbursement of Documented Out-of-Pocket Losses and the Cash Payment for Lost Time.

2.63. "**Settlement Website**" means the website to be established and maintained by the Claims Administrator, which shall contain all material information regarding the Settlement.

2.64. "**Settling Class Members**" means Plaintiffs and other members of the Settlement Class who do not timely and validly exclude themselves from the Settlement pursuant to

16

Federal Rule of Civil Procedure 23(c) and in accordance with the procedure to be established by the Court.

2.65.    "**Settling Entities**" means Nelnet, Edfinancial, and OSLA.

2.66.    "**Settling Entities' Counsel**" means Nelnet's, Edfinancial's, and OSLA's Counsel.

2.67.    "**Short Form Notice**" means the summary form of notice of the proposed Settlement to be distributed to Settlement Class Members, the form of which shall be mutually agreed upon by the Parties and submitted to the Court for approval in the same or materially the same form in connection with the motion for preliminary approval of the Settlement.

2.68.    "**Taxes**" means (i) any applicable taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest, or penalties) arising in any jurisdiction with respect to the income or gains earned by or in respect of the Settlement Fund, including, without limitation, any taxes that may be imposed upon the Parties or the Parties' Counsel with respect to any income or gains earned by or in respect of the Settlement Fund; (ii) any other taxes, duties, and similar charges imposed by a government authority (including any estimated taxes, interest, or penalties) relating to the Settlement Fund that the Claims Administrator determines are or will become due and owing, if any; and (iii) any and all expenses, liabilities, and costs incurred in connection with the taxation of the Settlement Fund (including without limitation, expenses of tax attorneys and accountants).

## 3.  Settlement Class Certification.

3.1.    The Settling Entities consent to the certification of the Settlement Class for settlement purposes only. Nothing in this Agreement shall preclude the Settling Entities from (i) opposing motions for class certification or from taking positions in actions other than the

Action and (ii) opposing motions for class certification or from taking any other positions in this Action if the Settlement is terminated. If the Settlement is terminated, the Parties agree neither this Agreement nor any documents or communications regarding the negotiation of this Settlement shall be admissible in the Action, *Carr*, or any other litigation arising from the Data Security Incident.

**4. <u>Settlement Fund</u>**

4.1.    The Settling Entities agree to make a non-reversionary payment of the Settlement Amount into the Settlement Fund Account as follows:

4.1.1.    Within thirty (30) days after (a) the Court or a court in the U.S. District Court for the Western District of Oklahoma grants preliminary approval of the Settlement, and (b) the federal courts in both Nebraska and Oklahoma have agreed that coordinated notice is appropriate to the classes in both jurisdictions either by grant of preliminary approval or issuance of an order adopting, deferring to, or endorsing the other court's grant of preliminary approval, the Settling Entities shall cause to be paid into the Settlement Fund Account a reasonable portion of the Settlement Amount, estimated to be no more than four hundred thousand U.S. dollars ($400,000.00), which will be made available prior to Final Approval of the Settlement for Claims Administration Costs.

4.1.2.    The remainder of the Settlement Amount (*i.e.*, nine million six hundred thousand U.S. dollars ($9,600,000.00)) shall be paid by the Settling Entities within twenty-five (25) days of (a) entry of judgment granting final approval of the Settlement or of an order dismissing with prejudice the Settlement Class's claims against the Settling Entities, in the Action and in *Carr*, or in another action in the U.S. District

Court for the Western District of Oklahoma, provided that at least one of the aforementioned courts enters judgment granting Final Approval of the Settlement and any other court with a related pending action dismisses it with prejudice; **and** (b) either the expiration of the appeal period following entry of an order(s) dismissing with prejudice or granting Final Approval of the Settlement and entering the Final Judgment releasing of all Settling Entities, or the resolution of any appeals from the foregoing order(s) for, upholding the Settlement and entry of judgment on remand.

4.2.    The Settlement Fund shall be used to pay in the following order: (i) Taxes and Tax-related Expenses; (ii) Notice and Administrative Expenses; (iii) attorneys' fees and expenses approved by the Court; (iv) Service Award payments approved by the Court; (v) Credit Monitoring and Identity Theft Protection; (vi) Approved Claims for Cash Payments for Reimbursement of Documented Out-of-Pocket Losses and Cash Payments for Lost Time; and (vii) Approved Claims for *Pro Rata* Cash Payments.

4.3.    The Claims Administrator shall provide the Settling Entities with wire transfer information for the escrow account within five (5) Business Days of the entry of an order by the Court preliminarily approving the Parties' Settlement, and such information shall include contact details (name, title, e-mail and phone number) of a Person employed by the account holder to orally verify the wire transfer details, and any other information that the Settling Entities reasonably may request in order to facilitate payment, which may be made by check or by wire.

4.4.    The Claims Administrator shall repeat the process within five (5) Business Days of the entry of judgment of final approval. If an appeal is filed, the Claims Administrator shall

19

repeat the process within five (5) days of the entry of an order resolving the appeal and upholding the Settlement.

4.5.    Other than payment of the Settlement Amount, the Settling Entities shall have no responsibility for any other costs, including any attorneys' fees and expenses, Service Awards, Taxes, or costs of any Claims Administration Costs in connection with this Settlement.

4.6.    <u>No Reversion</u>. This is not a claims-made settlement; and there will be no reversion. In the event that the Settlement is terminated, any monies paid by the Settling Entities into the escrow account plus all interest accrued thereupon, less Claims Administration Costs and Taxes to the extent such costs and/or taxes have actually been incurred as of the date of the termination of the Settlement shall be returned to the Settling Entities within fifteen (15) days of termination.  The Settling Entities agree that entire amount shall be paid to Nelnet who will be responsible for redistributing the monies among the Settling Entities according to their respective individual shares.

## 5.    **Settlement Fund Account**

5.1.    The Settlement Fund monies shall be paid as set forth in Section 4.1 above and held in a Settlement Fund Account which shall be established and maintained by the Claims Administrator, subject to the direction of the Court unless (a) otherwise provided for by this Agreement or (b) the Parties' Counsel can resolve disputed issues by agreement.

5.2.    All funds held in the Settlement Fund Account shall be deemed to be in the custody of the Court until such time as the funds shall be disbursed pursuant to this Agreement or as approved by the Court.

5.3.    The Parties agree that the Settlement Fund Account is intended to constitute a "qualified settlement fund" within the meaning of Treasury Regulation § 1.468B-1, *et seq.*, and that the Claims Administrator shall be the "administrator" within the meaning of Treasury Regulation § 1.468B-2(k)(3). The Parties further agree that the Settlement Fund Account shall be treated as a qualified settlement fund from the earliest date possible and agree to any relation-back election required to treat the Settlement Fund Account as a qualified settlement fund from the earliest date possible.

5.4.    Upon or before establishment of the Settlement Fund Account, the Claims Administrator (or an appropriate designee) shall apply for an employer identification number for the Settlement Fund Account utilizing IRS Form SS-4 and, in accordance with Treasury Regulation § 1.468B-2(k)(4), shall provide the Settling Entities with that employer identification number on a properly completed and signed IRS Form W-9.

5.5.    The Claims Administrator shall file or cause to be filed, on behalf of the Settlement Fund Account, all required federal, state, and local tax returns, information returns, including, but not limited to, any Form 1099-series return, and tax withholdings statements, in accordance with the provisions of Treasury Regulation § 1.468B-2(k)(l) and Treasury Regulation § l.468B-2(1)(2). Any contract, agreement, or understanding with the Claims Administrator relating to the Settlement Fund Account shall require the Claims Administrator or its agent to file or cause to be filed, on behalf of the Settlement Fund Account, all required federal, state, and local tax returns, information returns, including, but not limited to any Form 1099-series return, and tax withholdings statements, in accordance with the provisions of Treasury Regulation § 1.468B-2(k)(1) and Treasury Regulation § l.468B-2(1)(2). The Claims Administrator may, if necessary, secure the

advice of a certified public accounting firm in connection with its duties and tax issues arising hereunder the costs of which shall be considered Claims Administration Costs and paid from the Settlement Fund.

5.6.    All reasonable costs for Notice and the Claims Administrator prior to Final Approval (up to four hundred thousand U.S. dollars ($400,000.00)) shall be paid out of the Settlement Fund Account and shall be timely paid by the Claims Administrator without prior order of the Court.

5.7.    All Taxes relating to the Settlement Fund Account shall be paid out of the Settlement Fund Account and shall be timely paid by the Claims Administrator without prior order of the Court.  Further, the Settlement Fund Account shall indemnify and hold harmless the Plaintiffs, Settling Entities, and Parties' Counsel for Taxes (including, without limitation, taxes payable by reason of any such indemnification payments).

5.8.    Following its payment of the Settlement Amount as described in Section 4 of this Agreement, the Settling Entities shall have no responsibility, financial obligation, or liability whatsoever with respect to selection of the Settlement Fund Account, investment of Settlement Fund, payment of federal, state, and local income, employment, unemployment, excise, and any other Taxes, penalties, interest, or other charges related to Taxes imposed on the Settlement Fund Account or its disbursements, or payment of the administrative, legal, accounting, or other costs occasioned by the use or administration of the Settlement Fund Account.

## 6.    Presentation of Settlement to the Court

6.1.    As soon as practicable after the execution of the Agreement, Plaintiffs and Class Counsel shall submit this Agreement to the Court, and Plaintiffs shall file a motion for preliminary

approval of the Settlement with the Court requesting entry of the Preliminary Approval Order that:

6.1.1.    Conditionally certifies the Settlement Class for settlement purposes only;

6.1.2.    Preliminarily approves the Settlement Agreement;

6.1.3.    Appoints Lowey Dannenberg, P.C. and Silver Golub & Teitell LLP as Class Counsel;

6.1.4.    Appoints Plaintiffs as the settlement class representatives;

6.1.5.    Approves the Notice Plan;

6.1.6.    Approves the Short Form Notice;

6.1.7.    Approves the Long Form Notice; and

6.1.8.    Appoints A.B. Data, Ltd. as the Claims Administrator.

6.2.    The Long Form Notice and Short Form Notice shall be reviewed by the Claims Administrator and may be revised as agreed by the Parties prior to the submission to the Court for approval. Notwithstanding the foregoing, and unless otherwise ordered by the Court, the Parties may make non-material modifications to the Long Form Notice and Short Form Notice following submission to the Court for approval.

6.3.    After entry by the Court of a Preliminary Approval Order, and prior to the date for Opt-Out Deadline and Objection Deadline, Class Counsel shall file their Fees and Expense Application, and Plaintiffs will apply for Service Awards.

6.4.    No later than forty-five (45) days after the Notice Date, Plaintiffs shall file a motion seeking Final Approval of the Settlement and entry of a Final Approval Order and Judgment, including a request that the preliminary certification of the Settlement Class for settlement purposes be made final, provided however, that Plaintiffs may not seek

entry of an order of Final Approval of the Settlement until ninety (90) days after the last date on which the appropriate federal official and the appropriate state official are served with the notice required under subsection (b) of 28 U.S.C. § 1715.

6.5.    If necessary, the Parties will utilize all available methods to enforce the Settlement in Oklahoma including but not limited to:

6.5.1.    Filing a separate action in the U.S. District Court for the Western District of Oklahoma for the limited purpose of approving the Settlement; and

6.5.2.    Moving to intervene in *Carr* to, among other things, stay the *Carr* case, enforce this Settlement, or obtaining an order and judgment dismissing the claims with prejudice against the Settling Entities.

## 7. Settlement Benefits and Distribution Plan

7.1.    The Distribution Plan for this Settlement is designed to exhaust the Settlement Fund.

7.2.    All Settlement Class Members are eligible to receive a portion of the Net Settlement Fund if they have an Approved Claim and are determined to be Authorized Claimants.

7.3.    **Settlement Benefits to Authorized Claimant.** Each Authorized Claimant may seek Credit Monitoring and Identity Theft Protection. In addition, each Authorized Claimant may seek a Settlement Payment based either on (a) Sections 7.5 and 7.6, or (b) Section 7.7, but not both. The order in which the Settlement Benefits will be paid is determined by the order described in Section 4.2.

7.4.    **Credit Monitoring and Identity Theft Protection.** All Authorized Claimants may also choose to register for two (2) years of a credit monitoring product that includes identity restoration services and one million dollars ($1,000,000) of insurance for loses related to identity theft. There is no documentation required to claim this benefit. Authorized

24

Claimants will receive an activation code via e-mail to begin the Credit Monitoring and Identity Theft Protection.

7.4.1.  To receive Credit Monitoring and Identity Theft Protection, the credit monitoring section of the Settlement Claim Form must be completed.

7.5.  **Cash Payment for Reimbursement of Documented Out-of-Pocket Losses.** Settlement Class Members that provide documented evidence of out-of-pocket losses directly attributable to the Data Security Incident may be reimbursed up to $5,000.00 ("Cash Payment for Reimbursement of Documented Out-of-Pocket Losses").

7.5.1.  To receive a Cash Payment for Reimbursement of Documented Out-of-Pocket Losses, Settlement Class Members must include with their Settlement Claim Form: (i) third-party documentation supporting the loss; and (ii) a brief description of the documentation describing the nature of the loss, if the nature of the loss is not apparent from the documentation alone. Third-party documentation can include receipts or other documentation not "self-prepared" by the Settlement Class Member that document the costs incurred. Self-prepared documents such as handwritten receipts are, by themselves, insufficient to receive reimbursement, but can be considered to add clarity or support other submitted documentation.

7.5.2.  <u>Assessing Claims for Cash Payment for Reimbursement of Documented Out-of-Pocket Losses</u>. The Claims Administrator shall verify that each person who submits a Settlement Claim Form is an Authorized Claimant. The Claims Administrator shall have the sole discretion and authority to determine whether and to what extent the documentation submitted reflects valid out-of-pocket losses that were actually incurred and fairly traceable to the Data Security Incident. The

Claims Administrator may consult with Class Counsel in making these determinations. In assessing what qualifies as "fairly traceable," the Parties agree to instruct the Claims Administrator to consider (i) whether the timing of the loss occurred on or after the Data Security Incident; and (ii) whether the Personal Information used to commit identity theft or fraud consisted of the same type of Personal Information that was involved in the Data Security Incident. Costs expended after June 10, 2022 for mitigation measures like credit monitoring services, fraud resolution services, and professional services incurred to address identity theft or fraud on or after shall be presumed "reasonably incurred." The Claims Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

7.6.    **Cash Payment for Lost Time**. All Settlement Class Members may submit a claim for reimbursement of time spent of up to four (4) hours at twenty-five dollars ($25) per hour. Settlement Class Members can receive reimbursement for Lost Time by providing, under penalty of perjury, a brief description of the actions taken in response to the Data Security Incident and the time associated with each action. Claims for Lost Time are capped at $100.00 per individual. A claim for Lost Time may be combined with a claim for Out-of-Pocket Losses, but in no circumstance will an Authorized Claimant be eligible to receive more than the $5,000.00 individual cap.

7.6.1.    <u>Assessing Claims for Lost Time</u>. The Claims Administrator shall have the sole discretion and authority to determine whether the prerequisites have been met in order to award payments of Lost Time but may consult with Class Counsel and

26

Settling Entities Counsel in making individual determinations. The Claims Administrator is authorized to contact any Settlement Class Member (by e-mail, telephone, or U.S. mail) to seek clarification regarding a submitted claim prior to making a determination as to its validity.

7.7.    ***Pro Rata* Cash Payment.** Authorized Claimants may receive a *pro rata* share (the "*Pro Rata* Cash Payment*") from the Remaining Cash Payment Fund. No documentation is required to receive the *Pro Rata* Cash Payment.

    7.7.1.    California residents shall receive a 2x multiplier on their *Pro Rata* Cash Payment claims. Residency shall be determined by the Settlement Class Member's primary residence at the time of the Data Security Incident based upon the Class List provided by the Settling Entities and shall be attested to by the Settlement Class Member on the Settlement Claim Form. Reasonable proof of California residency may be required as determined by the Claims Administrator.

    7.7.2.    To calculate the *Pro Rata* Cash Payment, the Remaining Cash Payment Fund will be divided by the total of (a) double the number of Approved Claims submitted by California residents plus (b) the number of Approved Claims submitted by non-California residents. The resulting amount will determine the "Base Amount" (*i.e.,* Base Amount = Remaining Fund / ((2 * # of valid CA claims) + (# of valid non-CA claims))). The Base Amount will be the *Pro Rata* Cash Payment distributed to non-California Class Members; California Class Members will receive twice the Base Amount as their *Pro Rata* Cash Payment.

27

7.8.    Settlement Class Members who submit an Approved Claim for Cash Payment for Reimbursement of Documented Out-of-Pocket Losses and/or Cash Payment for Lost Time will not also receive a *Pro Rata* Cash Payment.

    7.8.1.    However, in the event that a Settlement Class Member submits an Approved Claim for a Cash Payment for Reimbursement of Documented Out-of-Pocket Losses and Cash Payment for Lost Time, but the value of such claim is less than the amount that would have been received as a *Pro Rata* Cash Payment, the Claims Administrator will increase the value of that Settlement Class Member's claim to match the *Pro Rata* Cash Payment and convert the Settlement Class Member's claim into a *Pro Rata* Cash Payment claim.

        7.8.1.1 For example, if an Authorized Claimant has an Approved Claim of $50 as the Cash Payment for Reimbursement of Documented Out-of-Pocket Losses and Cash Payment for Lost Time, and if the *Pro Rata* Cash Payment is $60, then the Claims Administrator will increase the value of that Settlement Class Member's claim to the *Pro Rata* Cash Payment amount of $60.

        7.8.1.2 For the avoidance of doubt, Settlement Class Members that are California residents will be entitled to have their claim amount increased to the *Pro Rata* Cash Payment amount available to California residents if their Approved Claim for Cash Payment for Reimbursement of Documented Out-of-Pocket Losses is less than the *Pro Rata* Cash Payment for California residents.

7.9.     ***Pro Rata* Reduction of Claims.** In the event that the aggregate amount of all claims for Credit Monitoring and Identify Theft Production, Cash Payments for Reimbursement of Documented Out-of-Pocket Losses and Lost Time, and *Pro Rata* Cash Payments exceeds the total amount of the Net Settlement Fund, then the value of such payments shall be reduced on a *pro rata* basis in the reverse order of the payment priority set forth in Section 4.2, such that the aggregate value of all payments for benefits does not exceed the Net Settlement Fund.

7.10.    A legal guardian for a Settlement Class Member who is under the age of eighteen (18) years old at the time of claim submission may submit a Settlement Claim Form seeking Settlement Payment on the minor's behalf so long as the legal guardian provides sufficient documentation to establish their relationship with the minor Settlement Class Member.

7.11.    By the Settlement Claims Deadline, each Settlement Class Member seeking a Settlement Benefit must submit a Settlement Claim Form that (a) includes the unique claimant ID code and/or other information provided to them on the Short Form Notice sent by the Claims Administrator; (b) indicates whether Settlement Class Member opts to receive Credit Monitoring and Identity Theft Protection; (c) indicates the Settlement Payment being requested (*Pro Rata* Cash Payment or Cash Payment for Reimbursement of Documented Out-of-Pocket Losses and Lost Time); and (d) selects a payment method to receive the Settlement Payment. Use of the unique claimant ID code is necessary to confirm that the Person is a Settlement Class Member. Each Settlement Class Member shall provide their mailing address, e-mail address and, if preferred, their "handle" or unique identifier on a supported electronic payment platform, which will be used by the

Claims Administrator to transmit the Settlement Payment via an electronic payment platform. If the Settlement Class Member does not have a handle for an electronic payment platform or prefers not to receive the Settlement Payment via an electronic payment platform, the Settlement Class Member must select the option to receive the Settlement Payment by check at the mailing address provided. Following receipt of a Settlement Class Member's selection of a payment method, the Claims Administrator will e-mail or mail a confirmation receipt to the Settlement Class Member.

7.11.1.   A Settlement Claim Form shall be deemed to have been timely submitted if received by the Claims Administrator with a postmark indicated on the envelope and if mailed by USPS first-class mail and addressed in accordance with the instructions herein. In all other cases, the Settlement Claim Form shall be deemed to have been submitted when received via the online claims portal by the Claims Administrator.

7.11.2.   The Claims Administrator will review each Settlement Claim to confirm that the claimant is a Settlement Class Member and is thus an Authorized Claimant by confirming that the information contained in the election matches the information provided by the Settling Entities and/or the Claims Administrator. Settlement Claims that do not contain the required information will be rejected. Prior to rejecting the election, the Claims Administrator may communicate with the Settlement Class Member to give the Settlement Class Member the opportunity to remedy any curable deficiencies with the information provided in the election. If a Settlement Class Member fails to remedy any curable deficiencies, the Claims Administrator shall notify the Settlement Class Member in a timely fashion and in

writing that the Settlement Claim has been rejected, setting forth the reasons thereof.

7.11.3.   To the extent the Claims Administrator determines a claim for a Cash Payment for Reimbursement of Out-of-Pocket Losses is deficient in whole or part, within a reasonable time of making such a determination, the Claims Administrator shall notify the Settlement Class Member of the deficiencies and give the Settlement Class Member at least seven (7) days to cure the deficiencies. Such notifications shall be sent via e-mail, unless the claimant did not provide an e-mail address, in which case such notifications shall be sent via U.S. mail. If the Settlement Class Member attempts to cure the deficiencies but, at the sole discretion and authority of the Claims Administrator, fails to do so, the Claims Administrator shall notify the Settlement Class Member of that determination within ten (10) days of the determination. The Claims Administrator may consult with Class Counsel in making such determinations.

7.11.4.   Each Settlement Class Member shall be deemed to have submitted to the jurisdiction of the Court with respect to such Settlement Class Member's Settlement Payment, and such Settlement Class Member's Settlement Payment will be subject to investigation and discovery under the Federal Rules of Civil Procedure, provided that such investigation and discovery shall be limited to that Settlement Class Member's status as a Settlement Class Member. No discovery shall be allowed on the merits of the Action or Settlement in connection with processing of the Settlement Claims.

7.11.5.    The Claims Administrator will file a full account of the Approved Claims with the Court including a declaration describing the proposed distribution of Settlement Payments by checks and electronic payment platforms for Court review in advance of the Fairness Hearing.

7.11.6.    Within thirty (30) days following the later of (a) the Effective Date of the Settlement or (b) the Court's review of the Claims Administrator's declaration (if such review is separate from Final Approval of the Settlement), the Claims Administrator will distribute the Settlement Payment to all Authorized Claimants.

7.12.    For Authorized Claimants that elected to receive their Settlement Payment via an electronic payment platform, the Claims Administrator will cause payment to be issued via the selected platform. Authorized Claimants will be notified and provided a reasonable opportunity to update their electronic payment platform information (or request payment by check) prior to disbursement of the Settlement Payment. Once the update period has expired and the Claims Administrator issues payment to the Authorized Claimant using the confirmed electronic payment platform information, no reissuance of any Settlement Payment may be requested.

7.12.1.    For Authorized Claimants who did not elect to use an electronic payment platform, checks in the amount of the Settlement Payment will be mailed.

7.12.2.    All Settlement Payment checks shall be void sixty (60) days after their respective issuance and shall bear the language: "This check must be cashed within sixty (60) days, after which time it is void."

7.12.3.    For Authorized Claimants whose checks are returned as undeliverable, the Claims Administrator will endeavor to locate new addresses by running the undeliverable

addresses through address lookup services and/or when possible, by e-mailing the Authorized Claimant for updated information. Where a new address is located, the Claims Administrator will update the database accordingly and reissue a check to the Authorized Claimant at the new address. In the event a check is lost or damaged or otherwise requires reissuance, the Claims Administrator will issue a replacement. Check reissues will be undertaken only upon written instructions from the Authorized Claimant, provided that the Authorized Claimant returns the previous check if appropriate. For all reissued checks, the Claims Administrator will void the initial payment prior to reissuing a payment. The Claims Administrator's outreach program shall end thirty (30) days after the initial void date. Authorized Claimants will be informed that, if they do not cash their Settlement Payment check within sixty (60) days of the mail date, or do not cash reissued checks within thirty (30) days of the mailing of such reissued checks, their checks will lapse, and their entitlement to recovery will be irrevocably forfeited.

7.12.4.    Thereafter, any balance which still remains in the Net Settlement Fund from uncashed checks, after accounting for and paying any additional Taxes or Claims Administration Costs that may have been incurred, will be reallocated *pro rata* among Authorized Claimants that cashed their check and those that elected payment via an electronic payment, so long as the relocated *pro rata* share to each eligible Authorized Claimant is at least $5.00.

7.12.5.    Any balance which remains in the Net Settlement Fund that cannot be reallocated as provided in Section 7.12.4 will be distributed as a *cy pres* award to a

cybersecurity public interest organization as agreed upon by the Parties and approved by the Court.

7.13.   No Person shall have any claim against Plaintiffs, Class Counsel, the Claims Administrator, any other Person designated by Class Counsel, or any of the Settling Entities or Released Parties based on determinations or distributions made substantially in accordance with this Agreement and the Settlement contained herein or further order(s) of the Court.

7.14.   None of the Released Parties shall have any role in, or any liability, obligation, or responsibility for the administration of the Settlement or the distribution of the Settlement Fund, including with respect to: (i) any act, omission, or determination by Class Counsel or the Claims Administrator, or any of their respective designees or agents, in connection with the administration of the Settlement or otherwise; or (ii) the determination, administration, or calculation of Settlement Payments from the Settlement Fund.

7.15.   It is understood and agreed by the Parties that the Distribution Plan described above, or any other proposed plan to allocate the Settlement Fund including, but not limited to, any adjustments to an Authorized Claimant's Settlement Payment set forth therein, is to be considered by the Court separately from the Court's consideration of the fairness, adequacy, and reasonableness of the Settlement set forth in this Agreement unless the Distribution Plan is the basis for the Court finding the Settlement to be unfair, inadequate or unreasonable.

## 8.  Nelnet's Additional Obligations

8.1.    Nelnet agrees to provide Class Counsel with reasonable confirmatory discovery related to the individual ("Gray Hat Hacker") who made unauthorized inquiries of Nelnet's systems.

    8.1.1.    Nelnet shall have no obligation to provide confirmatory discovery that is subject to a privilege or other protection from disclosure or that is restricted from disclosure under any applicable data privacy statutes, laws, codes, or regulations.

    8.1.2.    For the avoidance of doubt, Plaintiffs, OSLA, Edfinancial and their respective counsel expressly agree that the documents, materials, and/or information provided by Nelnet may not be used for the institution or prosecution of any other action or proceeding against any Released Party.

8.2.    Nelnet has made improvements to its security systems and practices since the filing of this Action.

## 9.  Duties of Claims Administrator

9.1.    Class Counsel shall oversee dissemination of the Notice by the Claims Administrator.

9.2.    The Claims Administrator shall perform the functions specified in this Agreement, any functions specified in the Notice Plan after Court approval, and any other functions approved by the Court.  In addition to other responsibilities that are described elsewhere in this Agreement (and in the Notice Plan, once approved by the Court), the duties of the Claims Administrator shall include:

    9.2.1.    Contacting Settlement Class Members and confirming their eligibility to receive a Settlement Payment using, among other information, the Class List provided by the Settling Entities.

9.2.1.1 The Claims Administrator may at any time (but is not required to) request from any Person seeking a Settlement Payment (including via e-mail, phone or mail) supplemental information to confirm the Person is a Settlement Class Member.  If supplemental information is requested, the Claims Administrator shall give the claimant reasonable time in the Claims Administrator's discretion but not exceeding ten (10) days to provide the supplemental information before rejecting the Settlement Claim.  Requests for supplemental information shall be made as promptly as reasonably possible after the Settlement Claims Deadline (or earlier in the discretion of the Claims Administrator).  If the supplemental information does not cure a defect reasonably determined by the Claims Administrator, then the Person will be deemed ineligible, and there shall be no obligation to pay the Settlement Payment.  For the avoidance of doubt, the Claims Administrator is not required to request supplemental information, and in reasonably exercising its discretion, may deny a Settlement Claim without requesting supplemental information.

9.2.2.  Establishing and maintaining a dedicated address for receiving correspondence, Settlement Claims, and paper requests for exclusion from the Settlement.

9.2.3.  Fully implementing the Notice Plan, including preparing for review and approval by the Settling Entities all notices required by CAFA, and on approval, serving the notices upon the appropriate State official of each State in which a class member resides and the appropriate Federal official within ten (10) days of filing of the proposed settlement in court.

9.2.4.   Establishing a toll-free telephone line for Settlement Class Members to call with Settlement-related inquiries.

9.2.5.   Establishing and maintaining the Settlement Website, following approval by all Parties as to the URL to be used.

9.2.6.   Responding to Settlement Class Member inquiries via U.S. mail, e-mail, or telephone.

9.2.7.   Paying all Taxes relating to the Settlement Fund.

9.2.8.   Receiving and processing all written requests for exclusion from the Settlement and providing copies thereof to the Parties' Counsel.

 9.2.8.1 If the Claims Administrator receives any requests for exclusion or other requests after the Opt-Out Deadline, the Claims Administrator shall promptly provide copies thereof to the Parties' Counsel.

9.2.9.   Providing weekly reports that summarize the number of claims, written requests for exclusion, objections, and any other information requested by the Parties' Counsel.

9.2.10.   Within five (5) Business Days after the Opt-Out Deadline, providing a final report to the Parties' Counsel and the Court summarizing the number of written requests for exclusion (*i.e.*, requests to opt out), a list of all Persons who have timely and validly excluded themselves from the Settlement in accordance with the requirements of the Settlement, and any other information requested by the Parties' Counsel.

9.2.11.    Prior to the Fairness Hearing, preparing and executing an affidavit to submit to the Court that identifies each Settlement Class Member who timely and validly requested exclusion from the Settlement.

9.2.12.    After the Effective Date, processing and transmitting any and all Settlement Payments to Settlement Class Members.

9.2.13.    Performing any other functions that the Parties jointly agree are necessary to accomplish administration of the Settlement.

9.3.    As specified in Section 9.2, all Claims Administration Costs incurred by the Claims Administrator or otherwise in connection with implementing the Notice Plan and administering the Settlement shall be paid from the Settlement Fund.

9.4.    Neither the Parties nor the Parties' Counsel shall have any liability whatsoever with respect to any act or omission of the Claims Administrator, or any of its designees or agents, in connection with its performance of its duties under this Agreement, or under the Notice Plan once approved by the Court.

## 10. Notice Plan

10.1.    The Settling Entities must approve of any language in the Notice prior to dissemination.

10.2.    The Claims Administrator shall be responsible for implementing and executing the Notice Plan.

10.3.    Within fifteen (15) days after the Court's entry of a Preliminary Approval Order, the Settling Entities shall provide the Claims Administrator with the Class List, which includes information concerning the Settlement Class Members. The Settling Entities agree that the Class List will provide at minimum, the following information:

10.3.1.    Reasonably available names;

10.3.2.  E-mail addresses, to the extent available;

10.3.3.  Mailing addresses; and

10.3.4.  Any other information available that may be used to contact Settlement Class Members.

10.4.  Should the Settlement be terminated for any reason, the Claims Administrator shall immediately destroy all contact information received from the Settling Entities for Settlement Class Members.

10.5.  As specified in Section 4.2, all costs incurred by the Claims Administrator or otherwise relating to providing notice to Settlement Class Members shall be paid from the Settlement Fund.

## 11. CAFA Notice by Defendant

11.1.  The Settling Entities will promptly review and approve the CAFA Notices to be served by the Claims Administrator not later than ten (10) days after this Agreement is filed with the Court.

## 12. Mutual Releases and Covenant Not to Sue

12.1.  As of the Effective Date, the Releasing Parties will finally and forever release and discharge from and covenant not to sue the Released Parties for the Released Claims.

12.2.  Although the foregoing release is not a general release, such release constitutes a waiver of any and all rights arising under Section 1542 of the California Civil Code (to the extent it applies to the Action), which provides as follows:

> A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY

AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR
OR RELEASED PARTY.

12.3.    This release also constitutes a waiver of any and all provisions, rights, and benefits of any federal, state or foreign law, rule, regulation, or principle of law or equity that is similar, comparable, equivalent to, or which has the effect of, Section 1542 of the California Civil Code.

12.4.    The Releasing Parties acknowledge that they are aware that they may hereafter discover facts in addition to, or different from, those facts which they know or believe to be true with respect to the subject matter of this Agreement, but that it is their intention to release fully, finally, and forever all of the Released Claims, and in furtherance of such intention, the release shall be irrevocable and remain in effect notwithstanding the discovery or existence of any such additional or different facts. In entering and making this Agreement, the Parties assume the risk of any mistake of fact or law and the release shall be irrevocable and remain in effect notwithstanding any mistake of fact or law.

12.5.    As of the Effective Date, all Released Parties hereby expressly, generally, absolutely, unconditionally, and forever release and discharge any and all claims against Plaintiffs, the Releasing Parties, and their counsel arising out of or relating to the institution, prosecution, and resolution of the Released Claims in this Action, except for claims relating to the enforcement of the Settlement or this Agreement.

## 13. Effective Date

13.1.    The Effective Date of the Settlement shall be the day on which the last of all the following conditions have occurred or been waived:

13.1.1.    The Agreement has been fully executed by Settling Entities and Plaintiffs through the Parties' Counsel;

40

13.1.2.  A Settlement Class has been certified and an order preliminarily approving the Parties' Settlement and the Notice Plan has been entered by either this Court or one of the Oklahoma federal courts;

    13.1.2.1    Following entry of order preliminarily approving the Parties' Settlement and the Notice Plan by either this Court or one of the Oklahoma federal courts; the alternate jurisdiction has entered an order adopting, deferring to, or endorsing the order granting preliminary approval of the Settlement and the Notice Plan;

13.1.3.  An order granting Final Approval of the Settlement has have been entered by the court(s) granting preliminary approval of the Parties' Settlement;

13.1.4.  Final judgments or dismissals with prejudice have been entered releasing all claims against the Released Parties in this Court, in *Carr*, and any other court where Plaintiffs and Class Counsel have brought the same or substantially similar allegations, including, but not limited to, another U.S. District Court for the Western District of Oklahoma;

13.1.5.  Either the expiration of the appeal period following entry of all orders granting Final Approval of the Settlement, the Final judgments releasing all Settling Entities, and dismissals with prejudice or the resolution of all appeals from all orders granting Final Approval, entry of the Final judgment, and dismissals with prejudice;

13.1.6.  Satisfaction of the contingencies set forth in Sections 13.2; and

13.1.7.  The Settling Entities have paid the Settlement Amount in full into the Settlement Fund Account.

13.2.   The Settlement is contingent upon (a) the approval of the Settlement or entry of an order dismissing with prejudice the Settlement Class's claims against the Settling Entities in the Action; and (b) approval of the Settlement or entry of an order dismissing with prejudice the Settlement Class's claims in *Carr* or in any other action in the U.S. District Court for the Western District of Oklahoma.

13.3.   The Parties to this Settlement agree to utilize all available methods to enforce the Settlement, including, but not limited to (i) seeking enforcement of a release in *Carr*; filing a separate action in the U.S. District Court for the Western District of Oklahoma for the limited purpose of obtaining recognition of and approving the Settlement and its release; or (iii) moving to intervene in *Carr* to, among other things, stay the case, enforce their agreement or obtain an order dismissing claims with prejudice against the Settling Entities, if necessary.

## 14. <u>Termination</u>

14.1.   Any Party shall have the right to terminate the Settlement, returning all Parties to the status quo as though a settlement had not been attempted, if court approval is not obtained in any material respect, including if:

14.1.1.   The Court or a court in the U.S. District Court for the Western District of Oklahoma enters an order declining to enter the preliminary or final approval order in any material respect and declining to defer to entry of such an order by the alternate jurisdiction;

14.1.2.   The Court or a court in the U.S. District Court for the Western District of Oklahoma enters an order refusing to approve the Agreement or any material part of it and declining to defer to entry of such an order by the alternate jurisdiction;

14.1.3.   Any court enters an order declining to enter the final judgment and order of dismissal with prejudice;

14.1.4.   Any court enters an alternative judgment that materially differs from the form of final judgment and order of dismissal agreed to by the Parties to this Agreement;

14.1.5.   The final judgment and order of dismissal entered by a court is modified or reversed by a court of appeal or any higher court in any material respect;

14.1.6.   An alternative judgment entered by a court is modified or reversed in any material respect by a court of appeal or any higher court;

14.1.7.   The court in *Carr* (and, if applicable, the court in any other action filed in the U.S. District Court for the Western District of Oklahoma) declines to approve the Settlement and declines to enter an order dismissing with prejudice the Settlement Class's claims against the Settling Entities;

14.1.8.   Orders related to the Settlement issued from this Court and the court in *Carr* (and, if applicable, the court in any other action filed in the U.S. District Court for the Western District of Oklahoma) are irreconcilable; or

14.1.9.   The Settling Entities fail to pay the full Settlement Amount.

14.2.   This Settlement may also be mutually terminated by Plaintiffs and Settling Entities before the Effective Date.

14.3.   Pursuant to terminations under Sections 14.1 – 14.2 above, counsel for the Party seeking to terminate the Settlement shall provide written notice termination to the opposing Party and file with the Court a written notice of termination within twenty (20) Business Days (or such longer time as may be agreed between Class Counsel and the Settling Entities' Counsel).

14.4.    The Settling Entities shall have the unilateral right, but not the obligation, in their sole discretion to terminate the Settlement, returning all Parties to the status quo as though a settlement of the Action had not been attempted, if

14.4.1.   More than one-hundred and fifty (150) Persons submit valid and timely requests to exclude themselves from the Settlement; and

14.4.2.   Within ten (10) days after the Class Administrator provides the Settling Entities with a report of the total number of valid exclusions, following the Opt-Out Deadline, any Settling Entity provides written notice to Class Counsel and the Court terminating the Settlement.

14.4.3.   Following the Opt-Out Deadline, the Claims Administrator shall provide a list to Settling Entities' Counsel of all Persons that have requested exclusion from the Settlement Class as well as all information those Persons provided with their exclusion request or that the Claims Administrator has otherwise requested of them.

14.5.    If the Settlement is terminated, is vacated, or is not approved, then the Parties to this Agreement shall be deemed to have reverted to their respective status as though a settlement had not been attempted, with all of their respective legal claims and defenses preserved.

14.6.    If this Agreement is terminated under Sections 14.1, 14.2, or 14.4 above, the following shall occur:

14.6.1.   Within fifteen (15) days of receiving notice of a termination event, the Claims Administrator shall pay to Nelnet for distribution by Nelnet among the Settling Entities an amount equal to any payments made by each of the Settling Entities to

the Settlement Fund less (i) any Taxes paid or due with respect to such income and (ii) any reasonable and necessary Claims Administration Costs already actually incurred and paid or payable from the Settlement Fund pursuant to the terms of this Agreement;

14.6.2.  The Claims Administrator or its designee shall apply for any tax refund owed to the Settlement Fund and pay the proceeds to the Settling Entities, after deduction of any fees or expenses reasonably incurred in connection with such application(s) for refund;

14.6.3.  The Parties shall return to the status quo in the Action as of June 11, 2024 as if the Parties had not entered into this Agreement, with all of their respective legal claims and defenses preserved as they existed on that date;

14.6.4.  Any Court orders approving certification of the Settlement Class and any other orders entered pursuant to this Agreement shall be null and void and vacated, and neither those orders nor any statements made in connection with seeking approval of the Agreement may be used in or cited by any Person in support of claims or defenses or in support or in opposition to a class certification motion in connection with any further proceedings in the Action or in any other action, lawsuit, arbitration, or other proceeding involving a Released Claim;

14.6.5.  All releases hereunder shall be of no further force and effect;

14.6.6.  This Agreement shall become null and void and none of the Parties or the Settlement Class Members shall be bound by any of its terms; and

14.6.7.  The fact of this Settlement, including the Parties' positions with respect to the certification of a Settlement Class for purposes of the Settlement, shall not be used

or cited by any Person in support of claims or defenses or in support of or in opposition to a class certification motion in connection with any further proceedings in the Action or in any other action, lawsuit, arbitration, or other proceeding involving any Released Claims.

**15. No Admission of Liability**

15.1.    All Parties hereto have entered into this Agreement and are entering into the Settlement, to avoid the costs and uncertainties of continued litigation. The Settling Entities deny Plaintiffs' allegations and maintain that they have good and meritorious defenses to Plaintiffs' claims of liability and damages. The Settling Entities further deny all charges of wrongdoing or liability as alleged, or which could be alleged. By entering into this Settlement, no Party hereby makes any admission or concession as to the merits of the Action, liability, damages, or to the strength or accuracy of the opposing Party's positions.

15.2.    This Agreement compromises claims which are contested in good faith, and it shall not be deemed an admission by any of the Parties as to the merits of any claim or defense.

15.3.    This Agreement shall not be offered or received against the Settling Entities as evidence of or construed as or deemed to be evidence of any presumption, concession, or admission by the Settling Entities with respect to the truth of any fact alleged by Plaintiffs or any Settlement Class Member or the validity of any claim that has been or could have been asserted in the Action or in any litigation, or the deficiency of any defense that has been or could have been asserted in the Action or in any litigation, or of any liability, negligence, fault, breach of duty, or wrongdoing of the Settling Entities.

15.4.    This Agreement shall not be construed as or received in evidence as an admission, concession, or presumption against Plaintiffs or any Settlement Class Member that any of their claims are without merit, or that any defense asserted by the Settling Entities has any merit, or that damages recoverable in the Action would not have exceeded the Settlement Fund.

15.5.    The negotiation, terms, and entry of the Parties into this Agreement shall remain subject to the provisions of Federal Rule of Evidence 408, all similar state statutes, rules of evidence, and arbitral rules, and the mediation privilege.

15.6.    Notwithstanding the foregoing provisions of this Section or any other terms in this Settlement, the Settling Entities may use, offer, admit, or refer to this Agreement and to the Settlement, if approved, where it deems necessary to defend itself in any other action, or in any judicial, administrative, regulatory, arbitrative, or other proceeding, as it deems necessary to comply with or address regulatory and/or disclosure obligations, to pursue insurance and/or other indemnification, and to enforce this Agreement and the Settlement, including the releases contained therein.

## 16. Opt-Outs

16.1.    Any Person who wishes to exclude themselves from the Settlement must submit a written request for exclusion to the Claims Administrator by U.S. Mail or other delivery service (i.e., FedEx or UPS), which shall be received by Claims Administrator no later than the Opt-Out Deadline.

16.2.    The written request for exclusion must:

(i)    Identify the case name of the Action;

(ii)    Identify the full name and address of the Person seeking exclusion from the Settlement, and, if represented by counsel, the name and address of his/her counsel;

47

(iii)    Include the claimant ID code and other information included on the Long Form Notice or Short Form Notice provided by the Claims Administrator that identifies the Person as a Settlement Class Member;

(iv)    Be personally signed by the Person seeking exclusion, and, if represented by counsel, also be signed by his/her counsel;

(v)    Include a statement clearly indicating the Person's intent to be excluded from the Settlement; and

(vi)    Request exclusion only for that one Person whose personal signature appears on the request.

16.3.    To be effective and valid, opt-out requests must be received by the Claims Administrator no later than the Opt-Out Deadline and contain the information described above.

16.4.    Opt-out requests seeking exclusion on behalf of more than one Person (i.e., mass opt-outs) or that do not include the information describe above shall be deemed invalid by the Claims Administrator.

16.5.    Any Person who submits a valid and timely request for exclusion in the manner described herein shall not: (i) be bound by any orders or judgments entered in connection with the Settlement; (ii) be entitled to any relief under, or be affected by, the Agreement; (iii) gain any rights by virtue of the Agreement; or (iv) be entitled to object to any aspect of the Settlement.

16.6.    Any Person who does not submit a valid and timely request for exclusion in the manner described herein shall be deemed to be a Settlement Class Member upon expiration of the Opt-Out Deadline, and shall be bound by all subsequent proceedings, orders, and judgments applicable to the Settlement Class.

16.7.    Following the deadline approved by the Court for all persons to exclude themselves from the Settlement Class, the Claims Administrator shall provide a list to the Parties' Counsel of all Persons that have requested exclusion from the Settlement Class as well as all

information those Persons provided with their exclusion request or that the Claims Administrator has otherwise requested of them.

**17. <u>Objections</u>**

17.1.    Any Settlement Class Member who wishes to object to the Settlement or requests to be heard at the Fairness Hearing must submit a written objection to the Court on or before the Objection Deadline, as specified in the Preliminary Approval Order, with a copy sent concurrently by mail, hand, or overnight delivery service to Class Counsel and the Settling Entities' Counsel at the addresses set forth below at Section 21.

17.2.    The written objection must include:

      (i)    The case name and number of the Action;

      (ii)    The full name, address, and telephone number of the objecting Settlement Class Member and, if represented by counsel, the name, address, and telephone number of his/her counsel;

      (iii)    The claimant ID code and other information on the Long Form Notice or Short Form Notice provided by the Claims Administrator that identifies the objector as a Settlement Class Member;

      (iv)    A statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;

      (v)    A statement of the number of times in which the objector (and, where applicable, objector's counsel) has objected to a class action settlement within the three years preceding the date that the objector files the objection, along with the caption of each case in which the objector (or the objector's counsel) has made such objection;

      (vi)    A statement of the specific grounds for the objection; and

      (vii)    A statement of whether the objecting Settlement Class Member intends to appear at the Fairness Hearing, and if so, whether personally or through counsel.

17.3.    In addition to the foregoing requirements, if an objecting Settlement Class Member intends to speak at the Fairness Hearing (whether *pro se* or through an attorney), the

49

written objection must include a detailed description of any evidence the objecting Settlement Class Member may offer at the Fairness Hearing, as well as copies of any exhibits the objecting Settlement Class Member may introduce at the Fairness Hearing.

17.4.    Any Settlement Class Member who fails to object to the Settlement in the manner described in this Agreement, the Preliminary Approval Order, and in the notice provided pursuant to the Notice Plan shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Fairness Hearing, and shall be precluded from seeking any review of the Settlement or the terms of this Agreement by appeal or any other means.

## 18. Service Awards

18.1.    Plaintiffs and Class Counsel shall submit a request to the Court for payment of a Service Award, not to exceed $1,500.00 to each Settlement Class Representative, for a total of $40,500.00.  Any request for Service Awards must be filed with the Court at least fourteen (14) days before the Objection Deadline and Opt-Out Deadline.  If approved by the Court, such Service Awards shall be paid by the Claims Administrator to Plaintiffs from the Settlement Fund five (5) days after the date on which the Settling Entities pay the full balance of the Settlement Amount pursuant to Section 4.1.

18.2.    The Settling Entities agree not to oppose any request to the Court for Service Awards, provided such request does not seek more than $1,500.00 each for Plaintiffs.  For the avoidance of doubt, the Service Awards shall be paid from the Settlement Fund.

18.3.    The Parties agree that the effectiveness of this Agreement is not contingent upon the Court's approval of the payment of any Service Awards.  If the Court declines to approve, in whole or in part, a request for Service Awards, all remaining provisions in

this Agreement shall remain in full force and effect.  No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the payment of Service Awards, or the amount thereof, shall be grounds for cancellation or termination of this Agreement.

## 19. Attorneys' Fees and Expenses

19.1.    Class Counsel shall file the Fee and Expense Application with the Court for payment of reasonable attorneys' fees and expenses incurred in prosecuting and settling the Action, which will be filed at least fourteen (14) days before the Objection Deadline and Opt-out Deadline.  If approved by the Court, such attorneys' fees and expenses shall be paid from the Settlement Fund five (5) days after the date on which the Settling Entities pay the full balance of the Settlement Amount pursuant to Section 4.1.

19.2.    The Settling Entities take no position as to any request to the Court for attorneys' fees and reimbursement of expenses, provided such a request does not seek Attorneys' Fees in excess of one-third of the Settlement Fund.  For the avoidance of doubt, all attorneys' fees and expenses shall be paid from the Settlement Fund.

19.3.    The Parties agree that the effectiveness of this Agreement is not contingent upon the Court's approval of the payment of any attorneys' fees and expenses.  If the Court declines to approve, in whole or in part, the Fee and Expense Application, all remaining provisions in this Agreement shall remain in full force and effect.  No decision by the Court, or modification or reversal or appeal of any decision by the Court, concerning the payment of attorneys' fees and expenses, or the amount thereof, shall be grounds for cancellation or termination of this Agreement.

## 20. Confidentiality

20.1.     The Parties and the Parties' Counsel agree that the terms of this Settlement shall remain

confidential and shall not be disclosed until the Agreement is publicly filed in connection

with Plaintiffs' motion seeking preliminary approval of the settlement and issuance of

notice, unless disclosure is ordered by a court of competent jurisdiction.

20.2.     Nothing in this provision shall preclude:

20.2.1.   The Settling Entities from disclosing the fact or amount of the Settlement as a result

of a good faith determination that such disclosure is required or advisable pursuant

to bank regulatory requirements, SEC requirements, or other legal or regulatory

requirements, or from disclosing the fact or amount of the Settlement to its or their

regulators, insurers, reinsurers or external auditors; and

20.2.2.   Class Counsel from disclosing the existence of the Agreement and any necessary

terms to the designated Claims Administrator and any proposed vendors soliciting

bids to be named as the Claims Administrator.

## 21. Notices

21.1.     All notices to Class Counsel provided for in this Agreement shall be sent by e-mail and

USPS First-Class mail to the following:

> Christian Levis
> Amanda G. Fiorilla
> **LOWEY DANNENBERG, P.C.**
> 44 South Broadway, Suite 1100
> White Plains, NY 10601
> clevis@lowey.com
> afiorilla@lowey.com
>
> and
>
> Anthony M. Christina
> **LOWEY DANNENBERG, P.C.**

One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
achristina@lowey.com

and

Ian W. Sloss
Johnathan Seredynski
Steven L. Bloch
Zachary Rynar
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, Floor 15
Stamford, CT 06901
isloss@sgtlaw.com
jeredynski@sgtlaw.com
sbloch@sgtlaw.com
zrynar@sgtlaw.com

21.2.    All notices to Nelnet or Nelnet's Counsel provided for in this Agreement shall be sent

by e-mail and USPS First-Class mail to the following:

Claudia D. McCarron
**MULLEN COUGHLIN LLC**
426 W. Lancaster Avenue, Suite 200
Devon, PA 19333
cmccarron@mullen.law

and

Charles F. Kaplan
**PERRY, GUTHERY LAW FIRM**
233 South 13th Street Suite 1400
Lincoln, NE 68508
ckaplan@perrylawfirm.com

21.3.    All notices to Edfinancial or Edfinancial's Counsel provided for in this Agreement shall

be sent by e-mail and USPS First-Class mail to the following:

Casie D. Collignon
Sarah A. Ballard
**BAKER & HOSTETLER LLP**
1801 California Street
Suite 4400

Denver, CO 80202-2662
ccollignon@bakerlaw.com
sballard@bakerlaw.com

21.4.    All notices to OSLA or OSLA's Counsel provided for in this Agreement shall be sent by

e-mail and USPS First-Class mail to the following:

Jill H. Fertel
Conor Hafertepe
**CIPRIANI & WERNER, P.C.**
450 Sentry Parkway Suite 200
Blue Bell, PA 19422
jfertel@c-wlaw.com
chafertepe@c-wlaw.com

21.5.    All notices to the Claims Administrator provided for in this Agreement shall be sent by

e-mail and USPS First-Class mail to the following:

A.B. Data, Ltd.
600 A.B. Data Drive
Milwaukee, WI 53217

21.6.    The notice recipients and addresses designated in this Section may be changed by written

notice posted to the Settlement Website.

**22. Stay**

22.1.    The Parties agree that all proceedings and deadlines in the Action (including with respect

to rulings on Nelnet's motion to dismiss the Amended Complaint) between Plaintiffs and

Defendants shall be indefinitely stayed pending the Court's entry of the Preliminary

Approval Order.

22.2.    In connection with the seeking approval of this Settlement, the Parties agree to seek a

stay of litigation in the Action and any action arising from the same factual predicate of

this Action, effective upon filing of the Stipulation with the Court and any court in the

U.S. District Court for the Western District of Oklahoma and continuing through the

earlier of termination of the Settlement or the Effective Date.

## 23. Miscellaneous Provisions

23.1.    Cooperation.  The Parties: (i) acknowledge that it is their intent to consummate this Agreement and (ii) agree to cooperate to the extent reasonably necessary to effect and implement all terms and conditions of the Agreement and to exercise their best efforts to accomplish the foregoing terms and conditions of the Agreement.

23.2.    The Parties shall provide for the preparation and filing of such other documentation as may be necessary to obtain the Court's Final Approval of the Settlement upon and consistent with the terms set forth in this Agreement and satisfy the contingencies in Section 13.

23.3.    Contractual Agreement.  The Parties understand and agree that all terms of this Agreement, including the exhibits hereto, are contractual and are not a mere recital, and each signatory warrants that he or she is competent and possesses the full and complete authority to execute and covenant to this Agreement on behalf of the Party that he or she represents.

23.4.    Headings.  Any headings contained herein are for informational purposes only and do not constitute a substantive part of this Agreement.  In the event of a dispute concerning the terms and conditions of this Agreement, the headings shall be disregarded.

23.5.    Integration.  This Agreement constitutes the entire agreement among the Parties and no representations, warranties, or inducements have been made to any Party concerning this Agreement other than the representations, warranties, and covenants expressly contained and memorialized herein.

23.6.    Exhibits.  The exhibits to this Agreement are expressly incorporated by reference and made part of the terms and conditions set forth herein.

23.7.    <u>Drafting</u>.  The language of all parts of this Agreement shall in all cases be construed as a whole, according to their fair meaning, and not strictly for or against any Party.  No Party shall be deemed the drafter of this Agreement.  The Parties acknowledge that the terms of the Agreement are contractual and are the product of negotiations between the Parties and their counsel.  Each Party and their counsel cooperated in the drafting and preparation of the Agreement.  In any construction to be made of the Agreement, the Agreement shall not be construed against any Party and any canon of contract interpretation to the contrary shall not be applied.

23.8.    <u>Modification or Amendment</u>.  This Agreement may not be orally modified. This Agreement may not be modified or amended, nor may any of its provisions be waived, except by an express writing signed by the Parties who executed this Agreement, or their successors.

23.9.    <u>Waiver</u>.  The failure of a Party to insist upon strict performance of any provision of this Agreement shall not be deemed a waiver of such Party's rights or remedies or a waiver by such Party of any default by another Party in the performance or compliance of any of the terms of this Agreement.  In addition, the waiver by one Party of any breach of this Agreement by any other Party shall not be deemed a waiver of any other prior or subsequent breach of this Agreement.

23.10.    <u>Severability</u>.  Should any part, term, or provision of this Agreement be declared or determined by any court or tribunal to be illegal or invalid, the Parties agree that the Court may modify such provision to the extent necessary to make it valid, legal, and enforceable.  In any event, such provision shall be separable and shall not limit or affect the validity, legality, or enforceability of any other provision hereunder.

23.11.   <u>Counterparts</u>.  The Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument.  A complete set of executed counterparts shall be filed with the Court.  This Agreement may be executed using electronic signature technology (e.g., via DocuSign, Adobe Sign, or other electronic signature technology), and such signed electronic record shall be valid and as effective to bind the party as signing a paper copy bearing such party's handwritten signature.

23.12.   <u>Electronic Mail</u>.  Transmission of a signed Agreement by electronic mail shall constitute receipt of an original signed Agreement by mail.

23.13.   <u>Successors and Assigns</u>.  The Agreement shall be binding upon, and inures to the benefit of, the heirs, executors, successors, and assigns of the Parties hereto.

23.14.   <u>Governing Law</u>.  All terms and conditions of this Agreement shall be governed by and interpreted according to the laws of the State of Nebraska, without regard to its conflict of law principles, except to the extent the federal law of the United States requires that federal law governs.

23.15.   The Parties consent to jurisdiction in the U.S. District Court for the District of Nebraska solely for the specific purpose of any suit, action or proceeding to interpret or enforce the terms of this Settlement, unless a party is prohibited by law from consenting to jurisdiction in Nebraska.

23.16.   <u>Interpretation</u>.  The following rules of interpretation shall apply to this Agreement:

(i)      Definitions apply to the singular and plural forms of each term defined.

(ii)     Definitions apply to the masculine, feminine, and neuter genders of each term defined.

57

       (iii)     Whenever the words "include," "includes," or "including" are used in this Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

23.17.   <u>Retention of Jurisdiction</u>.  The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction over the Settlement and the Parties for the purpose of enforcing the terms of this Agreement. The Court also shall retain exclusive jurisdiction over any determination of whether any subsequent suit is released by the Settlement Agreement.

23.18.   <u>No Collateral Attack</u>.  The Agreement shall not be subject to collateral attack, including by any Settlement Class Member or any recipient of notices of the Settlement after the Final Approval Order and Judgment is entered.

23.19.   <u>Authority to Execute</u>. The Parties represent and warrant, through the signatures of their counsel below, that the terms and conditions of this Agreement are duly approved, and execution of this Agreement is duly authorized.

23.20.   <u>Date of Agreement</u>.  The execution date of this Settlement Agreement and Release shall be deemed to be the latest date of the signatures below.

    **IN WITNESS WHEREOF,** the Parties have caused this Agreement to be duly executed by themselves or by their duly authorized counsel:

| *Class Counsel on behalf of Plaintiffs and the Settlement Class:* | *On behalf of Nelnet Servicing LLC* |
|---|---|
| | |
| _____ | _____ |
| Christian Levis | Claudia D. McCarron |
| Amanda G. Fiorilla | **MULLEN COUGHLIN LLC** |
| **LOWEY DANNENBERG, P.C.** | 426 W. Lancaster Avenue, Suite 200 |
| 44 South Broadway, Suite 1100 | Devon, PA 19333 |
| White Plains, NY 10601 | Tel: (267) 930-4787 |
| Tel: (914) 997-0500 | cmccarron@mullen.law |
| Fax: (914) 997-0035 | |
| | Charles F. Kaplan |

clevis@lowey.com
afiorilla@lowey.com

Anthony M. Christina
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Tel: (215) 399-4770
Fax: (914) 997-0035
achristina@lowey.com

Date: August 16, 2024

Ian W. Sloss
Johnathan Seredynski
Steven L. Bloch
Zachary Rynar
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, Floor 15
Stamford, CT 06901
Tel: (203) 325-4491
Fax: (203) 325-3769
isloss@sgtlaw.com
jeredynski@sgtlaw.com
sbloch@sgtlaw.com
zrynar@sgtlaw.com

Joel M. Carney
Jeana L. Goosmann
Joseph V. Messineo
**GOOSMANN LAW FIRM, PLC**
17838 Burke Street, Ste. 250
Omaha, NE 68118
Tel: (402) 280-7648
carneyj@goosmannlaw.com
goosmannj@goosmannlaw.com
messineoj@goosmannlaw.com

Date: August 16, 2024

**PERRY, GUTHERY LAW FIRM**
233 South 13th Street Suite 1400
Lincoln, NE 68508
Tel: (402) 476-9200
ckaplan@perrylawfirm.com

Date: August 16, 2024

*On behalf of Edfinancial Services, LLC*

Casie D. Collignon
Sarah A. Ballard
**BAKER & HOSTETLER LLP**
1801 California Street
Suite 4400
Denver, CO 80202-2662
Tel: (303) 861-0600
ccollignon@bakerlaw.com
sballard@bakerlaw.com

Date: August 16, 2024

*On behalf of the Oklahoma Student Loan Authority*

Jill H. Fertel
Conor Hafertepe
**CIPRIANI & WERNER, P.C.**
450 Sentry Parkway Suite 200
Blue Bell, PA 19422
Tel: (610) 567-0700
jfertel@c-wlaw.com
chafertepe@c-wlaw.com

Date: August 16, 2024

      (iii)    Whenever the words "include," "includes," or "including" are used in this Agreement, they shall not be limiting but rather shall be deemed to be followed by the words "without limitation."

23.17. <u>Retention of Jurisdiction</u>. The administration and consummation of the Settlement as embodied in this Agreement shall be under the authority of the Court, and the Court shall retain jurisdiction over the Settlement and the Parties for the purpose of enforcing the terms of this Agreement. The Court also shall retain exclusive jurisdiction over any determination of whether any subsequent suit is released by the Settlement Agreement.

23.18. <u>No Collateral Attack</u>. The Agreement shall not be subject to collateral attack, including by any Settlement Class Member or any recipient of notices of the Settlement after the Final Approval Order and Judgment is entered.

23.19. <u>Authority to Execute</u>. The Parties represent and warrant, through the signatures of their counsel below, that the terms and conditions of this Agreement are duly approved, and execution of this Agreement is duly authorized.

23.20. <u>Date of Agreement</u>. The execution date of this Settlement Agreement and Release shall be deemed to be the latest date of the signatures below.

**IN WITNESS WHEREOF,** the Parties have caused this Agreement to be duly executed by themselves or by their duly authorized counsel:

*Class Counsel on behalf of Plaintiffs and the Settlement Class:*

On behalf of Nelnet Servicing LLC

*Claudia D. McCarron*

_____

_____

Christian Levis
Amanda G. Fiorilla
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
Fax: (914) 997-0035

Claudia D. McCarron
**MULLEN COUGHLIN LLC**
426 W. Lancaster Avenue, Suite 200
Devon, PA 19333
Tel: (267) 930-4787
cmccarron@mullen.law

Charles F. Kaplan

clevis@lowey.com
afiorilla@lowey.com

Anthony M. Christina
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Tel: (215) 399-4770
Fax: (914) 997-0035
achristina@lowey.com

Date: August 16, 2024

Ian W. Sloss
Johnathan Seredynski
Steven L. Bloch
Zachary Rynar
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, Floor 15
Stamford, CT 06901
Tel: (203) 325-4491
Fax: (203) 325-3769
isloss@sgtlaw.com
jeredynski@sgtlaw.com
sbloch@sgtlaw.com
zrynar@sgtlaw.com

Joel M. Carney
Jeana L. Goosmann
Joseph V. Messineo
**GOOSMANN LAW FIRM, PLC**
17838 Burke Street, Ste. 250
Omaha, NE 68118
Tel: (402) 280-7648
carneyj@goosmannlaw.com
goosmannj@goosmannlaw.com
messineoj@goosmannlaw.com

Date: August 16, 2024

**PERRY, GUTHERY LAW FIRM**
233 South 13th Street Suite 1400
Lincoln, NE 68508
Tel: (402) 476-9200
ckaplan@perrylawfirm.com

Date: August 16, 2024

*On behalf of Edfinancial Services, LLC*

Casie D. Collignon
Sarah A. Ballard
**BAKER & HOSTETLER LLP**
1801 California Street
Suite 4400
Denver, CO 80202-2662
Tel: (303) 861-0600
ccollignon@bakerlaw.com
sballard@bakerlaw.com

Date: August 16, 2024

*On behalf of the Oklahoma Student Loan Authority*

/s/ Jill H. Fertel

Jill H. Fertel
Conor Hafertepe
**CIPRIANI & WERNER, P.C.**
450 Sentry Parkway Suite 200
Blue Bell, PA 19422
Tel: (610) 567-0700
jfertel@c-wlaw.com
chafertepe@c-wlaw.com

Date: August 16, 2024