**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| *In re* | Case No. 4:22-cv-3191 |
| | |
| *Data Security Cases Against NELNET SERVICING, LLC* | The Honorable John M. Gerrard, U.S.D.J. |
| | |
| | The Honorable Jacqueline M. DeLuca, U.S.M.J. |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES..............................................................................................iii

INTRODUCTION...........................................................................................................1

SUMMARY OF RELEVANT FACTUAL BACKGROUND...................................................2

   I.    THE LITIGATION ................................................................................................2

   II.   THE SETTLEMENT TERMS.................................................................................6

ARGUMENT ..................................................................................................................7

   I.    THE COURT HAS SUBJECT MATTER JURISDICTION .........................................7

   II.   THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED CLASS ... 9

      A.   The Settlement Class Meets the Rule 23(a) Requirements.......................................10

        1.   Numerosity ......................................................................................................10

        2.   Commonality ...................................................................................................10

        3.   Typicality ........................................................................................................11

        4.   Adequacy.........................................................................................................11

      B.   The Class May Be Certified Under Rule 23(b)(3).................................................14

        1.   Predominance ..................................................................................................14

        2.   Superiority .......................................................................................................16

        3.   Ascertainability................................................................................................17

   III.   THE SETTLEMENT IS LIKELY TO BE APPROVED UNDER RULE 23(e)(2)......17

      A.   The Preliminary Approval Standard ......................................................................17

      B.   The Settlement Is Substantively Fair......................................................................19

        1.   The Terms of the Settlement as Compared to the Merits of Plaintiffs' Case............19

        2.   The Complexity, Expense, and Likely Duration of Litigating the Matter to Judgment. 26

        3.   The Defendants' Financial Condition.................................................................26

        4.   The Amount of Opposition to the Settlement, if Any. ...........................................27

      C.   The Settlement is Procedurally Fair........................................................................27

        1.   The Opinion of Experienced Counsel.................................................................27

        2.   The Settlement is the Product of Arm's Length Negotiations by Experienced Counsel Aided by a Skilled Mediator........................................................................................29

        3.   The Stage of Proceedings and Amount of Discovery Completed Confirm that the Timing of the Settlement Is Appropriate.......................................................................31

IV.    THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE PLAN AND A.B. DATA AS CLAIMS ADMINISTRATOR ...................................................................32

V.    PROPOSED SCHEDULE OF EVENTS...................................................................34

CONCLUSION.............................................................................................................................35

APPENDIX A...............................................................................................................................36

## TABLE OF AUTHORITIES

**Cases**

*Abarca v. Werner Enterprises, Inc.*,
    No. 8:14-cv-319, 2018 WL 1136061 (D. Neb. Feb. 28, 2018)............................................ 13

*Acosta v. Tyson Foods, Inc.*,
    No. 8:08-cv-86, 2010 WL 6413287 (D. Neb. Dec. 8, 2010)................................................. 12

*Balestra v. ATBCOIN LLC*,
    No. 17-cv-10001 (VSB), 2022 WL 950953 (S.D.N.Y. Mar. 29, 2022) ................................ 20

*Brown v. Cent. Liquor Co.*,
    32 Fed. R. Serv. 2d 1197 (W.D. Okla. 1980)...................................................................... 12

*Campbell v. Transgenomic, Inc.*,
    No. 4:17-cv-3021, 2020 WL 2946989 (D. Neb. June 3, 2020)........................................... 25

*Childs v. Unified Life Ins. Co.*,
    No. 10-cv-23-PJC, 2011 WL 6016486 (N.D. Okla. Dec. 2, 2011)...................................... 27

*City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*,
    281 F.R.D. 347 (D. Minn. 2012)......................................................................................... 12

*Cullan & Cullan LLC v. M-Qube, Inc.*,
    No. 8:13-cv-172, 2016 WL 5394684 (D. Neb. Sept. 27, 2016).................................................
    .................................................................... 10, 11, 14, 16, 17, 18, 23, 26, 31, 33

*Dornberger v. Metro. Life Ins. Co.*,
    182 F.R.D. 72, 77 (S.D.N.Y. 1998), *as amended* (Jan. 5, 1999).......................................... 15

*Fager v. CenturyLink Commc'ns, LLC*,
    854 F.3d 1167 (10th Cir. 2016)............................................................................................. 8

*Fulton-Green v. Accolade, Inc.*,
    No. 18-cv-00274, 2019 WL 316722 (E.D. Pa. Jan. 24, 2019)............................................ 14

*Fulton-Green v. Accolade, Inc.*,
    No. 18-cv-00274, 2019 WL 4677954 (E.D. Pa. Sept. 24, 2019) ......................................... 21

*Garcia v. Target Corp.*,
    No. 16-cv-02574-MJD-BRT, 2020 WL 416402 (D. Minn. Jan. 27, 2020) ........................... 21

*Gordon v. Chipotle Mexican Grill, Inc.*,
    No. 17-cv-01415 (CMA) (SKC), 2019 WL 6972701 (D. Colo. Dec. 16, 2019).............. 20, 26

*Green-Cooper v. Brinker Int'l, Inc.*,
    73 F.4th 883 (11th Cir. 2023)............................................................................................. 22

*Hammond v. The Bank of New York Mellon Corp.*,
    No. 08 Civ. 6060 RMB RLE, 2010 WL 2643307 (S.D.N.Y. June 25, 2010)........................ 21

*Harris v. Chevron U.S.A., Inc.*,
    No. Civ-15-0094-PRW, 2019 WL 5846917 (W.D. Okla. July 29, 2019) ............................. 11

*Huyer v. Njema*,
  847 F.3d 934 (8th Cir. 2017) ................................................................................ 26

*In re Currency Conversion Fee Antitrust Litig.*,
  224 F.R.D. 555 (S.D.N.Y. 2004) .......................................................................... 16

*In re Currency Conversion Fee Antitrust Litig.*,
  361 F. Supp. 2d 237 (S.D.N.Y. 2005) .................................................................. 16

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  No. 1:17-MD-2800-TWT, 2020 WL 256132 (N.D. Ga. Mar. 17, 2020) ................ 15

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
  999 F.3d 1247 (11th Cir. 2021) ............................................................................ 15

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  343 F. Supp. 3d 394 (S.D.N.Y. 2018) .................................................................. 20

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) .......................................................................... 26

*In re GSE Bonds Antitrust Litig.*,
  414 F. Supp. 3d 686 (S.D.N.Y. 2019) .................................................................. 22

*In re Herff Jones Data Breach Litig.*,
  No. 1:21-cv-1329-TWP-DLP, 2022 WL 474696 (S.D. Ind. Jan. 12, 2022) .......... 23

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
  341 F.R.D. 128 (D. Md. 2022) .............................................................................. 22

*In re Nexium Antitrust Litig.*,
  777 F.3d 9 (1st Cir. 2015) .................................................................................... 17

*In re Samsung Top-load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*,
  No. 17-ML-2792-D, 2020 WL 2616711 (W.D. Okla. May 22, 2020) ..................... 9

*In re Signet Jewelers Ltd. Sec. Litig.*,
  No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468 (S.D.N.Y. July 21, 2020) ........ 28

*In re Sonic Corp. Customer Data Breach Litig.*,
  No. 17-md-02807, 2020 WL 6701992 (N.D. Ohio Nov. 13, 2020) ....................... 22

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007) ..................................................................... 21

*In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*,
  716 F.3d 1057 (8th Cir. 2013) .............................................................................. 18

*In re Wawa, Inc. Data Security Litig.*, No. CV 19-6019,
  2023 WL 6690705 (E.D. Pa. Oct. 12, 2023) ....................................... 11, 14, 16, 19

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*,
  396 F.3d 922 (8th Cir. 2005) ................................................................................ 18

*In re Y & A Grp. Sec. Litig.*,
  38 F.3d 380 (8th Cir. 1994) .................................................................................... 8

iv

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020) ........................ 14, 17

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022)................................................ 14

*In re Zurn Pex Plumbing Prod. Liab. Litig.*,
No. 08-MDL-1958 ADM/AJB, 2012 WL 5055810 (D. Minn. Oct. 18, 2012) ..................... 22

*In re: Urethane Antitrust Litig.*,
No. 04-1616-JWL, 2016 WL 4060156 (D. Kan. July 29, 2016) ......................................... 28

*Jenkins v. Pech*,
No. 8:14-cv-41, 2015 WL 6738624 (D. Neb. Nov. 4, 2015)................................................ 29

*Jones v. Singing River Health Servs. Found.*,
865 F.3d 285 (5th Cir. 2017) ............................................................................................... 8

*Keil v. Lopez*,
862 F.3d 685 (8th Cir. 2017) ............................................................................................. 19

*Khoday v. Symantec Corp.*,
No. 11-cv-180 (JRT) (TNL), 2016 WL 1637039 (D. Minn. Apr. 5, 2016) .......................... 29

*Kostka v. Dickey's Barbecue Restaurants, Inc.*,
No. 3:20-cv-03424-K, 2022 WL 16821685 (N.D. Tex. Oct. 14, 2022) ............................... 23

*Lechner v. Mut. of Omaha Ins. Co.*,
No. 8:18-cv-22, 2020 WL 5982022 (D. Neb. Oct. 8, 2020)........................................... 9, 16

*Marshall v. Nat'l Football League*,
787 F.3d 502 (8th Cir. 2015) ................................................................................. 18, 19, 26

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950)........................................................................................................... 33

*Patton v. Church & Dwight Co.*,
No. EDCV 18-903 (MWF) (KKx), 2019 WL 6357266 (C.D. Cal. Aug. 6, 2019)................. 28

*Paxton v. Union Nat. Bank*,
688 F.2d 552 (8th Cir. 1982) ............................................................................................. 12

*Petrovic v. Amoco Oil Co.*,
200 F.3d 1140 (8th Cir. 1999).......................................................................................... 32

*PHT Holding II LLC v. N. Am. Co. for Life & Health Ins.*,
No. 4:18-cv-00368 (SMR) (HCA), 2023 WL 8522980 (S.D. Iowa Nov. 30, 2023).............. 20

*Shanahan v. Lee L. Offs.*,
No. 8:18-cv-129, 2019 WL 2603102 (D. Neb. June 25, 2019)........................................... 19

*Swinton v. SquareTrade, Inc.*,
454 F. Supp. 3d 848 (S.D. Iowa 2020)............................................................................... 28

*Vogt v. State Farm Life Ins.*,
963 F.3d 753 (8th Cir. 2020) ............................................................................................. 12

v

*Walkinshaw v. CommonSpirit Health*,
 No. 4:19-cv-3012, 2022 WL 5255287 (D. Neb. Oct. 6, 2022)......................................18, 27

*Walkinshaw v. CommonSpirit Health*,
 No. 4:19-cv-3012, 2023 WL 1995281 (D. Neb. Feb. 14, 2023)..........................................29

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011).................................................................................................10, 14

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
 396 F.3d 96 (2d Cir. 2005).........................................................................................7, 8

**Statutes**

28 U.S.C. § 1332(d).........................................................................................................7

**Other Authorities**

2 McLaughlin on Class Actions § 6:7 (20th ed.) ...........................................................30

4 Newberg and Rubenstein on Class Actions § 13:10 (6th ed.).......................................18

**Rules**

Fed. R. Civ. P. 23(a)(1)...................................................................................................10

Fed. R. Civ. P. 23(a)(2)...................................................................................................10

Fed. R. Civ. P. 23(a)(4)...................................................................................................11

Fed. R. Civ. P. 23(b)(3)...................................................................................................16

Fed. R. Civ. P. 23(e)(1)..............................................................................................17, 32

Fed. R. Civ. P. 23(e)(2)...................................................................................19, 23, 25, 27

Fed. R. Civ. P. 23(e)(2)(C)(i)..........................................................................................19

Fed. R. Civ. P. 23(e)(3)...................................................................................................25

## INTRODUCTION

Plaintiffs Ian Scott, Jessica Alexander, Pamela Bump, Bridget Cahill, Lesly Canales, Melissa Charbonneau, Douglas Conley, Noah Helvey, Dallin Iler, Dustin Jones, Kayli Lazarz, Brittni Linn, Delilah Oliveira, Devinne Peterson, Eric Polanco, Justin Randall, Sofia Rodriguez, Joshua Sanchez, Charles Sangmeister, William Spearman, Taylor Vetter, Rachel Woods, Garner J. Kohrell, Olivia Covington, Alexis Luna, and Mary Traynor, along with MaKayla Nelson (collectively, "Plaintiffs") move under Rule 23(e) of the Federal Rules of Civil Procedure for preliminary approval of a $10,000,000.00 common fund settlement with Defendants in this Action, Nelnet Servicing, LLC ("Nelnet"), Edfinancial Services, LLC ("Edfinancial") (collectively, the "Defendants"), and the Oklahoma Student Loan Authority ("OSLA," and together with Nelnet and Edfinancial, the "Settling Entities,").[1] The Settlement itself, as described below, is fair, reasonable, and adequate. Its approval will resolve all actions nationwide regarding this Data Security Incident, including the *Carr* litigation, providing immediate and significant benefits to all those Settlement Class Members who elect to participate.

Proposed Class Counsel, Lowey Dannenberg, P.C. ("Lowey") and Silver Golub & Teitell LLP ("SGT," and collectively with Lowey, "Class Counsel") achieved this Settlement after many months of extensive, hard-fought litigation, and arm's length negotiations between Plaintiffs and the Settling Entities, including two full day mediations supervised by retired federal Magistrate Judge, Hon. Jay C. Gandhi of JAMS. As discussed below, the Settlement fully satisfies the

---

[1] Unless otherwise defined, capitalized terms have the same meaning as in the Stipulation and Agreement of Class Action Settlement ("Settlement Agreement" or "SA"), attached as Exhibit 1 to the Declaration of Christian Levis (the "Levis Decl."). Unless otherwise noted, ECF citations are to the docket in this Action and internal citations and quotation marks are omitted. References to *Carr, et al. v. Oklahoma Student Loan Authority & Nelnet Servicing, LLC*, No. 5:23-cv-00099, No. 5:23-cv-00099 (W.D. Okla.) ("*Carr*") will be appropriately noted.

requirements for preliminary approval. Accordingly, Plaintiffs respectfully move the Court to enter the order filed herewith (the "Preliminary Approval Order") that:

(i)      preliminarily approves the Settlement;

(ii)     conditionally certifies the Settlement Class;

(iii)    appoints Plaintiffs as class representative;

(iv)     appoints Lowey Dannenberg, P.C. and Silver Golub & Teitell LLP as Class Counsel;

(v)      appoints the A.B. Data, Ltd. ("A.B. Data") as the Claims Administrator;

(vi)     approves the proposed Notice Plan (*see* Declaration of Justin Parks of A.B. Data dated August 23, 2024 ("Parks Decl."), filed herewith) and proposed forms of Class Notice and Settlement Claim Form (*see* Levis Decl., Exs. 2 – 5);

(vii)    sets a schedule leading to the Court's evaluation of whether to finally approve the Settlement; and

(viii)   stays all proceedings in the Action except those relating to approval of the Settlement.

*See* [Proposed] Preliminary Approval Order, filed herewith.

<u>**SUMMARY OF RELEVANT FACTUAL BACKGROUND**</u>[2]

## I.    THE LITIGATION

Nelnet provides technology services to student loan servicers Edfinancial and OSLA, including a website portal for Edfinancial's and OSLA's student loan borrowers to access their online loan accounts. Levis Decl. ¶ 10. Beginning in June 2022, an unauthorized third-party

---

[2] A more complete description of the factual and procedural background of this Action and *Carr* is provided in the Levis Decl. ¶¶ 9 – 49.

2

obtained personal information belonging to Plaintiffs and Class Members on the website portal provided by Nelnet. *Id.* ¶ 11. The process of such information being obtained by an unauthorized third-party continued until July 22, 2022. *Id.* Confirmatory discovery provided by Nelnet on a confidential basis included (1) information about the unauthorized third party who committed the Data Security Incident, (2) information regarding the root cause of the incident including the third-party's method of obtaining data, (3) copies of submissions to regulators, (4) information pertaining to an ongoing law enforcement investigation into the incident and the third-party individual, and (5) additional information consistent with the incident being committed by an individual who did not sell the data for posting to the dark web. *Id.* ¶ 46.

On or around August 26, 2022, Nelnet began publicly notifying state Attorneys General and approximately 2,501,324 impacted student borrowers with accounts serviced by OSLA and Edfinancial that their Personal Information had been compromised in the Data Security Incident. *Id.* ¶ 12.

### *The Nebraska Litigation*

On September 7, 2022, Lowey and SGT, initiated a class action against Nelnet in the District of Nebraska on behalf of eight of the Plaintiffs. *Id.* ¶ 13. *See Spearman, et al. v. Nelnet Servicing, LLC*, No. 4:22-cv-3191 (D. Neb.) ("*Spearman*"). Lowey and SGT then filed a second class action complaint against Nelnet on September 14, 2022, on behalf of ten additional Plaintiffs. Levis Decl. ¶ 14. *See Bump, et al. v. Nelnet Servicing, LLC*, No. 4:22-cv-03204 (D. Neb.) ("*Bump*"). A third class action complaint, filed on December 7, 2022, included a third subset of five Plaintiffs. Levis Decl. ¶ 15. *See Scott, et al. v. Nelnet Servicing, LLC*, No. 4:22-cv-03259 (D. Neb.) ("*Scott*"). In total, twenty-three (23) putative class actions against Nelnet and/or Edfinancial

3

asserting claims arising from the Data Security Incident were filed in or transferred to the District of Nebraska related to the Data Security Incident. Levis Decl. ¶ 18.

On September 15, 2022, Lowey and SGT filed a motion before the Judicial Panel on Multidistrict Litigation ("J.P.M.L.") to centralize this litigation in the District of Nebraska as a Multi-District Litigation ("MDL") under 28 U.S.C. § 1407. Levis Decl. ¶ 15. *See In re Nelnet Servicing, LLC, Customer Data Security Breach Litigation*, MDL No. 3053, ECF No. 1 (J.P.M.L.). On December 13, 2022, the J.P.M.L. denied the motion to consolidate under Section 1407. Levis Decl. ¶ 15. On December 13, 2022, Lowey and SGT then moved to consolidate all the related actions against Nelnet and Edfinancial in this District. *Id.* ¶ 16. While the consolidation motion and competing leadership applications were pending, plaintiff Kathleen Carr initiated an action against OSLA and Nelnet in Oklahoma state court arising out of the same Data Security Incident, which was later removed to the U.S. District Court for the Western District of Oklahoma on January 20, 2023. Levis Decl. ¶ 17. *See Carr*, No. 5:23-cv-00099-R (W.D. Okla.).

On January 30, 2023, after considering the consolidation motion as well as contested leadership motions among plaintiffs' counsel, this Court consolidated twenty-three putative class actions against Nelnet and Edfinancial in this District and appointed Lowey and SGT as Interim Co-Lead Class Counsel. *Id.* ¶ 18. On March 10, 2023, Plaintiffs filed their Amended Complaint against Nelnet and Edfinancial, which, among other things, asserted claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment, breach of confidence, invasion of privacy, violations of state consumer protection and notification statutes, and declaratory and injunctive relief. *Id.* ¶ 20. Plaintiffs also included Plaintiff Traynor in the Amended Complaint, an OSLA borrower who filed the necessary paperwork with OSLA on May 8, 2023. *Id.* ¶ 21. Plaintiff Traynor's claim was denied via letter on June 9, 2023. *Id.*

Nelnet moved to dismiss Plaintiffs' Amended Complaint on April 24, 2023. *Id.* ¶ 23. Class Counsel on behalf of Plaintiffs proceeded to litigate their claims, opposing Nelnet's motion to dismiss and Edfinancial's' attempts to stay the litigation in the District of Nebraska. *Id.* ¶¶ 22-25. The motion to dismiss was fully briefed by July 10, 2023. *Id.* ¶ 23.[3] After nearly a year of litigation, Plaintiffs and Nelnet, Edfinancial, and OSLA began exploring the potential for a global resolution. *Id.* ¶¶ 31-32.

***Settlement Negotiations***

Working with Judge Gandhi, the Parties exchanged discovery, submitted mediation briefs, and engaged in two hard-fought, full day mediation sessions on December 8, 2023 and January 26, 2024, during which the Parties provided their assessment of the strengths and weakness of the case, the uncertainty and risks of further litigation—including further motion practice, discovery, trial, and any possible appeals—as well as the duration, expense, difficulties, and delays inherent in such litigation. *Id.* ¶¶ 33-39. The second mediation session concluded with a tentative agreement in principle of the settlement amount among the parties as to certain terms of settlement, but with material issues that remained unresolved. *Id.* ¶ 39. Plaintiffs notified the Court of these developments by email on January 29, 2024, and requested a stay of the pending motion to dismiss while they continued their discussions. Levis Decl. ¶ 40.[4] The Parties' continued their discussions in the ensuing months, resulting in the execution of a binding settlement term sheet on June 11,

---

[3] The Court later terminated Nelnet's motion after the parties indicated they had reached an agreement in principle to resolve the action, subject to reopening after the plaintiffs in *Carr* moved to intervene in this Action. Levis Decl. ¶ 27.

[4] OSLA and Nelnet (along with Plaintiffs) also moved for a stay in *Carr* pending the Parties' execution of this Settlement Agreement, which the *Carr* court granted on July 12, 2024. Levis Decl. ¶ 29.

2024, and the Settlement Agreement on August 16, 2024. *Id.* ¶¶ 39-41, 43, 47. Plaintiffs now seek preliminary approval of the Settlement.

## II.     THE SETTLEMENT TERMS

The Parties agree to the certification of the following Settlement Class:

All Persons in the United States whose Personal Information was compromised in the Data Security Incident.

SA § 2.56. Excluded are: (i) the Settling Entities, any Person in which the Settling Entities have a controlling interest, and the Settling Entities officers, directors, legal representatives, successors, subsidiaries, and assigns; (ii) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families and judicial staff; (iii) any Person that timely and validly opts out of the Settlement and (iv) any Person[5] found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Security Incident or who pleads guilty or *nolo contendere* to any such charge. SA § 2.56. In exchange for the release of the Released Parties, this Settlement provides for a non-reversionary common fund of $10,000,000. SA §§ 2.54, 4.1. This fund is intended to compensate Settlement Class Members for the potential harm arising from the Data Security Incident. After deducting costs, attorneys' fees, and expenses associated with administration, the Settlement provides Settlement Class Members with two distinct but complementary categories of relief: (i) Credit Monitoring and Identity Theft Protection with $1,000,000 of identity theft insurance, and (ii) a monetary Settlement Payment equal to either (a) their out-of-pocket expenses and lost time experienced by the eligible Settling Class Member (up to a $5,000 cap) or (b) a *pro rata* share of the funds remaining after credit monitoring and reimbursements for out-of-pocket expenses and lost time are paid. SA § 2.55, 2.62. The Net Settlement Fund will be fully distributed to all eligible Settling Class Members. SA § 7.1.

---

[5] Including the individual identified above in Section I.

To receive the Settlement Benefits, all Settlement Class Members will be asked to complete a straightforward Settlement Claim Form. SA §§ 2.58; 7.4.1; 7.5.1; 7.5.2; 7.7.1.

## ARGUMENT

### I.    THE COURT HAS SUBJECT MATTER JURISDICTION

Given that the *Carr* plaintiffs have indicated that they plan to object to the settlement by claiming the court lacks subject matter jurisdiction, Plaintiffs briefly address the court jurisdiction below. As a principal matter, the Action and the cases consolidated before this Court were brought pursuant to 28 U.S.C. § 1332(d), which provides:

> The district courts shall have original jurisdiction of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which--(A) any member of a class of plaintiffs is a citizen of a State different from any defendant.

28 U.S.C. § 1332(d). This Action amply meets this requirement. Plaintiffs represent 17 states (*see* Levis Decl. ¶ 20), and if found liable, the claims raised in the Complaint would have subjected Settling Entities to well over $5,000,000 based on number of borrowers impacted by the Data Security Incident, as reflected by the $10,000,000 Settlement Fund.

Although not a defendant, OSLA's participation in this Settlement as an interested third party does not change the Court's subject matter jurisdiction over the Action or Settlement. Courts recognize that "broad class action settlements are common, since defendants and their cohorts would otherwise face nearly limitless liability from related lawsuits in jurisdictions throughout the country." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 106 (2d Cir. 2005) ("*Wal-Mart Stores*"). In recognition of the goal of such settlements to bring global peace, "Plaintiffs in a class action may release claims that were or could have been pled in exchange for settlement relief" and such ability to "release claims is limited [only] by the 'identical factual predicate' and 'adequacy of representation' doctrines." *Id.* As a consequence, "class action releases may include claims not

presented and *even those which could not have been presented* as long as the released conduct arises out of the" same facts and circumstances underlying the action, and so long as the class representatives' interest in the litigation align with the interests of absent class members. *Id.* at 106, 113 (emphasis added).

The ability to provide a broad release as part of a class settlement extends not only to the claims that were and were not pled, but also to the parties (and non-parties) that would benefit from the release. *Id.* at 109 (holding that the district court did not "err by finding that the non-party banks could be released from liability for conduct premised on the identical factual predicate of claims alleged in this action."). The Eighth Circuit, like several others around the country, has applied the same reasoning and analysis. *See In re Y & A Grp. Sec. Litig.*, 38 F.3d 380, 383–84 (8th Cir. 1994) (affirming district court's order enjoining arbitration against non-party covered by release in a securities class action settlement); *see also Fager v. CenturyLink Commc'ns, LLC*, 854 F.3d 1167, 1175 (10th Cir. 2016) ("it is not improper for a class-action settlement to release claims against nonparties") (citing *Wal-Mart Stores*); *Jones v. Singing River Health Servs. Found*., 865 F.3d 285, 302 (5th Cir. 2017) ("[a] court may approve a class action settlement that releases non-parties if 'the claims against the non-party being released were based on the same underlying factual predicate as the claims asserted against the parties to the action being settled'") (quoting *Wal-Mart Stores*).

Applying this same reasoning here, OSLA is a proper party to the Settlement based on its involvement in the same Data Security Incident, as one of two underwriters using Nelnet, whose borrower information was compromised. Given the complexities of this multi-party action the parties endeavored to reach a global resolution among all those impacted by the same Data Security Incident to promote efficiency, conserve resources, and obtain global peace for those involved in

8

the action right. OSLA participated fully in Settlement negotiations with Defendants Nelnet and Edfinancial. Plaintiffs, at all times, represented borrowers serviced by OSLAs as Plaintiff Traynor and Makayla Nelson are OSLA borrowers and users of Nelnet's service portal—who had standing to bring claims against OSLA.[6] Accordingly, the Court may properly consider the Parties' Settlement and, if approved, resolve the claims against OSLA on behalf of the Settlement Class.

## II.    THE COURT SHOULD CONDITIONALLY CERTIFY THE PROPOSED CLASS

"Before assessing whether the Settlement is within the range of reasonableness for the purposes of preliminary approval, the Court must conduct an independent class certification analysis," under Rule 23. *Lechner v. Mut. of Omaha Ins. Co.*, No. 8:18-cv-22, 2020 WL 5982022, at *2 (D. Neb. Oct. 8, 2020). For a settlement class to be certified, it must satisfy each requirement delineated in Rule 23(a), as well as at least one of the separate divisions of Rule 23(b).

"Although not mentioned specifically in Rule 23 itself, a logical 'prerequisite to class certification is an appropriate class definition.'" *In re Samsung Top-load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, No. 17-ML-2792-D, 2020 WL 2616711, at *4 (W.D. Okla. May 22, 2020), *aff'd sub nom. In re Samsung Top-Load Washing Mach. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 997 F.3d 1077 (10th Cir. 2021). Here, the class definition is "straightforward," "[t]here are no subclasses," and "the Settlement Class is defined as every [person] of the United States" whose personal information was compromised in the Data Security Incident. *Id.* As explained below, the Settlement Class meets the requirements of Rule 23(a) and Rule 23(b)(3) for preliminary and final approval. Accordingly, for purposes of settlement only, the Court should conditionally certify the Settlement Class.

---

[6] Plaintiffs Traynor and MaKayla Nelson complied with the requirements of Oklahoma law needed to give them standing to pursue their claims against OSLA prior to the mediation. Ms. Nelson's claim was filed with OSLA on October 24, 2023, and her claim was denied via letter on January 25, 2024. Levis Decl. ¶ 21.

### A.  The Settlement Class Meets the Rule 23(a) Requirements

#### 1.  Numerosity

Rule 23(a) requires that the class be "so numerous that joinder of all class members is impracticable." Fed. R. Civ. P. 23(a)(1). There is no set formula for determining whether numerosity is met, as "the Eighth Circuit has not established a specific rule as to the necessary size of a class, but it has directed courts to consider several factors in determining whether joinder is feasible: the number of persons in the class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the class members. *Cullan & Cullan LLC v. M-Qube, Inc.*, No. 8:13-cv-172, 2016 WL 5394684, at *4 (D. Neb. Sept. 27, 2016) ("*Cullan*").

More than twenty cases have been consolidated into this Action. Levis Decl. ¶ 18. There are approximately 2,501,324 persons, borrowers serviced by both OSLA and Edfinancial, that fall within the Settlement Class definition. As a result, trying individual suits for millions of individuals would be inefficient and impractical. The amount of time it would take to litigate those cases would be enormous, while the likely size of each individual's recovery (after accounting for legal fees and costs) when pursuing an individual action would be relatively small, making litigating multiple actions an inefficient use of resources.  All of these factors that impact the Court's numerosity analysis favor certifying this Action as a class action for settlement purposes.

#### 2.  Commonality

Commonality only requires the presence of a single common question of law or fact capable of class-wide proof. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011) ("*Dukes*"); Fed. R. Civ. P. 23(a)(2); *see also Cullan*, 2016 WL 5394684, at *5 ("Commonality requires a showing that class members have suffered the same injury."). This case presents scores of questions of law and fact that can be resolved with common evidence, including: (i) whether

Settling Entities violated common law duties, state consumer protection and notification statutes, or other legal obligations and industry standards; (ii) whether Settling Entities failed to properly secure and safeguard Settlement Class Members' Personal Information; (iii) whether Settlement Class Members are entitled to damages or other equitable relief; and (iv) the appropriate measure of any such damages and relief. These questions of law and fact are also common to all Class Members; thus Rule 23(a)(2) is easily satisfied.

### 3. Typicality

Typicality under Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class . . . [i]n other words . . . the class representatives [must] be a part of the class and possess the same interest and suffer the same injury as class members." *Harris v. Chevron U.S.A., Inc.*, No. Civ-15-0094-PRW, 2019 WL 5846917, at *6 (W.D. Okla. July 29, 2019). Courts generally find typicality in data breach cases alleging misconduct that affects all class members in the same fashion. *See In re Wawa, Inc. Data Security Litig.*, No. CV 19-6019, 2023 WL 6690705, at *4 (E.D. Pa. Oct. 12, 2023) ("each institution's claim stems from Wawa's data security measures and whether they were adequate to protect payment card data. Such conduct allegedly caused the same injury typical to all class members"). Here, Plaintiffs' and Class Members' claims arise from the same Data Security Incident involving Settling Entities' alleged data security failures. Plaintiffs' claims are typical of the Class Members' claims for purposes of certifying the Settlement Class.

### 4. Adequacy

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy inquiry under Rule 23(a)(4) serves to uncover conflicts of interest between named parties and the class they seek to represent." *Cullan*, 2016 WL 5394684, at *5; *see also Acosta v. Tyson Foods, Inc.*, No. 8:08-cv-86, 2010 WL 6413287,

at *8 (D. Neb. Dec. 8, 2010) ("The focus of Rule 23(a)(4) is whether: [] the class representatives have common interests with the members of the class"), *report and recommendation adopted*, No. 8:08-cv-86, 2011 WL 1193015 (D. Neb. Mar. 30, 2011). To demonstrate adequacy of representation, a plaintiff must show that "(1) the representative and its attorneys are able and willing to prosecute the action competently and vigorously; and (2) the representative's interests are sufficiently similar to those of the class that it is unlikely that their goals and viewpoints will diverge." *City of Farmington Hills Emps. Ret. Sys. v. Wells Fargo Bank, N.A.*, 281 F.R.D. 347, 353 (D. Minn. 2012). "[P]erfect symmetry of interest is not required, and not every discrepancy among the interests of class members renders a putative class action untenable . . . To forestall class certification . . . [the] intra-class conflict must be so substantial as to overbalance the common interests of the class members as a whole." *Vogt v. State Farm Life Ins.*, 963 F.3d 753, 767 (8th Cir. 2020).

The adequacy inquiry also considers whether the proposed class representative has "demonstrated a willingness to prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat. Bank*, 688 F.2d 552, 563 (8th Cir. 1982) (finding adequacy satisfied based, in part, on the retention of qualified counsel to prosecute the class claims). "It is well established that the 'plaintiff's attorney must be qualified, experienced and generally able to conduct the proposed litigation.'" *Brown v. Cent. Liquor Co.*, 32 Fed. R. Serv. 2d 1197 (W.D. Okla. 1980) "The focus of Rule 23(a)(4) is whether: [] whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton*, 688 F.2d at 562-63.

In this Action, the proposed class representatives are adequate. Plaintiffs have the same interests and suffered the same injury as the class members. Plaintiffs are a group of borrowers serviced by either OSLA and Edfinancial who were harmed as a result of the same Data Security

12

Incident. Plaintiffs also had the same Personal Information potentially exposed as other Settlement Class Members, subjecting all Settlement Class Members to the same risk of financial fraud and identity theft. The Settling Entities' alleged failure to implement reasonable data security measures impacted not just Plaintiffs' privacy interests, but the privacy interests of all Class Members whose information was potentially exposed by the Data Security Incident. As a result, Plaintiffs and the Class seek the same relief from the same injury, and Plaintiffs' interest in proving the Settling Entities' liability and obtaining a recovery wholly aligns with the Settlement Class's interest.

Further demonstrating their adequacy, the proposed class representatives retained qualified and experienced counsel to prosecute their claims. *See*, *e.g.*, *Abarca v. Werner Enterprises, Inc.*, No. 8:14-cv-319, 2018 WL 1136061, at *10 (D. Neb. Feb. 28, 2018) (finding adequacy satisfied where class counsel was "qualified and experienced, and has represented several class plaintiffs in similar class actions"), *report and recommendation adopted*, 2018 WL 1392909 (D. Neb. Mar. 20, 2018). Class Counsel have decades of experience leading some of the most complex class actions, including data breach class actions on behalf of consumers. Levis Decl. ¶ 44; *see also* Exs. 6 – 7 (firm résumés of Lowey and SGT). In this case, Class Counsel's work included but was not limited to, interviewing and vetting dozens of plaintiffs as class representatives, researching the claims for the case, drafting the *Spearman*, *Bump*, and *Scott* complaints in addition to the Amended Complaint, briefing the motion to dismiss as well as Edfinancial's motion to stay, reviewing discovery from Nelnet, and participating in two mediation sessions. Class Counsel's efforts in this case, as well as their experience demonstrate that they are adequate counsel.

Plaintiffs and Class Counsel do not have any antagonistic or conflicting interests with other members of the proposed class. Accordingly, the Rule 23(a)(4) and Rule 23(g) requirements are satisfied.

### B. The Class May Be Certified Under Rule 23(b)(3)

If the plaintiffs meet the requirements for certification under Rule 23(a), they must then establish that their class fits into one of the provisions of Rule 23(b) in order to be certified. The Supreme Court has explicitly determined that "individualized monetary claims belong [] in Rule 23(b)(3)." *Dukes*, 564 U.S. at 362. "For the plaintiffs to prevail on a motion for certification under Rule 23(b)(3), they must demonstrate the existence of superiority and predominance." *Cullan*, 2016 WL 5394684, at *5 (citing Fed. R. Civ. P. 23(b)(3)). Here, predominance and superiority are satisfied.

### 1. Predominance

"The predominance inquiry requires an analysis of whether a *prima facie* showing of liability can be proved by common evidence or whether this showing varies from member to member." *Cullan*, 2016 WL 5394684, at *5. Here, if the claims against the Settling Entities were not settled, common questions would have predominated over individual ones. Several courts have found that common issues, such as whether a defendant maintained reasonable security measures, predominate over individualized issues in data breach cases. *See, e.g.*, *In re Wawa, Inc. Data Sec. Litig.*, 2023 WL 6690705, at *5 ("[t]hough there may be minor differences among the class members," the defendant's conduct "was common as to all class members," and "[t]he issues facing each class member [we]re the same: demonstrating the degree of the [defendant] data breach and proving [defendant]'s culpability"); *Fulton-Green v. Accolade, Inc.*, No. 18-cv-00274, 2019 WL 316722, at *4 (E.D. Pa. Jan. 24, 2019) (predominance exists where personal information was stolen because all claims are "arise from the same underlying activity"); *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *6–7 (N.D. Cal. July 22, 2020), *aff'd*, No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022) ("the focus on a defendant's security measures in a data breach class action 'is the precise type of predominant

14

question that makes class-wide adjudication worthwhile.'"); *In re Equifax Inc. Customer Data Sec. Breach Litig.*, No. 1:17-MD-2800-TWT, 2020 WL 256132, at *13 (N.D. Ga. Mar. 17, 2020), *aff'd in part, rev'd in part and remanded,* 999 F.3d 1247 (11th Cir. 2021) (finding predominance and noting that the question whether Equifax maintained adequate security measures is capable of a class-wide resolution). The fact that the incident arose from a single set of acts carried out by a single individual who impacted all class members further supports a finding of predominance as there is likely a single set of evidence and issues that underlie all class members claims. *See Dornberger v. Metro. Life Ins. Co.*, 182 F.R.D. 72, 77 (S.D.N.Y. 1998), *as amended* (Jan. 5, 1999) ("Generally speaking, if the action complained of on behalf of the putative class members arises out of a single set of operative facts, then the commonality requirement will have been satisfied. If that common nucleus of operative facts forms the central issue in the case, even if individualized issues of proof are present, the predominance hurdle will have been cleared.").

Plaintiffs and all Class Members must answer the same questions regarding whether Settling Entities failed to adopt and maintain reasonable security measures to protect Personal Information, promptly detect the Data Security Incident, remedy and mitigate the effects of the Data Security Incident, and provide timely notification to affected persons. Class Members would need to establish the same facts for liability using similar proof and develop a common damages methodology to quantify the impact of the same harm. As these common questions are central and determine the liability and damages for all Class Members, such issues predominate over individualized issues. Therefore, the Settlement Class satisfies Rule 23(b)(3) for purposes of the Settlement.

### 2.  Superiority

Plaintiffs must also show that a class action is superior to individual actions.[7] *See Cullan*, 2016 WL 5394684, at *6 ("The superiority requirement asks whether the class action is the best available method for resolving the controversy. A significant consideration in evaluating superiority is whether the claims are too small to be litigated individually."). Here, a class action is the superior method for the fair and efficient adjudication of this Action.

*First*, Settlement Class Members are numerous and geographically disbursed, making a "class action [] the superior method for the fair and efficient adjudication of the dispute." *Lechner*, 2020 WL 5982022, at *3; *see In re Currency Conversion Fee Antitrust Litig.*, 224 F.R.D. 555, 566 (S.D.N.Y. 2004), *opinion modified on reconsideration*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005) (same).

*Second*, many Class Members have neither the incentive nor the means to litigate these claims individually. The damages most Class Members suffered are likely small compared to the considerable expense and burden of individual litigation. This makes it uneconomic for an individual to protect his/her rights through an individual suit. *See In re Wawa, Inc. Data Sec. Litig.*, 2023 WL 6690705, at *5 (finding superiority met since "[m]any of these financial institutions would likely have small claims that would be impractical to litigate on an individual basis.").

*Third*, the prosecution of separate actions by hundreds (or thousands) of individual Settlement Class Members would impose heavy burdens upon the Court. It would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Settlement

---

[7] Superiority considers: "(A) the class members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3).

Class. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *8 ("Class treatment is the superior method of adjudicating the consumer claims arising from the data breach because the issues cannot practically be resolved through millions of individual trials or settlement negotiations."). Thus, both prongs of Rule 23(b)(3) are satisfied for purposes of the Settlement.

### 3. Ascertainability

"Class ascertainability is an essential prerequisite of a class action, at least with respect to actions under Rule 23(b)(3)." *Cullan*, 2016 WL 5394684, at *6 (quoting *Carrera v. Bayer Corp.*, 727 F.3d 300, 306 (3d Cir. 2013)); *see also In re Nexium Antitrust Litig.*, 777 F.3d 9, 19 (1st Cir. 2015) (recognizing the implicit requirement of ascertainability in class actions). "A plaintiff must show, by a preponderance of the evidence, that the class is currently and readily ascertainable based on objective criteria." *Cullan*, 2016 WL 5394684, at *6. Here the Settlement Class that was affected by the Data Security Incident is easily ascertainable based upon records in the Settling Entities' possession. SA § 10.3. As entities responsible for underwriting student loans and servicing them, the names of Class Members as well as their email addresses and/or mailing addresses are known by the Settling Entities. *Id.* This information will be produced to the Claims Administrator as part of the Notice program allowing them to ascertain and alert all class members of the Settlement.

Accordingly, the Court may certify the proposed Settlement Class.

## III.    THE SETTLEMENT IS LIKELY TO BE APPROVED UNDER RULE 23(e)(2)

### A.  The Preliminary Approval Standard

The Court may preliminarily approve and direct notice of the Settlement if it is likely that the Court, after a hearing, will find the Settlement satisfies Rule 23(e)(2) and the proposed Settlement Class may be certified. Fed. R. Civ. P. 23(e)(1). In this District, courts evaluating the fairness of a settlement must start from the premise that "[a] settlement agreement is presumptively

valid." *In re Uponor, Inc., F1807 Plumbing Fittings Prod. Liab. Litig.*, 716 F.3d 1057, 1063 (8th Cir. 2013). A court's role in reviewing a negotiated class settlement is to "ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005).

At the preliminary approval stage, "the court's focus is on whether a proposed settlement is within the range of possible approval due to an absence of any glaring *substantive or procedural deficiencies*." *Cullan,* 2016 WL 5394684, at *6 (emphasis added); *see also* 4 NEWBERG AND RUBENSTEIN ON CLASS ACTIONS § 13:10 (6th ed.) ("the court's primary objective at th[is] point is to establish whether to direct notice of the proposed settlement to the class, invite the class's reaction, and schedule a final fairness hearing"); *accord Walkinshaw v. CommonSpirit Health*, No. 4:19-cv-3012, 2022 WL 5255287, at *3 (D. Neb. Oct. 6, 2022). In assessing the substantive merit of a proposed settlement, courts in this District are required to "consider [i] the terms of the settlement as compared to the merits of the plaintiff's case; [ii] the complexity, expense, and likely duration of litigating the matter to judgment; [iii] the defendant's financial condition; and [iv] the amount of opposition to the settlement, if any." *Cullan*, 2016 WL 5394684, at *6 (citing *Marshall v. Nat'l Football League*, 787 F.3d 502, 508 (8th Cir. 2015)). Procedural considerations may include "[i] the stage of proceedings and amount of discovery completed, [ii] the opinion of experienced counsel, [iii] whether the settlement was negotiated at arm's length[, and] [iv] the settlement's timing." *Id.* at *6. These factors overlap with the requirements for approval under the

18

Federal Rules.[8] Here the Settlement is free of any fraud or collusion and, when taken as a whole, is fair, adequate, and reasonable to all Class Members.

### B. The Settlement Is Substantively Fair

#### 1. The Terms of the Settlement as Compared to the Merits of Plaintiffs' Case.

"The most important consideration in the [settlement approval analysis] requires balancing the strength of the plaintiffs' case against the value of the settlement terms to the class" to determine whether the proposed settlement is substantively fair. *Marshall*, 787 F.3d at 514. In performing this analysis, the court "does not try the case;" rather the question a court seeks to resolve is what the likely outcome of a trial may have been, and how does that outcome compare to the relief offered to by the Settlement. *Shanahan v. Lee L. Offs.*, No. 8:18-cv-129, 2019 WL 2603102, at *2 (D. Neb. June 25, 2019) ("If the plaintiff class faced a strong unlikelihood of success, or an initial defeat followed by another round at the appellate level, virtually any benefit inuring to the class would be better than the prospect of an ultimately unsuccessful litigation."); *accord Keil v. Lopez*, 862 F.3d 685, 696 (8th Cir. 2017); *see also* Fed. R. Civ. P. 23(e)(2)(C)(i) (settlement evaluation includes assessing the "the costs, risks, and delay of trial and appeal").

While Plaintiffs believe they would have prevailed had this Action proceeded to trial, there are significant risks and challenges that make the outcome of this litigation far from certain. The factual and legal issues in this Action are complex and expensive to litigate, especially given the multiple parties involved. *See In re Wawa, Inc. Data Sec. Litig.* 2023 WL 6690705, at *7 ("This

---

[8] *See* Fed. R. Civ. P. 23(e)(2) (settlement approval based on whether "[A] the class representatives and class counsel have adequately represented the class;" "[B] the proposal was negotiated at arm's length;" "[C] the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3);" and "[D] the proposal treats class members equitably relative to each other.").

19

is a complex class action lawsuit regarding damages from a data breach, an area of law that has not yet been fully developed"); *see also Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-01415 (CMA) (SKC), 2019 WL 6972701, at *1 (D. Colo. Dec. 16, 2019) ("Data breach cases . . . are particularly risky, expensive, and complex.").

This case involves complex legal and technical issues concerning Nelnet's data security systems. Establishing liability would involve obtaining and proving the meaning and significance of evidence, including source code, third-party discovery, deposition testimony, and other facts collected in discovery. As is always true in cases involving large document productions, the duration of the case will depend on the time the Settling Entities will require to review and produce documents, as well as the time Plaintiffs require to review Settling Entities' and non-party documents.

Had this case continued, the cost of litigation would have been significant for both sides due to the need for technical and damages experts to interpret source code and conduct forensic computer analysis and create a damages methodology. If this case had progressed towards class certification and summary judgment, the Parties' experts would have added to the cost and duration of the case and likely would have triggered a "battle of the experts" in this Action.[9] Expert discovery would likely have led to *Daubert* motion practice by both sides, further increasing the cost and risks of the litigation, and delaying any resolution. Given the complexities of this litigation

---

[9] *See, e.g., PHT Holding II LLC v. N. Am. Co. for Life & Health Ins.*, No. 4:18-cv-00368 (SMR) (HCA), 2023 WL 8522980, at *4 (S.D. Iowa Nov. 30, 2023) ("This case would have been a 'battle of the experts' where it would not be clear how a jury would resolve such issues."); *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 343 F. Supp. 3d 394, 410 (S.D.N.Y. 2018), *aff'd sub nom. In re Facebook, Inc.*, 822 F. App'x 40 (2d Cir. 2020) (experts "tend[] to increase both the cost and duration of litigation"); *Balestra v. ATBCOIN LLC*, No. 17-cv-10001 (VSB), 2022 WL 950953, at *3 (S.D.N.Y. Mar. 29, 2022) (granting preliminary approval of class action settlement and finding the settlement amount within the range of approval considering the risks, including a costly and confusing "battle of the experts").

and its focus on technical data security issues that would likely be unfamiliar to the average juror, this case presents a significant level of risk and uncertainty.

While Plaintiffs believe they would have prevailed, there are risks involved in data breach litigation—a continuously developing area of law—including proving standing and causation that may continue even after the motion to dismiss phase. *See, e.g., Fulton-Green v. Accolade, Inc.*, No. 18-cv-00274, 2019 WL 4677954, at *8 (E.D. Pa. Sept. 24, 2019) ("This is a complex case in a risky field of litigation because data breach class actions are uncertain and class certification is rare."); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 260 (D.N.H. 2007) (noting that, because the case "involved a greater risk of non-recovery" due to "still-developing law," this factor weighed in favor of approval); *Hammond v. The Bank of New York Mellon Corp.*, No. 08 Civ. 6060 RMB RLE, 2010 WL 2643307, at *1 (S.D.N.Y. June 25, 2010) (collecting data breach cases dismissed at the motion to dismiss or summary judgment stages). There are also additional complexities caused by the nature of the incident itself, which was perpetrated by a student loan borrower with a valid Nelnet account. This is compounded by law enforcement's swift involvement and capture of the individual, which raises additional questions and concerns about class members' standing and potential causation relating for any harms alleged as part of their claims.

The risk of maintaining a class through trial is another important consideration in evaluating the Settlement. Though present in every class action, this risk is significant where defendants are likely to challenge class certification, including by petitioning for an interlocutory appeal under Rule 23(f). *See Garcia v. Target Corp.*, No. 16-cv-02574-MJD-BRT, 2020 WL 416402, at *2 (D. Minn. Jan. 27, 2020) (finding the requirements of Fed. R. Civ. P. 23(e)(2) were met "taking into account the risks that both sides faced with respect to the merits of the claims

alleged and remedies requested, the risks of maintaining a class action, and the expense and duration of further litigation"); *In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 694 (S.D.N.Y. 2019) (the risk of maintaining a class through trial "weighs in favor of settlement . . . where it is likely that defendants would oppose class certification if the case were to be litigated"). Certifying a litigation class may raise complex legal and factual issues given the data breach issues involved. There have only been a handful of data breach actions that have certified a litigation class. *See, e.g., Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 894 (11th Cir. 2023), *cert. denied sub nom. Brinker Int'l, Inc. v. Steinmetz*, 144 S. Ct. 1457 (2024) (affirming, in part, decision to certify nationwide class of consumers in data breach action); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*, 341 F.R.D. 128, 172 (D. Md. 2022) (certifying Rule 23(b)(3) class), *vac. on other grounds remand. sub nom. In re Marriott Int'l, Inc.*, 78 F.4th 677 (4th Cir. 2023); *In re Sonic Corp. Customer Data Breach Litig.*, No. 17-md-02807, 2020 WL 6701992, at *3-6 (N.D. Ohio Nov. 13, 2020). While Plaintiffs are confident the Court will certify a litigation class should this Action continue, such a motion will be vigorously opposed by Defendants.

Instead of the continued uncertainty of the success of the litigation, the Settlement exchanges those risks for guaranteed relief to Class Members in the form of cash payments for the value for their past harms (reimbursement for out-of-pocket expenses and lost time or alternatively a *pro rata* cash payment) as well as protections from future fall-out from the Data Security Incident by way of prospective facing Credit Monitoring and Identity Theft Protection. In providing these benefits, the Settlement exchanges extensive prosecution costs and a lengthy litigation timeline with the immediacy and certainty of a $10,000,000.00 recovery. *See In re Zurn Pex Plumbing Prod. Liab. Litig.*, No. 08-MDL-1958 ADM/AJB, 2012 WL 5055810, at *6 (D. Minn. Oct. 18, 2012) ("[t]he Settlement provides the members of the Settlement Class with an immediate and

substantial source of recovery while eliminating the risk that further litigation would yield little or no recovery."). The Settlement is substantial and compares favorably to the terms approved by courts in similar data breach cases. *See, e.g., Kostka v. Dickey's Barbecue Restaurants, Inc.,* No. 3:20-cv-03424-K, 2022 WL 16821685, at *6 (N.D. Tex. Oct. 14, 2022), *report and recommendation adopted,* No. 3:20-cv-03424-K, 2022 WL 16821665 (N.D. Tex. Nov. 8, 2022 (data breach class action involving "at least 725,000 individuals" that settled for $2.35 million – approximately $ 3.24 per class member);[10] *In re Herff Jones Data Breach Litig.*, No. 1:21-cv-1329-TWP-DLP, 2022 WL 474696, at *3 (S.D. Ind. Jan. 12, 2022) (data breach class action involving more than 1 million people that settled for $4.35 million – approximately $4.35 per class member; *compare* SA § 2.54 (data breach class action involving 2,501,324 people that is settling for $10 million – at approximately $3.99 per class member ). Here the Parties "have also shown that benefits provided under the proposed settlements compare favorably to the terms of other settlements involving similar [] claims." *Cullan*, 2016 WL 5394684, at *7.

The Settlement is also structured in a manner to ensure that its benefits are fairly allocated. *See* Fed. R. Civ. P. 23(e)(2)(C)(ii), 23(e)(2)(D).  All Settlement Class Members would be able to claim for Credit Monitoring and Identity Theft Protection (SA §§ 7.3, 7.4) and would then have the option of (i) selecting reimbursement for lost time and/or out of pocket expenses , up to a cap of $5,000 (SA §§ 7.3, 7.5, 7.6), or an alternative *pro rata* cash payment, based on the amount of

---

[10] Similar to the *Dickey's* settlement, which provided for additional *pro rata* compensation to California residents due to the statutory California Consumer Privacy Act ("CCPA"), Cal. Civ. Code § 1798.150(a)(1)(a) claim, this Settlement also compensates California residents with a 2x multiplier to account for the release of the statutory damages available under the CCPA. SA § 7.7.1; *see also Kostka*, 2022 WL 16821685, at *13 ("The Settling Plaintiffs have adequately demonstrated why this extra recovery for California class members if equitable, if not equal. Namely, class members from California could bring California state law claims which provide for $100-$750 in statutory damages.").

the Net Settlement Fund remaining after credit monitoring costs and reimbursements are paid. SA §§ 7.37, 7.7. The proposed Class Notice also provides information on how to opt out of the Settlement; absent opting out, each Class Member will be bound by the release. SA §§ 12, 16.

Similar settlement benefits and distribution plans have been approved in other data breach class actions. *See, e.g., In Re Hope College Data Security Breach Litigation*, No. 1:22-cv-01224, ECF Nos. 30-2, 44 (W.D. Mich. May 20, 2024) (settlement benefits include (i) one year of credit monitoring and insurance services; or (ii) cash payments of up to $5,000 per class member for reimbursement of documented losses; or (iii) *pro rata* cash payments); *Bingaman, et al. v. Avem Health Partners, Inc.*, No. 5:23-cv-00130, ECF Nos. 54-1, 67 (W.D. Okla. May 15, 2024) (settlement provides (i) cash payments of up to $7,000 per class member for reimbursement of documented losses and reimbursement for lost time of up to five (5) hours at $25.00 per hour; and (ii) credit monitoring; or (iii) a one-time alternative cash payment of up to $100); *Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 3:20-cv-3424 (N.D. Tex. June 6, 2023), ECF Nos. 62-1, 103 (Class members to be eligible to receive (i) reimbursement for out-of-pocket losses up to $5,000; or (ii) a cash payment, with a 2x multiplier for California class members; or (iii) credit monitoring). Unlike *Hope College*, *Avem*, or *Dickey's*, all Settlement Class Members can claim Credit Monitoring and Identity Theft Protection *in addition to* (i) Reimbursement of Documented Out-of-Pocket Losses and Cash Payments for Lost Time, or (ii) *Pro Rata* Cash Payments. The Settlement also does not favor or disfavor Plaintiffs or any Settlement Class Member; nor does it discriminate against, create any limitations, or exclude from payments any persons or groups within the Settlement Class. All Settlement Class Members—*i.e.*, whether they are borrowers serviced by OSLA or Edfinancial—would equally release Nelnet, OSLA, and Edfinancial with

respect to claims based on the same factual predicate of the Data Security Incident of this Action. SA §§ 12, 16.6.

The Settlement is also designed to ensure sufficient funds are available for distribution to eligible Class Members. *See* Fed. R. Civ. P. 23 (e)(2)(C)(iii). Class Counsel will seek no more than one-third of the Settlement Fund in attorneys' fees, which may be paid from the Settlement Fund following the Effective Date. SA §§ 2.32; 4.2; 19.1; 19.2. The proposed attorneys' fee is reasonable and consistent with fees upheld by courts in this Circuit. *See Campbell v. Transgenomic, Inc.*, No. 4:17-cv-3021, 2020 WL 2946989, at *4 (D. Neb. June 3, 2020) (finding that the requested attorneys' fees in the amount of 1/3 of the settlement fund is "well in line with other attorney's fee awards in this circuit."). Class Counsel will also seek their reasonably incurred litigation expenses and propose to limit the amount requested to $65,000. Levis Decl. ¶ 55. Finally, Plaintiffs will also seek a Service Award totaling no more than $1,500 for each Settlement Class Representative (for a total of $40,500). SA § 18.1. Class Counsel will separately file their Fee and Expense Application seeking approval of the requested awards. Even after accounting for these awards and the anticipated Claims Administration Costs, a substantial portion of the Settlement will remain for distribution to Settlement Class Members.

Lastly, the substantive fairness of the Settlement can be affected by any additional "agreement[s] made in connection with the proposal," and such agreement should be disclosed during the approval process. Fed. R. Civ. P. 23(e)(3). Here there are no side agreements made in connection with the proposed Settlement, further confirming the quality of the Settlement. Any information concerning the Settlement, including any termination rights available to the parties, are contained within the Settlement Agreement.

25

**2. The Complexity, Expense, and Likely Duration of Litigating the Matter to Judgment.**

As discussed above, the analysis of the strength of the case is bound tightly with the complexity of prosecuting data breach cases. Given the complexities, nuances, and technical nature of data breach litigation, serious questions of law and fact are often raised, and the resolution of such issues will undoubtedly require significant time. Here the Settlement shows that the Parties "can deliver a real and substantial remedy without the risk and delay inherent in prosecuting this matter through trial and appeal." *Cullan*, 2016 WL 5394684, at *7; *see also Gordon*, 2019 WL 6972701, at *1 ("Serious questions of law and fact regarding the merits of Plaintiffs' claims and Defendant's defenses place the ultimate outcome of the litigation in doubt. Data breach cases such as the instant case are particularly risky, expensive, and complex, and they present significant challenges to plaintiffs at the class certification stage.").

**3. The Defendants' Financial Condition.**

While Nelnet, Edfinancial, and OSLA are all well capitalized entities and can withstand a judgment greater than the Settlement Amount, this factor alone does not affect the Settlement's reasonableness. *See Huyer v. Njema*, 847 F.3d 934, 939 (8th Cir. 2017) (noting that the financial condition factor had a neutral impact on the evaluation of the settlement because "Wells Fargo's financial condition was stable"); *Marshall*, 787 F.3d at 512 ("The district court found that the NFL is in good financial standing, which would permit it to adequately pay for its settlement obligations or continue with a spirited defense in the litigation. No party disagrees with this finding. As such, we find this factor neutral."); *see also In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) (a defendant's ability to "pay more than it offers in settlement does not, standing alone, indicate that the settlement is unreasonable or inadequate"). Accordingly, this factor is neutral with respect to the proposed Settlement.

26

### 4.  The Amount of Opposition to the Settlement, if Any.

It is too early to determine at this stage what, if any, opposition there will be to the Settlement. While the plaintiffs in *Carr* have been granted a limited right by this Court to object to the Settlement on subject matter jurisdiction grounds, if they so choose, (ECF Nos. 98,100), Plaintiffs strongly believe that the size of this settlement—$10 million—provides substantial cash relief to all Class Members and rebuts any argument that this Settlement was collusive. ECF No. 84 at 1, 4, 7-8, 10, 12-13.

### C.    The Settlement is Procedurally Fair

Controlling law in this District and Rule 23(e)(2) require that a "settlement [not be] the product of fraud or collusion" but based on "the experience and opinion of counsel on both sides," arising from "arm's length negotiations" that may involve the assistance of "a skilled mediator" and sufficient formal or informal discovery such that "all parties were fully aware of the merits," thus making the timing of the settlement appropriate. *Walkinshaw*, 2022 WL 5255287, at *3; Fed. R. Civ. P. 23(e)(2)(A)-(B).  Applied to this case, these considerations confirm the procedural fairness of the proposed Settlement.

### 1.  The Opinion of Experienced Counsel

It is Class Counsel's view that the Settlement is fair and reasonable. As described above, both Lowey and SGT have significant experience litigating class actions, including data breach cases. In negotiating the Settlement with the Settling Entities, Class Counsel relied upon published reports documenting the Data Security Incident and identity theft costs, their own extensive experience in other data breach/data privacy litigation, their prior experience with certain defense counsel, and other class action settlements to ultimately develop the settlement framework negotiated with Settling Defendants. Levis Decl. ¶ 44. *See Childs v. Unified Life Ins. Co.*, No. 10-cv-23-PJC, 2011 WL 6016486, at *14 (N.D. Okla. Dec. 2, 2011) ("Counsels' judgment as to the

27

fairness of the agreement is entitled to considerable weight. As noted, counsel for [plaintiff] has previously settled a similar class action . . . For this reason, their view of the fairness of this settlement is a substantial factor.").[11] As noted above, the Settlement Benefits available from this Settlement are comparable to recoveries other courts have found to be fair reasonable and adequate.

Additionally, the Settling Entities were represented by skilled counsel. Nelnet, for its part, is represented by counsel from Mullen Coughlin LLC, a respected law firm with expertise in data breach/data security law. *Id.* ¶ 45. The same is true for OSLA (Cipriani and Werner) and Edfinancial (Baker & Hostetler). *Id. See, e.g.*, *In re Signet Jewelers Ltd. Sec. Litig.*, No. 1:16-cv-06728-CM-SDA, 2020 WL 4196468, at *2 (S.D.N.Y. July 21, 2020) (approving settlement where "[c]ounsel successfully conducted the litigation against skilled opposing counsel."); *Patton v. Church & Dwight Co.*, No. EDCV 18-903 (MWF) (KKx), 2019 WL 6357266, at *6 (C.D. Cal. Aug. 6, 2019) ("Counsel exercised considerable skill in the investigation of the case, informal discovery, and settlement negotiations, and they did so against experienced, highly skilled opposing counsel and on an entirely contingent basis."); *In re: Urethane Antitrust Litig.*, No. 04-1616-JWL, 2016 WL 4060156, at *5 (D. Kan. July 29, 2016) ("Litigation of this case required great skill in a highly specialized field [], against highly skilled opposing counsel, and plaintiffs'

---

[11] Moreover, under Fed R. Civ. P. 23(e)(2)(A), the experience of counsel is an important consideration in assessing whether Class Counsel is an adequate representation. The analysis of adequate representation under Rule 23(e)(2)(A) and 23(a)(4) is similar. *See Swinton v. SquareTrade, Inc.*, 454 F. Supp. 3d 848, 881 (S.D. Iowa 2020) ("for the purposes of Rule 23(a)(4)'s requirement that the representative parties will fairly and adequately protect the interests of the class, the Court incorporates its analysis above with respect to Rule 23(e)(2)(A), whereby the Court found Plaintiff and his counsel have adequately represented the class."). Class Counsel's leadership in investigating the underlying facts supporting Plaintiffs' claims, prosecuting the Action, and obtaining this Settlement, combined with their extensive experience in litigating data breach and other complex class actions, supports the determination that the Settlement Class has been adequately represented.

attorneys, who had great experience and superior national reputations, demonstrated great skill throughout [].").

Settling Entities' Counsel have been fierce advocates for their respective clients' interests, and have engaged in principled, hard-fought negotiations that resulted in this Settlement. The fact that Settling Entities' Counsel ultimately recommended that the Settling Entities accept this Settlement based on their evaluation of fairness, adequacy and reasonableness of its terms also lends support to approving its terms.

     **2. The Settlement is the Product of Arm's Length Negotiations by Experienced Counsel Aided by a Skilled Mediator**

Utilization of an experienced and "skilled mediator" during the settlement negotiations supports a finding that the settlement is arm's length, reasonable, was reached without collusion, and should therefore be approved. *See, e.g., Walkinshaw v. CommonSpirit Health*, No. 4:19-cv-3012, 2023 WL 1995281, at *2 (D. Neb. Feb. 14, 2023) ("The Court previously held that the Settlement was non-collusive . . . The involvement of multiple skilled mediators, including a Magistrate Judge of this Court, in negotiating the Settlement and the vigorous litigation by the parties over a period of years support this conclusion."); *Jenkins v. Pech*, No. 8:14-cv-41, 2015 WL 6738624, at *2 (D. Neb. Nov. 4, 2015) ("The experience and opinion of counsel on both sides may be considered, as well as whether a settlement resulted from arm's length negotiations, and whether a skilled mediator was involved."); *Khoday v. Symantec Corp.*, No. 11-cv-180 (JRT) (TNL), 2016 WL 1637039, at *8 (D. Minn. Apr. 5, 2016) (holding that "an absence of collusion is reasonably inferred in light of the fact that the adversarial process of this litigation has been vigorous during the course of the dispute, spanning several years and hundreds of court filings" and "three rounds of mediation"), *report and recommendation adopted*, 2016 WL 1626836 (D. Minn. Apr. 22, 2016), *aff'd sub nom. Caligiuri v. Symantec Corp.*, 855 F.3d 860 (8th Cir. 2017);

2 MCLAUGHLIN ON CLASS ACTIONS § 6:7 (20th ed.) ("A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion."). The extensive arm's length negotiations between the Parties over several months, beginning in November 2023, including at two all-day mediation sessions with the assistance of mediator Judge Gandhi, demonstrate that this Settlement was fairly and honestly negotiated.

The Settlement negotiations between Plaintiffs and Nelnet began in November 2023. Levis Decl. ¶ 32. After initial discussions, Plaintiffs and Nelnet recognized early the need to involve a neutral mediator in the negotiations and engaged Judge Gandhi, a skilled, and experienced mediator who presided over the $725 million class action settlement accusing Facebook of allowing third parties, including Cambridge Analytica, to access users' private information. Levis Decl. ¶ 33.

In preparation for the mediation, Plaintiffs sought and received certain discovery that would inform about the facts underlying the incident and allow them to fairly value the case, including documents that described the scope of Data Security Incident and the number of impacted individuals. *Id*. ¶ 34. After preparing and exchanging mediation memoranda with Nelnet, Plaintiffs learned of Nelnet's view that a successful mediation would require the involvement of both Edfinancial and OSLA. Levis Decl. ¶¶ 35-36. Plaintiffs agreed to change the scope the mediation to include Edfinancial and OSLA and prepared a supplemental memorandum to Judge Gandhi in advance of the December 8, 2023 mediation. Levis Decl. ¶¶ 36-37. The December 8 mediation was hard-fought and productive, but still left several issues unresolved, requiring a second mediation session on January 26, 2024. Levis Decl. ¶¶ 38-39. This second mediation further advanced the Parties' negotiations towards an agreed resolution and included an agreement in principle upon the settlement amount, but open issued remained. It took additional discussions

between the Parties before Plaintiffs and the Settling Entities agreed on a framework for a settlement in principle. Levis Decl. ¶ 39.

The Parties advised the Court on January 29, 2024, of the potential settlement framework and continued to work diligently to finalize first a term sheet and then the Settlement Agreement. Levis Decl. ¶¶ 40-41. It took almost five additional months for the Parties to resolve various issues and disagreements and execute a settlement term sheet.  Levis Decl. ¶¶ 41-43.  After jointly negotiating a term sheet (executed on June 11, 2024), the Parties spent more than two months in detailed negotiations over the terms the Settlement Agreement, which was executed on August 16, 2024. Levis Decl. ¶ 47.

The presumption that the Settlement is reasonable should apply here, as the Settlement was negotiated by knowledgeable counsel for Plaintiffs and the Settling Entities, each with a deep understanding of the case's risks and the Settlement's benefits and assisted by an experienced mediator.

### 3.  The Stage of Proceedings and Amount of Discovery Completed Confirm that the Timing of the Settlement Is Appropriate.

This litigation has proceeded to the point where all parties were fully aware of the merits— including the strengths and weaknesses—of the litigation. The first-class action lawsuits against Nelnet were filed beginning in August 2022. This Action was consolidated in January 2023, and has already seen the Parties filed an Amended Complaint and fully brief a motion to dismiss. The Parties have also engaged in pre-mediation discovery as well as confirmatory discovery. *See Cullan*, 2016 WL 5394684, at *7 ("[Co-Lead Settlement Class Counsel] have shown they pursued informal discovery targeted at information relevant to the settlement and collected and reviewed publicly-available information regarding the parties and claims at issue and the settlements also provide for confirmatory discovery."). While the motion to dismiss in this Action was terminated,

31

the court in *Carr* largely sustained a similar motion to dismiss—further giving credence to Plaintiffs' position that a vast majority of their claims would also survive here.

Before and during negotiations with Settling Entities, Class Counsel reviewed and considered, among other things, documents and data produced by Nelnet, including confirmatory discovery, as well as other information developed during Class Counsel's investigation. Levis Decl. ¶¶ 42, 46-47. Based on their investigation, Class Counsel believes Plaintiffs' claims have substantial merit but acknowledge the expense and uncertainty of continued litigation against the Settling Entities, which maintains that they have meritorious defenses. In recommending that the Court approve this Settlement at this stage of the litigation, Class Counsel have accounted for the uncertain outcome, cost, risks, and delay of further litigation and believe the Settlement confers significant benefits on Plaintiffs and the Class.

Given Class Counsel's considerable prior experience in complex class action litigation involving data breach claims (among others), its knowledge of the strengths and weaknesses of Plaintiffs' claims, its assessment of the Settlement Class's likelihood of recovery following trial and appeal, and its experience negotiating with the Settling Entities, the Court should find that it will likely be able to finally "approve the [Settlement] under Rule 23(e)(2) and [ ] certify the [Settlement Class] for purposes of judgment on the proposal," (Fed. R. Civ P. 23(e)(1)(B)), direct that notice be issued to the Settlement Class, and set a date for the Fairness Hearing.

## IV. THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE PLAN AND A.B. DATA AS CLAIMS ADMINISTRATOR

Class action notice "need only satisfy the broad reasonableness standards imposed by due process." *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1153 (8th Cir. 1999). Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* "To satisfy due

process, the notice must reflect a desire to actually inform." *Cullan*, 2016 WL 5394684, at \*7. Here, the proposed Notice Plan easily satisfies the reasonableness standards imposed by due process.

The Notice Plan will inform Settlement Class Members of the substantive terms of the Settlement as well as: (i) the nature of the Action; (ii) the definition of the Class certified; (iii) the Class's claims, issues, or defenses; (iv) that a Class Member may enter an appearance through an attorney; (v) that the Court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3). *See* Parks Decl.

The proposed Notice Plan and related forms of notice (*see* Levis Decl, Exs. 2 – 4) are "reasonably calculated … to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The Notice Plan includes (i) emailing the Short Form Notice to Settlement Class Members for whom Nelnet has email addresses, and (ii) mailing the Postcard Notice to Settlement Class Members via U.S.P.S. first-class mail to Settlement Class Members for whom Nelnet only has mailing addresses for (which is approximately 14,756 Settlement Class Members). Levis Decl., Ex. 2 – 3. The Short Form Notice will include the address of the Settlement Website and direct Class Members to review the Settlement, the Long Form Notice, and Claim Form on the Settlement Website. *Id.* Given the size of this Settlement Class and that Nelnet has mailing and/or email addresses for the class of persons notified of the Data Security Incident, the Short

Form Notice is an efficient and effective means to directly inform Class Members of the Settlement. [12]

The dedicated Settlement Website—www.NelnetSettlement.com—will serve as a one-stop resource by which Class Members can access relevant documents relating to the proposed Settlement. Levis Decl. ¶¶ 59, 61, 63-64. On the website, Class Members can review and obtain: (i) the Settlement Agreement; (ii) the Long Form Notice, which provides details of the key facts of this case and this Settlement in plain, easily understood language; (iii) the Short Form Notice; (iv) the Claim Form; (v) key Court filings, and (vi) updates and developments about the case. *Id.* ¶¶ 63-64. The Claims Administrator will also operate a toll-free number with automated answers to Class Members' questions. *Id.*

Class Counsel also recommends that A.B. Data be appointed as the Claims Administrator. A.B. Data developed the Notice Plan here in conjunction with Class Counsel and will be administering the claims and the Settlement Fund in this Action. A.B. Data has significant experience in administering class action settlements, including Data Security Incident settlements. Parks Decl. ¶ 3; Levis Decl. ¶ 57. All Claims Administration Costs, including costs to implement the Notice Plan will be paid out of the Settlement Fund. Levis Decl. ¶ 65.

## V.    PROPOSED SCHEDULE OF EVENTS

In Appendix A, Plaintiffs propose a schedule of events. If the Court agrees, Plaintiffs request that the Court schedule the Fairness Hearing for a date no earlier than 140 days after the entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. If the Court grants preliminary approval, the only date that the Court need schedule is the date for the

---

[12] Should this Court approve the implementation of the Notice Plan, the Parties intend to notify the *Carr* court and provide it the opportunity (should it choose) to advise whether any additional language is necessary concerning the status of *Carr* and impact of the proposed Settlement on *Carr.*

Fairness Hearing. The remaining dates will be determined by the date the Preliminary Approval Order is entered and the Fairness Hearing date.

<u>**CONCLUSION**</u>

For the foregoing reasons, Plaintiffs respectfully request that the Court grant Plaintiffs' Motion for Preliminary Approval and enter the accompanying Preliminary Approval Order.

Dated: August 23, 2024

Respectfully submitted,

*/s/Christian Levis*
Christian Levis
Amanda G. Fiorilla
**LOWEY DANNENBERG, P.C.**
44 South Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
clevis@lowey.com
afiorilla@lowey.com

Anthony M. Christina
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
achristina@lowey.com

Ian W. Sloss
Johnathan Seredynski
Steven L. Bloch
Zachary Rynar
**SILVER GOLUB & TEITELL LLP**
One Landmark Square, Floor 15
Stamford, CT 06901
Tel: (203) 325-4491
isloss@sgtlaw.com
jeredynski@sgtlaw.com
sbloch@sgtlaw.com
zrynar@sgtlaw.com

*Proposed Class Counsel*

APPENDIX A

| PROPOSED SCHEDULE OF EVENTS | |
| --- | --- |
| **Event** | **Timing** |
| Notice to the Class commences Date ("Notice Date") | No later than forty-five (45) days after the Court enters the Preliminary Approval Order |
| Deadline to file Claims Administrator's Declaration regarding implementation of Notice Plan | No later forty-five (45) days after the Notice Date |
| Deadline to file Motion for Final Approval of the Settlement | No later than forty-five (45) days after the Notice Date |
| Deadline to File Class Counsel's Motion for Attorneys' Fees and Expenses and Plaintiffs' Request for Service Awards | No later than forty-five (45) days after the Notice Date |
| Opt-Out Deadline | No later than sixty (60) days after the Notice Date |
| Objection Deadline | No later than sixty (60) days after the Notice Date. |
| Settlement Claims Deadline | No later than sixty (60) days after the Notice Date. |
| Deadline to File Opt-Out List and Claims Administrator Declaration | No later than five (5) Business Days after Opt-Out Deadline |
| Deadline to File Claims Administrator Declaration to Distribute the Claims Payments | No later than fifteen (15) days prior to the Fairness Hearing. |
| Deadline to Complete Discovery Concerning Objections | No later than thirty (30) days after the Deadline for Objections. |
| Deadline to File Oppositions to Objections/Reply Memorandum in Support of Motions | No later than thirty-five (35) days after the Deadline for Objections. |
| Fairness Hearing | At least 145 days after entry of the Preliminary Approval Order. |

## CERTIFICATE OF COMPLIANCE WITH LOCAL CIVIL RULE 7.1(d)(3)

I hereby certify that this memorandum of law (the "Brief") complies with the word-count limit described of Local Civil Rule 7.1(d)(1)(A). I relied on the word count feature of the word-processing system, Microsoft Word, Version 2308, used to prepare the Brief. The actual number of words in the Brief, including all text (the caption, body, headings, footnotes, and quotations), is 12,804 words.

I declare pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

*/s/ Christian Levis*
Christian Levis

**CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2024, a copy of the foregoing document was filed electronically with the U.S. District Court for the District of Nebraska and served on all counsel of record through the CM/ECF system.

*/s/ Christian Levis*
Christian Levis