**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

In Re:

Data Security Cases Against NELNET
SERVICING, LLC,

Case No. 4:22-cv-3191

**MEMORANDUM OF LAW IN SUPPORT OF INTERVENORS'**
**<u>RENEWED MOTION TO INTERVENE</u>**

i

## TABLE OF CONTENTS

I.     INTRODUCTION .......................................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND............................................................ 2

    A.   Lowey and SGT Delayed the Litigation for their Own Personal Gain. ............................. 2

    B.   Lowey and SGT Made Misrepresenations to the Court in their Leadership Application. . 4

    C.   Lowey and SGT Contributed No Benefit to the Class........................................................ 4

    D.   The Court Granted Intervenors' Previous Motion to Intervene for a Limited Purpose, but it
       is Now Time to Expand this Purpose Because there is Conclusive Evidence of a Reverse
       Auction......................................................................................................................... 5

    E.   The Proposed Settlement's Notice Program is Deficient. .................................................. 7

III.   INTERVENORS SHOULD BE PERMITTED TO INTERVENE TO PROTECT THEIR
      INTERESTS. ................................................................................................................ 8

    A.   Legal Standard. ................................................................................................................ 8

    B.   Intervenors Satisfy the Standard for Intervention as a Matter of Right.
       ...................................................................................................................................... 9

       1.   Intervenors have a Recognized Interest in the Subject Matter of the Litigation. ........... 9

       2.   Intervenors' Interests Will be Impaired by the Disposition of the Nebraska Action and
          Intervenors Will Not be Adequately Represented by Class Counsel. ......................... 10

       3.   The Renewed Motion to Intervene is Timely. ............................................................... 15

    C.   Alternatively, Intervenors Satisfy the Standard for Permissive Intervention.
       ...................................................................................................................................... 15

IV.   CONCLUSION............................................................................................................. 16

**TABLE OF AUTHORITIES**

<u>CASES</u>

*Carr v. Oklahoma Student Loan Auth.*,

    No. CIV-23-99-R, 2023 WL 6193015 (W.D. Okla. June 16, 2023) ........................................ 6

*Coleman v. BoysTown Research Hospital*,

    No. D01C118000816 (Douglas Ctny. Dist. Ct., Neb.) ................................................................ 7

*Cullan & Cullan LLC v. M-Qube, Inc.*,

    No. 8:13CV172, 2014 WL 347034 (D. Neb. Jan. 30, 2014) ............................................. 10, 13

*Liddell v. Caldwell*,

    546 F.2d 768 (8th Cir. 1976) .................................................................................................... 10

*Lutz v. Electromed, Inc.*,

    No. 21-cv-2198-KMM-DTS (D. Minn.) ..................................................................................... 7

*Mackey v. Belden, Inc.*,

    No. 4:21-cv-00149 (E.D. Mo.) .................................................................................................... 7

*N. Dakota ex rel. Stenehjem v. United States*,

    787 F.3d 918 (8th Cir. 2015) ...................................................................................................... 8

*Nat'l Parks Conservation Ass'n v. United States E.P.A.*,

    759 F.3d 969 (8th Cir. 2014) ...................................................................................................... 9

*Perry v. Bay & Bay Transportation Services, Inc.*,

    No. 22-cv-973 (D. Minn.) ............................................................................................................ 7

*Reynolds v. Beneficial Nat. Bank*,

    288 F.3d 277 (7th Cir. 2002) .................................................................................................... 10

*Seger v. Ernest-Spencer Metals*,

    No. 9:08CV75, 2008 WL 3875302 (D. Neb. 2008)................................................. 16

*Smith v. SEECO, Inc.*,

    922 F.3d 398 (8th Cir. 2019) ................................................. 15

*United Food and Com. Workers Union, Loc. No. 663 v. U.S. Dep't of Agric.*,

    36 F.4th 777 (8th Cir. 2022) ................................................. 15

*United States v. Ritchie Special Credit Invs., Ltd.*,

    620 F.3d 824 (8th Cir. 2010) ................................................. 9

*United States v. Union Elec. Co.*,

    64 F.3d 1152 (8th Cir. 1995) ................................................. 9

*Weisenberger v. Ameritas Mut. Holding Co.*,

    No. 4:21-CV-3156, 2024 WL 3903550 (D. Neb. Aug. 21, 2024)........................... 7

## OTHER AUTHORITIES

Neb. Const. art. VII, § 5............................................................................................... 13

## RULES

Fed. R. Civ. P. 24............................................................................................... 8, 9, 15

## I.   INTRODUCTION

Intervenors[1] Kathleen Carr, Keegan Killory, and Kelsie Powell, plaintiffs in the class action lawsuit captioned *Carr, et al. v. Nelnet Servicing, LLC*, No. 5:23-cv-00099 (W.D. Okla.) (the "Oklahoma Action") file this Renewed[2] Motion to Intervene in the above-captioned action, *In re: Data Security Cases Against Nelnet Servicing, LLC*, No. 4:22-cv-3191 (D. Neb.) (the "Nebraska Action"), for the purpose of objecting to the adequacy of the proposed settlement, the proposed notice plan to the Class, and the adequacy of Lowey Dannenberg, P.C. ("Lowey") and Silver Golub & Teitell LLP ("SGT") as Class Counsel.

New evidence has come to light that conclusively establishes the proposed settlement reached in the Nebraska Action is the product of a reverse auction, fails to give adequate notice to the Class Members, and is therefore inadequate. Class Counsel, who conducted no formal discovery and retained no experts, filed their Motion for Preliminary Approval of Class Action Settlement on August 24, 2024 (ECF No. 112),[3] seeking preliminary approval of a $10 million settlement for approximately 2,501,324 Class Members (approximately $4.00 per person). The proposed settlement Class Counsel offer for approval is **less** than the amount Defendants indicated

---

[1] Intervenors are joined in the substance of their objection to preliminary approval of this proposed class action settlement by Gary M. Klinger and David K. Lietz of Milberg Coleman Bryson Phillips Grossman, PLLC (counsel for the plaintiff in the first-filed case in this District, Case No. 4:22-cv-03181), Lori Feldman of George Feldman McDonald (counsel for the plaintiff in Case No. 4:22-cv-03186), John Yanchunis of Morgan & Morgan (counsel for the plaintiff in Case No. 4:22-cv-03184), Terence R. Coates of Markovits Stock DeMarco (counsel for the plaintiff in Case No. 4:22-cv-03181) and Maureen Brady of McShane and Brady (counsel for the plaintiffs in Case No. 4:22-cv-03203), who all support the positions taken in this Renewed Motion and who intend to file objections to this settlement if and when this Court grants preliminary approval.

[2] *See* ECF No. 98 ("The Court grants the Intervenors' motion to intervene as of right in part. It denies the remainder of the Intervenors' motion to intervene as of right without prejudice to a later motion that may become appropriate if new facts develop and the Intervenors can prove—not merely speculate—the Plaintiffs are not adequate representatives.").

[3] The Motion for Preliminary Approval was actually due August 23, 2024, but Class Counsel filed the Memorandum of Law after the deadline on August 24, 2024.

they would settle the case for in November 2022.[4] Moreover, the proposed notice program is deficient because it fails to apprise Class Members of all their rights; specifically, the existence of and ability to participate in a more advanced lawsuit in Oklahoma—the Oklahoma Action.

In sum, the proposed settlement was negotiated by Class Counsel who conducted no formal and have little understanding of the value of the claims they are settling. The proposed settlement was induced by Nelnet Servicing, LLC ("Nelnet") and the Oklahoma Student Loan Authority ("OSLA") trying to escape discovery and greater liability in the Oklahoma Action.[5] This weak, low dollar settlement is not in the best interests of the Class, and the Court must evaluate the inadequacies of the proposed settlement and Class Counsel before notice of the proposed settlement is disseminated to the Class.

## II.    FACTUAL AND PROCEDURAL BACKGROUND.

### A.  Lowey and SGT Delayed the Litigation for their Own Personal Gain.

As the Court is aware, the underlying litigation stems from a data breach impacting Nelnet, Edfinancial Services, LLC ("Edfinancial") and OSLA in 2022 ("Data Breach" or "Breach"). Shortly after the Data Breach, numerous lawsuits were filed, nearly all of which were filed before this Court. A group of plaintiffs' counsel banded together in September 2022 to explore the factual underpinnings of the case, the extent of liability, and discuss the viability of early resolution. To learn more about the case, attorneys from Milberg Coleman Bryson Phillips Grossman, PLLC, Morgan & Morgan Complex Business Division, Stueve Siegel Hanson LLP, and Federman &

---

[4] As discussed in Section (II)(A), a mediation took place in November 2022, between some counsel for plaintiffs and defense counsel. Counsel who were present are purposely being vague so as to not waive the mediation privilege by disclosing the specifics, but will provide a sworn declaration under seal, if necessary.

[5] The Notice of Settlement (ECF No. 96) was uncoincidentally filed two (2) days before depositions were scheduled to begin in the Oklahoma Action.

Sherwood (collectively "MMSF")—who are all preeminent law firms in data privacy litigation—attended a mediation session with defense counsel in November 2022. Lowey and SGT were not a part of this group nor were they working with the group to be included. A resolution was not reached during the November 2022 mediation, but considerable progress was made. After the mediation, defense counsel intimated Defendants would settle for an amount that far exceeds the proposed settlement Lowey and SGT ask the Court to now grant preliminary approval of. *See* ECF No. 112. Although MMSF could have settled the case after the earlier mediation, they rejected this offer knowing the Class deserved more for such an egregious data breach.

Lowey and SGT, however, had other plans. Even though nearly all the cases filed against Nelnet and Edfinancial were filed before this Court, Lowey and SGT unilaterally decided to delay the litigation and filed an unnecessary motion for centralization with the Judicial Panel on Multidistrict Litigation ("JPML"). *See In re: Nelnet Servicing, LLC Customer Data Security Breach Litig.*, MDL No. 3053 (J.P.M.L. 2022). At the MDL hearing, representatives for the plaintiffs argued that Lowey and SGT were "causing undue 'delay' in the case and making it impossible for the parties to press forward." ECF No. 41 at p. 12.

Unsurprisingly, on December 13, 2022, the JPML denied Lowey and SGT's motion for centralization and hinted at the unreasonableness of the motion by noting sixteen (16) out of the seventeen (17) actions comprising the litigation were pending in the United States District Court for the District of Nebraska. MDL No. 3053, ECF No. 60. The JPML also found that to the extent the one (1) action pending outside of Nebraska was not transferred to Nebraska, the actions could be informally coordinated. *Id.* Essentially, Lowey and SGT's motion for centralization was unsuccessful and needlessly delayed the litigation. Rather, it was a carefully thought-out procedural maneuver deployed for the purpose of taking control of the case and bolstering their

3

chances of serving as lead counsel.

### B. Lowey and SGT Made Misrepresentations to the Court in their Leadership Application.

Slighted that they were not involved in the preliminary mediation, and realizing they were losing control of the case, on the same day the Order Denying Transfer was entered by the JPML Lowey and SGT rushed to the courthouse to file their motion for appointment as lead counsel. ECF No. 35. In Lowey and SGT's preemptive leadership application, Lowey and SGT made many misrepresentations to the Court, including claiming they would "aggressively litigate" the case to achieve the "best possible result" (*id.* at p. 21) and that they would "work cooperatively and collaboratively" (*id.* at p. 29) with others. None of these representations were true.

After Lowey and SGT raced to the courthouse to file their leadership application, the Court permitted other parties to submit leadership applications. *See* ECF No. 39. However, after leadership applications were filed, Lowey and SGT were quick to engage in below the belt tactics and filed a response that dragged all other firms who applied for leadership positions through the mud. *See* ECF No. 41. Lowey and SGT made baseless accusations that MMSF were trying to "put the interest of counsel before that of the class" (*id.* at p. 11), by taking an assembly line approach to data breach litigation—"file, stay, mediate, settle, rinse, repeat." *Id.* at p. 14. They also chastised MMSF for seeking a "quick and cheap resolution" (*id.* at p. 11) by "accepting Defendant's chosen pre-mediation documents in lieu of discovery." *Id.* at p. 15. This is exceedingly ironic because that is precisely what Lowey and SGT did once they cleared the competition with their false rhetoric. Lowey and SGT's response did not age well, but blatant misrepresentations to the Court never do.

### C. Lowey and SGT Contributed No Benefit to the Class.

After Lowey and SGT were appointed as Class Counsel, they did not accomplish any of their promises. They did not "aggressively litigate" the case, rather they only filed a consolidated

complaint and a response to a motion to dismiss. They also relied on the work done by Intervenors'

Counsel in the Oklahoma Action rather than prosecute their own case. *See* ECF No. 80.

Additionally, Lowey and SGT did not "work cooperatively and collaboratively" with other counsel

in the case because they did not seek to include or even vet potential plaintiffs proposed by other

law firms and only included their own clients on the Consolidated Complaint. In true "pot calling

the kettle black" fashion, however, Lowey and SGT "accept[ed] Defendant's chosen pre-mediation

documents in lieu of discovery" and came to a "quick and cheap resolution" before conducting

any formal discovery or even retaining any experts, which is exactly what Intervenors' counsel did

in the Oklahoma Action.[6]

It is jarring that Class Counsel propose the Court approve a settlement of $10 million, when

defense counsel indicated Defendants would settle for an amount exceeding $10 million in

November 2022. Lowey and SGT leave the Class in a worse position than when they were

appointed. The proposed settlement should not be presented to the Class without Class Members

being apprised of this crucial information.

> ### D. The Court Granted Intervenors' Previous Motion to Intervene for a Limited Purpose, but it is Now Time to Expand this Purpose Because there is Conclusive Evidence of a Reverse Auction.

This is not the first time the inadequacy of Class Counsel and the proposed settlement have

been brought to the Court's attention. On March 12, 2024, Intervenors filed a Motion to Intervene

raising concerns that a reverse auction had occurred. *See* ECF Nos. 83, 84. Specifically, they

argued that the Nebraska Action Plaintiffs (and their counsel) did not adequately represent their

---

[6] Lowey and SGT admit in their Motion for Preliminary Approval of Class Action Settlement that they did not retain technical experts or damages experts. *See* ECF No. 112 at p. 27 ("Had this case continued, the cost of litigation would have been significant for both sides due to the need for technical and damages experts….").

interests because the settlement agreement with OSLA does not account for the greater damages available to Class Members in the Oklahoma Action. This was because (1) the Oklahoma action is more procedurally advanced, and (2) punitive damages are available in Oklahoma. ECF No. 98 at fn 5. But, at that time, the Court found it could not "evaluate the merits of these arguments when the terms of the settlement [we]re not [yet] before it." *Id.* Thus, the Court only allowed the Intervenors to intervene for the limited purpose of contesting subject matter jurisdiction and denied their Motion to Intervene for the purpose of contesting the adequacy of the settlement *without* prejudice in the event "new facts develop[ed]." *Id.* at 7.

New facts have developed. The terms of the settlement are now public, and it is clear this was a reverse auction. After the United States District Court for the Western District of Oklahoma denied Nelnet's Motion to Transfer and/or Stay the Oklahoma Action (denied on June 16, 2023), OSLA inadvertently waived sovereign immunity (waived on June 16, 2023),[7] and Nelnet and OSLA received unfavorable orders on their Motions to Dismiss (denied in part on October 19, 2023), Defendants ran to Class Counsel in Nebraska to negotiate a lower settlement with Class Counsel in an action that held far less exposure to damages or liability for Defendants so they could settle for much cheaper. The Nebraska Action had made virtually no progress and was still awaiting a decision on a motion to dismiss. It is crystal clear that Class Counsel and Defendants darted off to mediation in November 2023 to escape liability and a more advanced proceeding— the Oklahoma Action.

The proposed settlement Class Counsel present to the Court for preliminary approval is

---

[7] *See Carr v. Oklahoma Student Loan Auth.*, No. CIV-23-99-R, 2023 WL 6193015, at fn 1 (W.D. Okla. June 16, 2023) ("By voluntarily consenting to removal, OSLA invoked this Courts jurisdiction and waived immunity.").

inadequate on its face. The proposed settlement provides a common fund of only $10 million to 2,501,324 Class Members—or approximately $4.00 per person.[8] *See* ECF No. 112. As mentioned above, the proposed settlement is **<u>less</u>** than what defense counsel indicated they would settle for in November 2022. This amount would have only increased with the continued successes of the Oklahoma Action—and Defendants knew that. Yet, Class Counsel stand to receive approximately $3.3 million for negligible work, which explains why they endorse the proposed settlement. If Class Counsel are as efficient as they promised in their scathing application for leadership and their response in opposition to every other law firm who filed a leadership application, their lodestar, for the little work they have done, is likely less than $500,000.00—far less than the windfall they seek.

### E. The Proposed Settlement's Notice Program is Deficient.

The notice materials provided in conjunction with the proposed settlement do not adequately apprise Class Members of all their options, nor do they provide a meaningful factual history of the case. To state the obvious, Settlement Class Members would have preferred (and deserve) a settlement exceeding $10 million. The notice materials also make no mention of the Oklahoma Action, its status, notable rulings in the case (including the favorable motion to dismiss orders and the order issuing discovery sanctions against OSLA), that discovery had advanced, that

---

[8] This per person recovery amount is very low, considering the per person value this Court recently approved in another data privacy settlement with very similar facts. *See Weisenberger v. Ameritas Mut. Holding Co.*, No. 4:21-CV-3156, 2024 WL 3903550 (D. Neb. Aug. 21, 2024) (approved by Hon. John M. Gerrard) (per person recovery amount of approximately $9.93 per person); *see also Coleman v. BoysTown Research Hospital*, No. D01C118000816 (Douglas Ctny. Dist. Ct., Neb.) (approximately $42.14 per person). It is also low when compared to other data privacy settlements approved in other district courts within the Eighth Circuit. *See Lutz v. Electromed, Inc.*, No. 21-cv-2198-KMM-DTS (D. Minn.) (approximately $17.55 per person); *Perry v. Bay & Bay Transportation Services, Inc.*, No. 22-cv-973 (D. Minn.) (approximately $34.13 per person); *Mackey v. Belden, Inc., No.*, 4:21-cv-00149 (E.D. Mo.) (approximately $56.41 per person).

depositions of OSLA and Nelnet employees were pending, or that Plaintiffs retained expert witnesses who were working on their expert reports. Class Members have the right to know this material information to evaluate which case most adequately represents their interests and has the best likelihood of success. Concealing this information from Class Members prevents them from making an informed decision.

*    *    *

In sum, this Renewed Motion to Intervene is not a group of aggrieved attorneys seeking to intervene because they were not appointed as lead counsel. This is a group of attorneys legitimately concerned about the flagrant inadequacies with the proposed settlement and the counsel who negotiated it. These deficiencies must be addressed before notice of the proposed settlement is disseminated to the Class and considerable time and expense is expended (that may need to be done a second time). Accordingly, Plaintiffs' Renewed Motion to Intervene is now ripe and should be granted to protect the best interests of the Class.

## III. INTERVENORS SHOULD BE PERMITTED TO INTERVENE TO PROTECT THEIR INTERESTS.

### A. LEGAL STANDARD.

Federal Rule of Civil Procedure ("Rule") 24 provides two avenues for a movant to intervene in an ongoing case by intervention as a matter of right and permissive intervention. Intervenors satisfy both standards here.

Pursuant to Rule 24(a)(2), the Court must permit anyone to intervene who, on timely motion: (i) has a recognized interest in the subject matter of the litigation that (ii) might be impaired by the disposition of the case and (iii) will not be adequately protected by the existing parties. *N. Dakota ex rel. Stenehjem v. United States*, 787 F.3d 918, 921 (8th Cir. 2015).

8

On the other hand, Rule 24(b), governing permissive intervention, gives the Court discretion to permit intervention as follows: "[o]n timely motion, the court may permit anyone to intervene who … has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). In exercising its discretion to grant or deny permissive intervention, the Court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties." Fed. R. Civ. P. 24(b). The Eighth Circuit has identified the following factors as relevant considerations when deciding whether to permit permissive intervention: (i) whether the motion is timely filed; (ii) whether the proposed intervenor has a recognized interest in the subject matter of the litigation; (iii) whether the proposed intervenor is able to show that his or her interest is one that might be impaired by the disposition of the litigation; and (iv) whether the proposed intervenor is able to show that the interest will not be adequately protected by the existing parties. *United States v. Union Elec. Co.*, 64 F.3d 1152, 1160 (8th Cir. 1995).

The Court must accept as true all material allegations in the motion to intervene and must construe the motion in favor of the prospective intervenors. *Nat'l Parks Conservation Ass'n v. United States E.P.A.*, 759 F.3d 969, 973 (8th Cir. 2014). Rule 24 is liberally construed and any doubts are resolved in favor of the proposed intervenors. *United States v. Ritchie Special Credit Invs., Ltd.*, 620 F.3d 824, 831 (8th Cir. 2010).

## B. INTERVENORS SATISFY THE STANDARD FOR INTERVENTION AS A MATTER OF RIGHT.

### 1. Intervenors have a Recognized Interest in the Subject Matter of the Litigation.

Intervenors have a direct and significant interest in this litigation that will be impaired absent intervention. The proposed settlement seeks to resolve Intervenors' claims against

9

Defendants for a dollar amount that is **far less** than what defense counsel intimated Defendants would settle the case for in November 2022. Therefore, in the interest of procuring the best possible outcome for the Settlement Class, it is imperative that Intervenors are permitted to intervene for the additional purpose of contesting the adequacy of the settlement and Class Counsel, especially where there is evidence that a reverse auction occurred (discussed below).

> **2. Intervenors' Interests Will be Impaired by the Disposition of the Nebraska Action and Intervenors Will Not be Adequately Represented by Class Counsel.**

Intervenors' interests are not adequately protected by Lowey and SGT and their interests will undeniably be impaired by the low dollar settlement reached in the Nebraska Action. "Typically, showing that interests are not adequately protected presents a minimal burden." *Cullan & Cullan LLC v. M-Qube, Inc.*, No. 8:13CV172, 2014 WL 347034, at *4 (D. Neb. Jan. 30, 2014) (citation omitted). Evidence of a reverse auction satisfies the inadequate representation requirement. *See Liddell v. Caldwell*, 546 F.2d 768, 771 (8th Cir. 1976) ("[R]epresentation is adequate if there is no collusion between the representative and an opposing party; if the representative does not have or represent an interest adverse to the applicant; or if the representative does not fail in the fulfillment of his duty.") (emphasis added). A "reverse auction" is "the practice whereby the defendant in a series of class actions picks the most ineffectual class lawyers to negotiate a settlement with [] the hope that the district court will approve a weak settlement that will preclude other claims against the defendant. The ineffectual lawyers are happy to sell out a class they [] can't do much for in exchange for generous attorneys' fees, and the defendants are happy to pay generous attorneys' fees since all they care about is the bottom line— the sum of the settlement and the attorneys' fees—and not the allocation of money between the two categories of expense." *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 282 (7th Cir. 2002).

This Court has found that "pending similar cases in other districts raise the specter of a 'reverse-auction' type of situation." *Cullan & Cullan LLC*, 2014 WL 347034, at *10.

Here, the facts and circumstances surrounding the proposed settlement indicate it is the product of a reverse auction. This litigation could have settled for more than $10 million in November 2022. However, MMSF rejected these intimations knowing even at that early stage of litigation, it was undervaluing the claims in the case. Thereafter, Lowey and SGT were appointed as Class Counsel based off the misrepresentations they fed to the Court, as demonstrated by the chart below:

| Lowey and SGT's Misrepresentations | The Facts |
|---|---|
| MMSF was only seeking a "quick and cheap resolution" when it chose to mediate in November 2022 and "put the interest of counsel before the class." ECF No. 41 at p. 11. | MMSF are highly experienced in class action data privacy litigation and turned down the opportunity to settle the Class's claims for a low dollar amount. |
| Lowey and SGT promised the Court they would "aggressively litigate" the case to achieve the "best possible result." ECF No. 35 at p. 21. | Lowey and SGT did not "aggressively litigate" the case to achieve the "best possible result." Lowey and SGT filed a consolidated complaint and a response to a motion to dismiss. That was the only work they did in the case. Lowey and SGT turned down the opportunity to participate in formal discovery and depositions of Defendants' witnesses in the Oklahoma Action. Lowey and SGT ultimately settled for less than defense counsel intimated Defendants would settle for in November 2022. |
| MMSF were endangering the best interests of the Class by "accepting Defendant's chosen pre-mediation documents in lieu of discovery." ECF No. 41 at p. 15. | Lowey and SGT conducted zero discovery in the Nebraska Action. In fact, Lowey and SGT "accept[ed] Defendant's chosen pre-mediation documents in lieu of discovery" which "informed" the proposed settlement presented to the Court. They did no adversary discovery. |
| Lowey and SGT represented to the Court that they would "work cooperatively and | Lowey and SGT did not "work cooperatively and collaboratively" in the litigation. Lowey and SGT failed to vet or even consider any |

| | |
|---|---|
| collaboratively" in the litigation. ECF No. 35 at p. 29. | other potential plaintiffs and only included their own clients in the Consolidated Complaint. |
| Lowey and SGT initiated an MDL proceeding to initiate a "catalyst effect" to ensure the actions were litigated in Nebraska. ECF No. 35 at p. 14. | Lowey and SGT initiated a needless MDL to take control of the case. |
| The "Lowey/SGT group has moved this litigation forward both at the JPML and by moving for interim class counsel." ECF No. 41 at p. 13. | Lowey and SGT delayed the appointment of interim class counsel and the progress of the Nebraska Action by initiating a needless MDL to take control over the case. |
| Lowey and SGT represent the most plaintiffs. ECF No. 41 at p. 17. | Lowey and SGT filed their initial complaint with a surplus of plaintiffs to bolster their application for leadership. Many of these initial plaintiffs were subsequently dropped from the consolidated complaint without explanation. Lowey and SGT manufactured support for the purpose of obtaining leadership in the case.

Further, many law firms had clients with far better standing and damages from favorable jurisdictions who could have been named plaintiffs and class representatives. Lowey and SGT denied potential plaintiffs the opportunity to move the case forward with plaintiffs who could add value. |

Once the litigation progressed in the Oklahoma Action—*i.e.*, Nelnet lost on its Motion to Transfer and/or Stay the Oklahoma Action (denied June 16, 2023), OSLA inadvertently waived sovereign immunity (waived June 16, 2023), and OSLA and Nelnet lost in part on their Motions to Dismiss (denied in large part October 19, 2023)—OSLA and Nelnet ran to Nebraska to negotiate a "quick and cheap" settlement before facing greater liability in the Oklahoma Action. Class Counsel and Defendants attended two (2) mediation sessions beginning in November 2023. The mediation sessions that uncoincidentally took place immediately after the unfavorable decisions

on Nelnet and OSLA's motions to dismiss in the Oklahoma Action make it clear OSLA and Nelnet were aware they would have to pay a larger settlement in the Oklahoma Action due to (i) OSLA inadvertently waiving sovereign immunity in the Oklahoma Action; (ii) the availability of punitive damages in Oklahoma (which are unavailable in Nebraska);[9] and (iii) the Oklahoma Action being much more procedurally advanced than the Nebraska Action. Thus, using Lowey and SGT's own words, Defendants and Class Counsel entered a "quick and cheap" (ECF No. 41 at p. 11) settlement informed merely by "accepting Defendant's chosen pre-mediation documents in lieu of discovery" (*id.* at p. 15). Lowey and SGT concede they did not retain nor involve any expert witnesses to guide or assist them. As a result, Class Counsel settled Class Members claims for far less than what was on the table nearly two (2) years ago in November 2022. This is the textbook definition of a reverse auction.

Lowey and SGT will not (and have not) adequately represent(ed) the Class. Lowey and SGT have not added any value to the litigation. Instead, they have detracted from the value developed by other attorneys. To date, Lowey and SGT have: (i) caused delay by initiating an unnecessary MDL to bolster their own chances of being appointed as lead counsel; (ii) engaged in unprofessional and unflattering mudslinging when they objected to every firms' application for leadership (*see id.*); (iii) misrepresented to the Court in their leadership application that they would "work cooperatively and collaboratively" with other counsel when in fact Lowey and SGT did not

---

[9] Neb. Const. art. VII, § 5 has been interpreted by Nebraska courts to prohibit recovery of punitive damages in state causes of action. *Rand v. Stanosheck*, No. 8:18CV481, 2019 WL 3777956, at *3 (D. Neb. Aug. 12, 2019); *see also State ex rel. Cherry v. Burns*, 602 N.W.2d 477, 484 (Neb. 1999) ("[O]rdinarily, with respect to state causes of action, punitive damages contravene Neb. Const. art. 7, § 5, and are not allowed."). This Court has found that "[t]he differences in the law of the two jurisdictions where cases remain pending (notably the absence of a punitive damages remedy in Nebraska) make it less likely that the intervenor's interests, and those of the putative class he seeks to represent, can be adequately protected." *Cullan & Cullan LLC*, 2014 WL 347034, at *8.

13

utilize any other plaintiffs on the consolidated complaint but their own clients (ECF No. 35 at p. 9); (iv) negotiated a settlement with a lower dollar amount than the settlement offer that was made in November 2022, despite accusing MMSF of seeking a "quick and cheap resolution" (ECF No. 41 at p. 11); (v) failed to obtain any formal discovery from Defendants before reaching a settlement even though Lowey and SGT previously dragged MMSF through the mud for "accepting Defendant's chosen pre-mediation documents in lieu of discovery" (*id.* at p. 15); and (vi) relied on the work and progress of other counsel to negotiate their proposed low dollar settlement they have now presented to the Court for preliminary approval (*see* ECF No. 80). Class Counsel have structured their leadership and prosecution of this case on the feeble foundation of their hypocrisy and gamesmanship. The Class is in a worse position than where it was two (2) years ago due to Class Counsel's self-interested leadership games.

Furthermore, there is a glaring problem with the notice program. The notice documents fail to give Class Members the option of choosing to pursue their claims through the Oklahoma Action, let alone mention the Oklahoma Action and its advanced stage, with greater potential damages, which is material information Class Members need to know to make an informed decision. Class Counsel are concealing the existence of the Oklahoma Action to obscure their lack of work and understanding of the case and instead choose to push their attorneys' fees. It is very concerning that Class Counsel are not interested in presenting Class Members with all their available options and are actively preventing them from making an informed decision.

For the reasons above, it is clear Intervenors' interests will be impaired by the disposition of the Nebraska Action and they will not be adequately represented by Class Counsel who are attempting to sell out the Class.

### 3.  The Renewed Motion to Intervene is Timely.

"The timeliness of a motion to intervene is determined by the totality of the circumstances." *Winbush v. Iowa*, 66 F.3d 1471, 1479 (8th Cir. 1995). "To assess timeliness, courts consider four factors: '(1) the extent the litigation has progressed at the time of the motion to intervene; (2) the prospective intervenor's knowledge of the litigation; (3) the reason for the delay in seeking intervention; and (4) whether the delay in seeking intervention may prejudice the existing parties.'" *United Food and Com. Workers Union, Loc. No. 663 v. U.S. Dep't of Agric.*, 36 F.4th 777 (8th Cir. 2022) (quoting *Smith v. SEECO, Inc.*, 922 F.3d 398, 405 (8th Cir. 2019)).

Intervenors' Renewed Motion to Intervene is timely brought based on the totality of the circumstances. Intervenors are filing this Renewed Motion before the notice of the proposed settlement is disseminated to the Class and after the Motion for Preliminary Approval was filed in the Nebraska Action. They are also filing this Renewed Motion in advance of their September 17, 2024, response deadline. *See* ECF No. 115. It is in the best interests of all Parties involved to evaluate the adequacy of the proposed settlement and Class Counsel before significant time and expense is expended effectuating a notice program that may be for nothing. Accordingly, this Motion is timely, and Intervenors satisfy all the relevant criteria to intervene as a matter of right.

### C.  Alternatively, Intervenors Satisfy the Standard for Permissive Intervention.

In the alternative, and for many of the same reasons identified above, this Court should permissively allow Intervenors to intervene pursuant to Rule 24(b)(1)(B).

Plaintiffs satisfy each of the criteria evaluated by the Eighth Circuit. This Motion is timely made as discussed in Section III(B)(3), *supra*. Soon after the Motion for Preliminary Approval was filed Intervenors filed their Renewed Motion to Intervene. Intervenors share a "common question of law or fact" with the Nebraska Action because both actions concern the same Data

15

Breach and share one Defendant in common, Nelnet. Intervenors are also Class Members of the proposed settlement reached in the Nebraska Action. An inadequate settlement and inadequate notice plan, such as those proposed here, certainly impair their rights. Moreover, allowing Intervenors to intervene would not unduly delay or prejudice the adjudication of the Nebraska Action because the Nebraska Action has yet to make any substantial progress, and Intervenors have made their Renewed Motion to Intervene before notice of the proposed settlement has been issued to the Class. Lastly, because there is conclusive evidence of a reverse auction, it is clear Intervenors' interests will not be adequately protected by the existing parties to the Nebraska Action. Thus, if the Court does not allow Intervenors to intervene as a matter of right, the Court should permit Intervenors to permissively intervene. *See Seger v. Ernest-Spencer Metals*, No. 9:08CV75, 2008 WL 3875302 at *5 (D. Neb. 2008) ("Any 'doubts regarding the propriety of permitting intervention should be resolved in favor of allowing it, because this serves the judicial system's interest in resolving all related controversies in a single action.'").

## IV.    CONCLUSION

For the reasons set forth above, Intervenors respectfully request they be permitted to intervene in the Nebraska Action for the additional purpose of contesting the adequacy of the proposed settlement, the notice program, and Class Counsel.

Dated: September 11, 2024                    Respectfully submitted,


                                             */s/ William B. Federman*
                                             William B. Federman
                                             **FEDERMAN & SHERWOOD**
                                             10205 N. Pennsylvania Ave.
                                             Oklahoma City, Oklahoma 73120
                                             (405) 235-1560
                                             (405) 239-2112 (facsimile)

16

*wbf@federmanlaw.com*

***Counsel for the Intervenors***

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on September 11, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ William B. Federman*

<u>**CERTIFICATE OF COMPLIANCE WITH LOCAL RULES**</u>

In accordance with Local Civil Rule 7.1(d)(3), I hereby certify that this Memorandum of Law is 5,898 words and therefore complies with the 13,000-word limit proscribed by Local Civil Rule 7.1(d)(1)(A). In computing the word count I relied on the word-count function of my word-processing software and hereby certify that the function was applied to include all text, including the caption, headings, footnotes, and quotations. The name and version of the word-processing software I used is as follows: Microsoft® Word for Microsoft 365 MSO (Version 2402 Build 16.0.17328.20124) 64-bit.

*/s/ William B. Federman*