**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| In Re:<br><br>Data Security Cases Against NELNET SERVICING, LLC, | Case No. 4:22-cv-3191 |

**INTERVENORS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION**
**<u>FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>**

## <u>TABLE OF CONTENTS</u>

I.    INTRODUCTION ......................................................................................................... 1

II.   FACTUAL AND PROCEDURAL HISTORY ........................................................... 2

A.   OSLA is a Public Trust Created for the Benefit of the State of Oklahoma that is Subject to the OGTCA. ............................................................................................................ 2

B.   The Underlying Data Breach Giving Rise to Intervenors' Claims. ........................................ 2

C.   Intervenors Complied with the OGTCA and the Nebraska Action, Plaintiffs Did Not. ........ 3

D.   The United States District Court for the Western District of Oklahoma Already Found this Court Does Not Have Jurisdiction Over OSLA. ...................................................... 4

III.   ARGUMENT & AUTHORITY ........................................................................................ 4

A.   The Court Does Not Have Jurisdiction Over OSLA Due to the Oklahoma Governmental Tort Claims Act. ............................................................................................................ 5

B.   The Identical Factual Predicate Doctrine Does Not Apply. ................................................... 7

IV.   CONCLUSION ............................................................................................................. 10

**<u>TABLE OF AUTHORITIES</u>**

<u>CASES</u>

*American Fire & Casualty Co. v. Finn*,

   341 U.S. 6 (1951)...................................................................................... 4

*Burghart v. Corrections Corp. of America*,

   OK CIV APP, 224 P.3d 1278 (2009)........................................................ 6

*Carr v. Oklahoma Student Loan Auth.*,

   No. CIV-23-99-R, 2023 WL 6193015 (W.D. Okla. June 16, 2023) ..................... 6, 7

*Duncan v. City of Nichols Hills*,

   913 P.2d 1303 (Okla. 1996)........................................................................ 8

*Floyd v. Quinton Pub. Sch.*,

   438 F. Supp. 2d 1318 (E.D. Okla. 2006) ................................................ 8

*In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*,

   91 F.4th 174 (4th Cir. 2024) ................................................................... 7

*Johnson v. Geo Group, Inc.*,

   OK CIV APP, 436 P.3d 759 (2018).......................................................... 6

*Kennedy v. City of Talihina*,

   OK CIV APP, 265 P.3d 757 (2011)........................................................... 6

*McKee v. City of Skiatook*,

   No. 23-CV-209-GKF-MTS, 2023 WL 11763161 (N.D. Okla. Nov. 27, 2023) ......... 8

*McNutt v. General Motors Acceptance Corp.*,

   298 U.S. 178 (1936)................................................................................... 5

*Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*,

    660 F.2d 9 (2d Cir.1981) ........................................................................................ 8

*Robertson v. Allied Sols., LLC*,

    902 F.3d 690 (7th Cir. 2018) ................................................................................ 4

*Schumacher v. SC Data Ctr., Inc.*,

    912 F.3d 1104 (8th Cir. 2019) .............................................................................. 4

*See Schauf v. The GEO Group*,

    OK CIV APP, 439 P.3d 442 (2018) ...................................................................... 6

*Speight v. Presley, Okla.*,

    203 P.3d 173 (2008) ............................................................................................. 5

*State ex rel. Oklahoma Student Loan Auth. v. Akers*,

    900 P.2d 468 (Okla. Civ. App. 1995) .................................................................. 5

**STATUTES**

51 O.S. § 151 ................................................................................................................ 3

51 O.S. § 156 ........................................................................................................... 6, 9

51 O.S. § 157 ..................................................................................................... 3, 6, 8, 9

51 O.S. § 163 ........................................................................................................... 6, 7

60 O.S. § 152 ................................................................................................................ 5

62 O.S. § 34.12 ............................................................................................................. 2

70 O.S. § 695.3 ......................................................................................................... 4, 5

**OTHER AUTHORITIES**

15 Okla. Op. Att'y Gen. 481 (Dec. 22, 1983) ............................................................. 5

## **RULES**

Fed. R. Civ. P. 23 ................................................................................................................ 4

## I.     INTRODUCTION

Intervenors Kathleen Carr, Keegan Killory, and Kelsie Powell (collectively, "Intervenors"), plaintiffs in the class action lawsuit captioned *Carr, et al. v. Nelnet Servicing, LLC*, No. 5:23-cv-00099 (W.D. Okla.) (the "Oklahoma Action") file this Response in Opposition to Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (ECF No. 112) filed in *In re: Data Security Cases Against Nelnet Servicing, LLC*, No. 4:22-cv-3191 (D. Neb.) (the "Nebraska Action") pursuant to ECF Nos. 98 and 104. This Court does not have jurisdiction over the Oklahoma Student Loan Authority ("OSLA"). Even if the Court did have jurisdiction over OSLA (it does not), Class Counsel forfeited their ability to settle or pursue claims against OSLA by failing to comply with the Oklahoma Governmental Tort Claims Act ("OGTCA"). The Court must deny preliminary approval of the proposed settlement or sever OSLA from the settlement agreement.[1]

---

[1] According to ECF Nos. 98 and 104, Intervenors are currently only allowed to intervene for the limited purpose of contesting subject matter jurisdiction. However, Intervenors filed a Renewed Motion to Intervene, contesting the adequacy of the proposed settlement, the adequacy of the proposed notice program (including the lack of material information provided in the proposed notice documents to Class Members), and the adequacy of Class Counsel on September 11, 2024. *See* ECF Nos. 116 and 117. Intervenors clarify their statement that the proposed notice materials do not mention the Oklahoma Action. The notice materials that will be directly disseminated to Class Members, *i.e.*, the Short Form Notice (ECF No. 110-2) and the Postcard Notice (ECF No. 110-3), mention the Oklahoma Action, but that is it. The Oklahoma Action is essentially only mentioned by the style of the case without any meaningful discussion or disclosure in the Short Form Notice and the Postcard Notice. Class Members would have to dig to find additional information regarding the Oklahoma Action. The mere mention of the Oklahoma Action is insufficient to adequately inform Class Members of the status of the Oklahoma Action, Class Members' potential ability to receive a larger recovery from the Oklahoma Action, or apprise Class Members of their right to participate in the Oklahoma Action. The Short Form Notice and the Postcard Notice also do not inform Class Members of the advanced stage of the Oklahoma Action, including the involvement of experts to support Intervenors' allegations, the progress made in discovery in the Oklahoma Action, nor that discovery sanctions were entered against OSLA. *See* Oklahoma Action, ECF No. 145. These are material disclosures that are necessary to allow Class Members to make an informed decision.

1

## II.    FACTUAL AND PROCEDURAL HISTORY

### A.  OSLA is a Public Trust Created for the Benefit of the State of Oklahoma that is Subject to the OGTCA.

OSLA is a federal student loan servicer, and a public trust created by the Oklahoma legislature for the benefit of the State of Oklahoma. OSLA, as its name implies, is based in Oklahoma and conducts all business from its Oklahoma City office where its trustees, employees, custodians, records, and documents reside. As a public trust of the State of Oklahoma, individuals who seek to recover from OSLA for its tortious acts must comply with the provisions of the OGTCA before maintaining or settling claims against OSLA.

### B.  The Underlying Data Breach Giving Rise to Intervenors' Claims.

OSLA failed to protect the personally identifiable information ("PII") of Intervenors and the Class they seek to represent by negligently hiring Nelnet Servicing, LLC ("Nelnet") to provide technology services without ensuring Nelnet complied with minimum data security standards, such as those found in Oklahoma's InfoSecPPG,[2] and by failing to adequately supervise Nelnet. As a result of OSLA's negligence, 250,000 individuals whose loans were serviced by OSLA had their PII exposed to cybercriminals in a massive and preventable data breach ("Data Breach" or "Breach"). Shortly after the Data Breach, a race to the courthouse ensued. Numerous individuals filed lawsuits against Nelnet and Edfinancial Services, LLC ("Edfinancial")—none were filed against OSLA. The Nelnet and Edfinancial actions were consolidated into the Nebraska Action. The Nebraska Action, never added OSLA as a defendant and never asserted any claims against OSLA because the Court does not have jurisdiction over OSLA.

---

[2] The InfoSecPPG (Information Securities Policies, Procedures, Guidelines) "establish[es] and enforce[s] minimum mandatory standards for . . . information security and information controls." 62 O.S. § 34.12(A). OSLA was required to comply with the InfoSecPPG regulations as a state agency.

### C. Intervenors Complied with the OGTCA and the Nebraska Action Plaintiffs Did Not.

After the Data Breach, Intervenor Carr sought to hold both OSLA and Nelnet liable for their negligence culminating in the Breach. However, Intervenor Carr could not immediately assert claims against both OSLA and Nelnet. Reason being, OSLA is a public trust that cannot be held liable for its tortious acts until claimants comply with the notice provisions of the OGTCA. 51 O.S. § 151 *et seq.* Only after a written notice of claim is provided to OSLA ***and*** denied by OSLA may the claimant assert claims against OSLA in the proper Oklahoma forum. *Id.* In compliance with the OGTCA, Intervenor Carr properly submitted her written notice of claim less than one (1) month after receiving notice of the Data Breach. Intervenor Carr's claim was not denied until January 2, 2023. Oklahoma Action, ECF No. 22, ¶ 23. After Intervenor Carr's claim was denied, she only had 180 days to file her lawsuit or settle her claims pursuant to the OGTCA. 51 O.S. § 157. On January 3, 2023, Plaintiff Carr filed the only lawsuit asserting claims against OSLA in the District Court of Oklahoma County, State of Oklahoma, as proscribed by the OGTCA. Oklahoma Action, ECF No. 22, ¶ 23. The Oklahoma Action was subsequently removed to the United States District Court for the Western District of Oklahoma by Nelnet. Oklahoma Action, ECF No. 1.

According to the Motion for Preliminary Approval, Nebraska Action plaintiff Mary Traynor is an "OSLA borrower who filed the necessary paperwork with OSLA on May 8, 2023." ECF No. 112 at p. 4. "Plaintiff Traynor's claim was denied via letter on June 9, 2023." *Id.* However, Plaintiff Traynor did not file a lawsuit against OSLA nor settle her claims with OSLA

3

within the statutorily required 180 days.[3] Plaintiff Traynor forfeited her claims against OSLA under the OGTCA as a matter of law pursuant to 51 O.S. § 157.[4]

### D. The United States District Court for the Western District of Oklahoma Already Found this Court Does Not Have Jurisdiction Over OSLA.

Nelnet filed a Motion to Transfer Venue and/or Stay the Oklahoma Action on April 28, 2023. Oklahoma Action, ECF Nos. 27 and 28. Nelnet argued OSLA was allowed to designate any venue it wanted by simply voicing its consent. Oklahoma Action, ECF No. 38. The Court flatly rejected this argument and Nelnet's Motion to Transfer Venue and/or Stay was denied in its entirety on June 16, 2023. Oklahoma Action, ECF No. 41 ("Although Nelnet is correct that OSLA is a statutorily created state agency (Okla. Stat. tit. 70, § 695.3), the Court finds no exception under the GTCA permitting statutorily created state agencies to designate alternative venues in lieu of Oklahoma County."). The Motion for Preliminary Approval is an attempt to make an end-run around the Oklahoma Court's finding that OSLA cannot be brought into controversies in other states, even when OSLA provides its consent. As much as OSLA and Nelnet want to avoid the more advanced Oklahoma Action and evade participating in discovery, this Court, as a matter of law, does not have jurisdiction over OSLA.

### III.  ARGUMENT & AUTHORITY

If the Court does not have subject matter jurisdiction, it cannot approve a class action settlement. *Schumacher v. SC Data Ctr., Inc.*, 912 F.3d 1104, 1105 (8th Cir. 2019) (citing *Robertson v. Allied Sols., LLC*, 902 F.3d 690, 698 (7th Cir. 2018) ("[T]he district court's subject-

---

[3] 180 days from June 9, 2023, was December 6, 2023.
[4] If the proposed settlement proceeds to a final approval hearing, the adequacy of Plaintiff Traynor's counsel will be an issue. In addition to not retaining experts, not obtaining or seeking formal discovery, and only relying on Defendants' hand-culled "confirmatory discovery," Plaintiff Traynor's counsel failed to meet the statutory OGTCA requirements to pursue or settle a claim against OSLA on her and the Class's behalf.

matter jurisdiction must be secure before it can do *anything* to resolve a case. That rule applies with just as much force to a court's approval of a settlement under Rule 23 as it does for anything else.). The Supreme Court is clear, if a district court lacks subject matter jurisdiction, any action it takes is a nullity. *American Fire & Casualty Co. v. Finn*, 341 U.S. 6, 17–18 (1951). The party seeking to invoke the jurisdiction of the federal courts has the burden of proving the existence of jurisdiction. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936).

Here, the burden of proving subject matter jurisdiction was on the plaintiffs in the Nebraska Action, but they failed to timely satisfy their burden.

**A.  The Court Does Not Have Jurisdiction Over OSLA Due to the OGTCA.**

The plaintiffs in the Nebraska Action do not address how this Court has jurisdiction over OSLA under the strict provisions of the OGTCA. This is fatal to their Motion for Preliminary Approval. Ignoring this jurisdictional defect will not make it go away. The Court is without authority to preliminarily approve a class action settlement in Nebraska that includes OSLA. Indeed, the Nebraska Action plaintiffs do not cite one single class action settlement under the OGTCA that has been approved by a court outside of Oklahoma. The Motion for Preliminary Approval must be denied, or at the very least, OSLA must be severed from the settlement agreement.

In Oklahoma, the OGTCA is the exclusive remedy by which injured plaintiffs may recover against the State for its negligence. *Speight v. Presley, Okla.*, 203 P.3d 173 (2008). An action against the "State" within the scope of the OGTCA is an action against "the State of Oklahoma or any office, department, agency, authority, commission, board, institution, hospital, college, university, public trust created pursuant to Title 60 of the Oklahoma Statutes of which the State of Oklahoma is the beneficiary, or other instrumentality thereof." 60 O.S. § 152(13). OSLA is "an

agency of the State of Oklahoma." 70 O.S. § 695.3; *see also State ex rel. Oklahoma Student Loan Auth. v. Akers*, 900 P.2d 468, 469 (Okla. Civ. App. 1995) ("[The Oklahoma Student Loan Authority] is a state agency, operating under the trust authority of statute."); 15 Okla. Op. Att'y Gen. 481 (Dec. 22, 1983) ("[T]he State, through an agency (Oklahoma Student Loan Authority), [provides] student loan funds to qualified students."). Accordingly, tort claims against OSLA fall directly within the scope of the OGTCA.

Pursuant to the OGTCA, claims cannot be maintained against OSLA until all statutory requirements are satisfied.[5] Any person who has a claim against OSLA must submit a written notice of claim to the Office of the Risk Management Administrator of the Office of Management and Enterprise Services within one (1) year after the loss occurs. 51 O.S. §§ 156 (B–C). After the claim is submitted, OSLA has ninety (90) days to approve the claim, otherwise it is automatically denied at the end of the ninety (90) days. 51 O.S. § 157(A). Once the claim is denied, the claimant is only given 180 days to file a lawsuit or settle their claims. *See* 51 O.S. §§ 157 (B), 163(A); *see also See Schauf v. The GEO Group*, OK CIV APP, 439 P.3d 442 (2018) (Judicial power is invoked by the timely filing of governmental tort claims action, and expiration of the 180-day period for filing suit after deemed denial of claim operates to bar judicial enforcement of the claim against the government to which the legislature waived sovereign immunity.); *Kennedy v. City of Talihina*, OK CIV APP, 265 P.3d 757 (2011) (Compliance with the written notice of claim and denial of claim provisions in the Governmental Tort Claims Act are prerequisites to the state's consent to be sued and to the exercise of judicial power to remedy the alleged tortious wrong by the government.)

---

[5] *See Johnson v. Geo Group, Inc.*, OK CIV APP, 436 P.3d 759 (2018) (Compliance with the statutory notice provisions of the OGTCA is a jurisdictional requirement to be completed prior to the filing of any pleadings.); *Burghart v. Corrections Corp. of America*, OK CIV APP, 224 P.3d 1278 (2009) (District Court had no jurisdiction over the tort claims the plaintiff brought in the absence of full compliance with the notice provisions of the OGTCA, requiring notice to the state.)

Claims arising under the OGTCA may only be adjudicated in Oklahoma County, or the county in Oklahoma where the cause of action arose. *See* 51 O.S. § 163(a); *see also Carr v. Oklahoma Student Loan Auth.*, No. CIV-23-99-R, 2023 WL 6193015, at *2 (W.D. Okla. June 16, 2023) ("[T]he Act limits venue for actions against the state to specific state courts…"). The only exception is when a constitutional state agency, board, or commission files a resolution with the Oklahoma Secretary of State, designating another venue in lieu of Oklahoma County. 51 O.S. § 163(a). OSLA is not a constitutional state agency, but a statutorily created state agency under 70 O.S. § 695.3. There is "no exception under the [O]GTCA that permits statutorily created state agencies to designate alternative venues in lieu of Oklahoma County." *Carr*, 2023 WL 6193015, at *2.

OSLA and Class Counsel are running afoul of the statutory requirements of the OGTCA by seeking approval of a settlement that is inclusive of OSLA in a court outside of Oklahoma. The OGTCA is clear, the proper venue for tort actions against OSLA is a court within Oklahoma. *See* 51 O.S. § 163(a); *Carr*, 2023 WL 6193015, at *2. OSLA does not have the authority to consent to suit elsewhere or designate another venue. *Carr*, 2023 WL 6193015, at *2. In recognition of this statutory obstacle, Class Counsel in the Nebraska Action never added OSLA as a defendant to the Nebraska Action—nor could they. By statute, OSLA cannot be sued outside of Oklahoma. Allowing OSLA to settle claims where it cannot be sued in the first place defies the provisions and purpose of the OGTCA. The Court must deny preliminary approval of the proposed settlement or sever OSLA from the settlement to rectify this blatant issue.

### B.  The Identical Factual Predicate Doctrine Does Not Apply.

The plaintiffs in the Nebraska Action urge the Court to apply the identical factual predicate doctrine (ECF No. 112 at pp. 7–8), which is primarily applied in the Second Circuit, but the Eighth

Circuit has not explicitly applied the identical factual predicate doctrine. *See In re Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 91 F.4th 174, fn 3 (4th Cir. 2024). The underlying principle of the identical factual predicate doctrine is that "[i]f a judgment after trial cannot extinguish claims not asserted in the class action complaint, a judgment approving a settlement in such an action ordinarily should not be able to do so either." *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 18 (2d Cir.1981).

Even if a Nebraska court has jurisdiction over OSLA (which it does not), Plaintiff Traynor forfeited her claims against OSLA (and those of the class she seeks to represent) by not timely settling her claims or filing a lawsuit.  Therefore, the factual predicate doctrine is inapplicable. After the denial of Plaintiff Traynor's claim on June 9, 2023, Plaintiff Traynor had 180 days to file a lawsuit or settle her claims with OSLA. 51 O.S. § 157. However, Plaintiff Traynor *did not* add OSLA as a defendant to the Nebraska Action nor settle her claims with OSLA within the 180-day window proscribed by statute (or by December 6, 2023). In fact, Plaintiff Traynor and OSLA did not even attend a mediation until December 8, 2023. ECF No. 110-4 at p. 8. As a result, Plaintiff Traynor forfeited her ability to pursue claims against OSLA or a settlement with OSLA on behalf herself and on behalf of the Class she seeks to represent.

To the extent Plaintiff Traynor argues she was engaged in settlement negotiations with OSLA prior to the mediation, "settlement negotiations do not extend the date of denial unless agreed to in writing by the claimant and the state or political subdivision." *Floyd v. Quinton Pub. Sch.*, 438 F. Supp. 2d 1318, 1320 (E.D. Okla. 2006) (citing 51 O.S. § 157(A)); *McKee v. City of Skiatook*, No. 23-CV-209-GKF-MTS, 2023 WL 11763161, at *1 (N.D. Okla. Nov. 27, 2023) ("[A] plaintiff must sue within one hundred eighty (180) days[,] or the claim will be forever barred.") (citing *Duncan v. City of Nichols Hills*, 913 P.2d 1303, 1304 (Okla. 1996)). Plaintiff Traynor *never*

8

states she and OSLA extended the date of denial in writing, nor do they offer any *evidence* of an extension. This is extremely telling. OSLA and Class Counsel cannot go back and recreate their agreement now. Consequently, Plaintiff Traynor is statutorily barred from recovering from OSLA or settling claims against OSLA.

Furthermore, the OGTCA does not give OSLA the authority to revive barred claims. This would directly cut against the well-being of the State. Thus, in accordance with the factual predicate doctrine, not even a judgment after trial could extinguish Plaintiff Traynor's claims not asserted in the Consolidated Class Action Complaint. Plaintiff Traynor's claims against OSLA have already been extinguished by Plaintiff Traynor's failure to comply with Oklahoma Statute Title 51, Section 157(A).[6] Accordingly, the proposed settlement cannot release claims against non-party OSLA.

Plaintiff Traynor's shortcomings also cannot be remedied by Class Counsel belatedly filing a notice of claim on behalf of another plaintiff. As stated above, any person who has a claim against OSLA must submit a written notice of claim to the Office of the Risk Management Administrator of the Office of Management and Enterprise Services within one (1) year after the loss occurs. 51 O.S. §§ 156 (B–C). Notice of the Breach was given in 2022, thus the time to file a written notice of claim has lapsed. Class Counsel cannot backfill the proposed settlement to release claims against OSLA considering these statutory blockades.

---

[6] The Oklahoma Action, on the other hand fully complied with the notice provisions of the OGTCA and can pursue claims against OSLA. Oklahoma Action, ECF No. 22, ¶¶ 23–26.

## IV.     CONCLUSION

In sum, the Court must deny preliminary approval of the settlement for lack of jurisdiction over OSLA or must alternatively sever OSLA from the Settlement and allow the case to proceed in the Western District of Oklahoma.

Date: September 17, 2024                                  Respectfully submitted,


                                                         */s/ William B. Federman*
                                                         William B. Federman
                                                         **FEDERMAN & SHERWOOD**
                                                         10205 N. Pennsylvania Ave.
                                                         Oklahoma City, Oklahoma 73120
                                                         (405) 235-1560
                                                         (405) 239-2112 (facsimile)
                                                         *wbf@federmanlaw.com*
                                                         ***Counsel for Intervenors***

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2024, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using CM/ECF. Copies of the foregoing document will be served upon interested counsel via transmission of Notices of Electronic Filing generated by CM/ECF.

*/s/ William B. Federman*

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULES

In accordance with Local Civil Rule 7.1(d)(3), I hereby certify that this Memorandum of Law is 3,748 words and therefore complies with the 13,000-word limit proscribed by Local Civil Rule 7.1(d)(1)(A). In computing the word count I relied on the word-count function of my word-processing software and hereby certify that the function was applied to include all text, including the caption, headings, footnotes, and quotations. The name and version of the word-processing software I used is as follows: Microsoft® Word for Microsoft 365 MSO (Version 2402 Build 16.0.17328.20124) 64-bit.

*/s/ William B. Federman*