IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WILLIAM SPEARMAN, et al., individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>NELNET SERVICING, LLC and EDFINANCIAL SERVICES, LLC,<br><br>Defendants. | 4:22-CV-3191<br><br>MEMORANDUM AND ORDER CERTIFYING SETTLEMENT CLASS, PRELIMINARILY APPROVING CLASS-ACTION SETTLEMENT, AND APPROVING FORM AND MANNER OF NOTICE |

This matter is before the Court on the Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (filing 109), asking the Court for an order pursuant to Fed. R. Civ. P. 23(b) and (e) that certifies the settlement class, preliminarily approves a settlement, and approves forms and a program for class notice. The Court will grant the motion.

Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a class so large that joinder of all members is impracticable); (2) commonality (questions of law or fact common to the class); (3) typicality (named parties' claims or defenses are typical of the class); and (4) adequacy of representation (representatives will fairly and adequately protect the interests of the class). *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997). Those requirements are met in this case.

The numerosity requirement is readily met because 2,501,324 potential class members have been identified. Filing 110 at 2. Commonality is satisfied because the legal and factual issues surrounding the defendants' course of conduct arise out of the same alleged wrongdoing: The defendants' alleged data

security deficiencies. *See* filing 108-1 at 5-6; *see also* filing 41. Typicality is present for the same reason: typicality means that there are other members of the class who have the same or similar grievances as the plaintiffs. *Paxton v. Union Nat. Bank,* 688 F.2d 552, 562 (8th Cir. 1982). And adequacy of representation is present because there's no conflict of interest between the named plaintiffs and the class they seek to represent—they possess the same interest and injury as the class members. *See Amchem,* 521 U.S. at 625-26.[1]

If the requirements of Rule 23(a) have been met, a class action may be maintained in the circumstances defined by Rule 23(b)(1), (2), or (3). Here,

---

[1] The Oklahoma Intervenors seem to suggest otherwise, asserting that plaintiff Mary Traynor forfeited her claims against the Oklahoma Student Loan Authority (OSLA). *See* filing 118 at 12-14. Although the precise legal implications of that assertion are unclear, the Intervenors may be implying that none of the named plaintiffs adequately represent a settlement class including persons with a potential claim against OSLA. *See* filing 118 at 13.

That would, the Court notes, be beyond the limited scope of their permitted intervention, which was confined to subject-matter jurisdiction. *See* filing 98; filing 141. But in any event, if that's what the Intervenors are arguing, the Court is unpersuaded. The adequacy inquiry serves to uncover conflicts of interest between named parties and the class they seek to represent. *Amchem,* 521 U.S. at 625. But perfect symmetry of interest is not required and not every discrepancy among the interests of class members renders a putative class action untenable. *Vogt v. State Farm Life Ins. Co.,* 963 F.3d 753, 767 (8th Cir. 2020). To forestall class certification, any intra-class conflict must be so substantial as to overbalance the common interests of the class members as a whole. *Id.*

The Intervenors haven't identified a conflict of interest among the named plaintiffs and any hypothetical "Oklahoma class"—they have not, for instance, explained any basis to conclude that claims of the Oklahoma members of the plaintiff class should be valued differently, like the California members of the class whose potential recovery under California law is different. *See* filing 110-1 at 30. Absent such a conflict, there's no reason to think the named plaintiffs aren't adequate class representatives. *See* filing 141 at 9-10.

certification under Rule 23(b)(3) is appropriate, because "the questions of law or fact common to class members predominate over any questions affecting only individual members" and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id*.

The predominance inquiry is satisfied because the proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The class members all face the same risks associated with a data breach of personal identifying information. Predominance is "a test readily met" in consumer protection cases, *see id*. at 625, and this is such a case. A class action will "achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id*. at 615 (cleaned up).

Finally, the proposed form and manner of notice satisfies Rule 23(e)(1)(B) and the Court, having reviewed the proposed settlement, filing 110-1, finds it likely that the proposal can be approved under Rule 23(e)(2).

But the Oklahoma Intervenors have raised questions about the Court's jurisdiction to approve the proposed settlement. While the Court is not obliged to address the objections of non-parties at this stage of the process, it *is* obliged to assure that it has subject-matter jurisdiction in every case. *Hart v. United States*, 630 F.3d 1085, 1089 (8th Cir. 2011).

And here, it does. The Intervenors argue at length that this Court does not, and cannot, exercise subject-matter jurisdiction over OSLA, because it's a state entity protected by the Oklahoma Governmental Tort Claims Act, Okla. Stat. Ann. tit. 51, § 151 *et seq*. But that argument misapprehends what's necessary for approval of a class-action settlement.

Rather, it's well-established that a federal court may release not only

3

those claims alleged in the complaint, but also a claim "based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented *and might not have been presentable in the class action.*" *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1287 (9th Cir. 1992) (citing *TBK Partners, Ltd. v. W. Union Corp.*, 675 F.2d 456 (2d Cir. 1982)); *see also, e.g.*, *Elna Sefcovic, LLC v. TEP Rocky Mountain, LLC*, 807 F. App'x 752, 765 (10th Cir. 2020); *Thomas v. Blue Cross & Blue Shield Ass'n*, 333 F. App'x 414, 420 (11th Cir. 2009); *In re Prudential Ins. Co. of Am. Sales Prac. Litig.*, 261 F.3d 355, 366 (3d Cir. 2001); *Williams v. Gen. Elec. Cap. Auto Lease, Inc.*, 159 F.3d 266, 273-74 (7th Cir. 1998); *City P'ship Co. v. Atl. Acquisition Ltd. P'ship*, 100 F.3d 1041, 1044 (1st Cir. 1996); *In re Y & A Grp. Sec. Litig.*, 38 F.3d 380, 384 (8th Cir. 1994) (citing *Thompson v. Edward D. Jones & Co.*, 992 F.2d 187, 190-91 (8th Cir. 1993)); *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 221-22 (5th Cir. 1981). It is, in fact, "widely recognized that courts without jurisdiction to hear certain claims have the power to release those claims as part of a judgment." *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1563 (3d Cir. 1994) (citing *Class Plaintiffs*, 955 F.2d at 1287-88; *TBK Partners*, 675 F.2d at 460; *Corrugated Container*, 643 F.2d at 221-22).

That's so because it's necessary for parties to be able to enter into comprehensive settlements that prevent relitigation of settled questions at the core of a class action. *Am. Sales*, 261 F.3d at 366; *see also TBK Partners*, 675 F.2d at 460; *Thompson*, 992 F.2d at 191. Accordingly, federal courts have universally held that a class action settlement can dispose of unalleged claims relying on an identical factual predicate. *See McAdams*, 26 F.4th at 160; *Elna Sefcovic*, 807 F. App'x at 765; *Thomas*, 333 F. App'x at 420; *Williams*, 159 F.3d at 273-74; *City P'ship*, 100 F.3d at 1044; *Class Plaintiffs*, 955 F.2d at 1287;

4

*TBK Partners*, 675 F.2d at 460.

The Intervenors offer a few arguments in response, none of which are compelling. First, they characterize the identical factual predicate doctrine as "primarily applied in the Second Circuit" and assert that "the Eighth Circuit has not explicitly applied the identical factual predicate doctrine." Filing 118 at 13.[2] That's not how the Court reads *Thompson*, 992 F.2d at 191-92. It also might be more persuasive if a single federal court had ever rejected the doctrine. The Intervenors also claim that "[t]he underlying principle of the identical factual predicate doctrine is that 'if a judgment after trial cannot extinguish claims not asserted in the class action complaint, a judgment approving a settlement in such an action ordinarily should not be able to do so either." Filing 118 at 13 (quoting *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exch.*, 660 F.2d 9, 18 (2d Cir. 1981)). But that "underlying principle" is, in fact, the general rule to which the identical factual predicate doctrine is the extremely well-recognized exception. The Intervenors' failure to accurately confront the rule, or even cite to the relevant authority explaining it, is hardly persuasive distinction.

The Intervenors' primary argument is that the identical factual predicate doctrine is "inapplicable" because of Mary Traynor's alleged forfeiture of her Oklahoma claim. Filing 118 at 13. But they offer no explanation for *why* such a forfeiture would render the doctrine inapplicable.

---

[2] As support, they cite *In re Lumber Liquidators Chinese-Manufactured Flooring Prods. Mktg., Sales Pracs. & Prods. Liab. Litig.*, 91 F.4th 174, 183 n.3 (4th Cir. 2024), apparently because that case lists "at least six other circuits" to have recognized and applied the doctrine, but didn't list an Eighth Circuit citation. That's stretching the import of simply not citing an Eighth Circuit case. But also, the fact that at least seven federal circuits agree on the doctrine—and none reject it—isn't exactly persuading this Court that it's somehow dubious.

They seem to suggest that because Traynor doesn't have an Oklahoma claim to release, the proposed settlement can't release claims against OSLA either. Filing 118 at 14. But that's based on their misstatement of the identical factual predicate doctrine. *See* filing 118 at 13. The *actual* doctrine—that a federal court may release claims based on the identical factual predicate as that underlying the claims in the settled class action, *see Williams*, 159 F.3d at 273—plainly permits the release of claims against OSLA here. There is no doubt—and the Intervenors do not dispute—that the claims against the named defendants depend upon the very same facts as any claims against OSLA. Accordingly, the Court has sufficient jurisdiction to approve the settlement.

IT IS ORDERED:

1. The Plaintiffs' Motion for Preliminary Approval of Class Action Settlement (filing 109) is granted.

2. The agreements, terms, and conditions of the proposed settlement, filing 110-1, are preliminarily approved pending a fairness hearing.

3. For settlement purposes only, this action may be maintained as a class action on behalf of all Persons in the United States whose Personal Information was compromised in the Data Security Incident.[3] Excluded from the settlement class are:

---

[3]    "Data Security Incident" means the unauthorized third-party access to Nelnet's systems that was made public by Nelnet in August 2022. Filing 110-1 at 11.

    (a)    the Settling Entities, any person in which the Settling Entities have a controlling interest, and the Settling Entities' officers, directors, legal representatives, successors, subsidiaries, and assigns;

    (b)    any judge, justice, or judicial officer presiding over the action and the members of their immediate families and judicial staff;

    (c)    any person that timely and validly opts out of the Settlement and; and

    (d)    any person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Security Incident or who pleads guilty or *nolo contendere* to any such charge.

4. Ian Scott, Jessica Alexander, Pamela Bump, Bridget Cahill, Lesly Canales, Melissa Charbonneau, Douglas Conley, Noah Helvey, Dallin Iler, Dustin Jones, Kayli Lazarz, Brittni Linn, Delilah Oliveira, Devinne Peterson, Eric Polanco, Justin Randall, Sofia Rodriguez, Joshua Sanchez, Charles Sangmeister, William Spearman, Taylor Vetter, Rachel Woods, Garner J. Kohrell, Olivia Covington, Alexis Luna, Mary Traynor, and MaKayla Nelson are designated as the class representatives for the settlement class.

5. Lowey Dannenberg, P.C. and Silver Golub & Teitell LLP are appointed as settlement class counsel for purposes of settlement only.

6. A.B. Data, Ltd. is appointed to serve as settlement administrator.

7. Except as contemplated by the Settlement Agreement for the purpose of coordinating preliminary approval and notice, all Settlement Class Members and their legally authorized representatives, unless and until they have submitted a valid request to opt out or exclude themselves from the Settlement Class (hereinafter, "Request for Exclusion"), are hereby preliminarily enjoined

    (a) from filing, commencing, prosecuting, intervening in, or participating as a plaintiff, claimant, or class member in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on the Released Claims;

    (b) from filing, commencing, or prosecuting a lawsuit or administrative, regulatory, arbitration, or other proceeding as a class action on behalf of any Settlement Class Members (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), based on the Released Claims; and

    (c) from attempting to effect an opt-out of a group, class, or subclass of individuals in any lawsuit or administrative, regulatory, arbitration, or other proceeding based on the Released Claims.

8. Having reviewed the proposed notices of settlement—filing 110-2; filing 110-3; filing 110-4—the Court approves the notices and directs that the defendants cause the notices to be sent on or before May 16, 2025, pursuant to the notice plan set forth in the

settlement agreement, filing 110-1 at 41-42.

9. Beginning no later than May 16, 2025, the Claims Administrator shall create and maintain the Settlement Website, www.NelnetSettlement.com, until the termination of the administration of the Settlement. The Settlement Website shall include copies of the Settlement Agreement, this Order, the notices to the Settlement Class, the Settlement Claim Form, the motion for preliminary approval and all supporting papers, and, promptly after they are filed, the motions for final approval and for an award of attorneys' fee and expenses. The Settlement Website shall also identify important deadlines and shall provide answers to frequently asked questions. The Settlement Website may be amended as appropriate during the course of the administration. The Settlement Website shall be searchable on the Internet.

10. The Claims Administrator shall maintain a toll-free interactive voice response telephone system containing recorded answers to frequently asked questions, along with an option permitting callers to leave messages in a voicemail box. The Claims Administrator shall also maintain an e-mail address to receive and respond to correspondence from Settlement Class Members.

11. No later than June 30, 2025, the Claims Administrator shall serve and file a sworn statement attesting to compliance with the notice provisions in this Order.

12. Any Settlement Class Member who objects to the fairness,

reasonableness, or adequacy of any term or aspect of the Settlement, the application for attorneys' fees and expenses, Service Awards, or the Final Approval Order and Judgment, or who otherwise wishes to be heard, may appear in person or by his or her attorney at the Fairness Hearing and present evidence or argument that may be proper and relevant. However, except for good cause shown, no person other than Class Counsel and Settling Entities' Counsel shall be heard and no papers, briefs, pleadings, or other documents submitted by any Settlement Class Member shall be considered by the Court unless, not later than <u>July 15, 2025</u>, the Settlement Class Member files with the Court (and serves the same on or before the date of such filing by hand or mail on Class Counsel and Settling Entities' Counsel) at the addresses in the Class Notice a written objection. For the objection to be considered by the Court, the written objection must include:

(a) the case name and number of the Action;
(b) the full name, address, and telephone number of the objecting Settlement Class Member and, if represented by counsel, the name, address, and telephone number of his/her counsel;
(c) the claimant ID code and other information on the Long Form Notice or Short Form Notice provided by the Claims Administrator that identifies the objector as a Settlement Class Member;
(d) a statement of whether the objection applies only to the objector, to a specific subset of the class, or to the entire class;
(e) a statement of the number of times in which the objector

        (and, where applicable, objector's counsel) has objected to a class action settlement within the three years preceding the date that the objector files the objection, along with the caption of each case in which the objector (or the objector's counsel) has made such objection;

- (f)    a statement of the specific grounds for the objection; and
- (g)   a statement of whether the objecting Settlement Class Member intends to appear at the Fairness Hearing, and if so, whether personally or through counsel.

13. In addition to the foregoing requirements, if an objecting Settlement Class Member intends to speak at the Fairness Hearing (whether *pro se* or through an attorney), the written objection must include a detailed description of any evidence the objecting Settlement Class Member may offer at the Fairness Hearing, as well as copies of any exhibits the objecting Settlement Class Member may introduce at the Fairness Hearing.

14. To be timely, a written notice of objection must either be electronically filed on the Court's electronic docket on or before <u>July 15, 2025</u>; or sent via first class, postage-prepaid United States Mail, postmarked no later than the Objection Deadline to (a) the Clerk of Court, (b) Class Counsel; and (c) Settling Entities' Counsel at the addresses as provided in the Long Form Notice.

15. Any objection to the Settlement submitted by a Settlement Class Member pursuant to this Order must be signed by the Settlement Class Member (and if applicable his, her, or its legally authorized

representative), even if the Settlement Class Member is represented by counsel. The right to object to the proposed Settlement must be exercised individually by the Settlement Class Member and not as a member of a group, class, or subclass, except that such objections may be submitted by the Settlement Class Member's legally authorized representative.

16. Any Settlement Class Member who fails to comply with the requirements for objecting in writing described in this Order shall be deemed to have waived any such objection, shall not be permitted to object to any terms or approval of the Settlement at the Fairness Hearing, and shall be precluded from seeking any review of the Settlement by appeal or any other means. Such Settlement Class Members shall be bound by all terms of the Settlement Agreement and by all proceedings, orders, and judgments in the Action. Any challenge to the Settlement Agreement and the Final Approval Order and Judgment approving this Settlement Agreement shall be pursuant to appeal under the Federal Rules of Appellate Procedure and not through a collateral attack.

17. Any individual who wishes to exclude themselves from the Settlement must submit a written Request for Exclusion to the Claims Administrator, which shall be received by the Claims Administrator no later than July 15, 2025. Any request for exclusion must:

    (a)   Identify the case name of the Action;

12

    (b)    Identify the full name and address of the person seeking exclusion from the Settlement, and, if represented by counsel, the name and address of his/her counsel;

    (c)    Include the claimant ID code and other information included on the Long Form Notice or Short Form Notice provided by the Claims Administrator that identifies the person as a Settlement Class Member;

    (d)    Be personally signed by the person seeking exclusion, and, if represented by counsel, also be signed by his/her counsel;

    (e)    Include a statement clearly indicating the person's intent to be excluded from the Settlement; and

    (f)    Request exclusion only for that one person whose personal signature appears on the request.

18.    The right to be excluded from the proposed Settlement must be exercised individually by the Settlement Class Member or by the Settlement Class Member's authorized representative, even if the Settlement Class Member is represented by counsel, and not as a member of a group, class, or subclass, except that a Request for Exclusion may be submitted by the Settlement Class Member's legally authorized representative.  A Request for Exclusion shall not be effective unless it complies with the requirements in this Order and is received by <u>July 15, 2025</u>, as set forth in the notice to the Settlement Class.

19.    Any Settlement Class Member who does not submit a timely and valid written Request for Exclusion shall be bound by the Settlement Agreement, including all releases therein, as well as

13

all proceedings, orders, and judgments in the Action, even if the Settlement Class Member has previously initiated or subsequently initiates individual litigation or other proceedings encompassed by the Released Claims, even if such Settlement Class Member never received actual notice of the Action or the proposed Settlement.

20. Settlement Class Members who submit valid and timely Requests for Exclusion shall not receive any benefits of and shall not be bound by the terms of the Settlement Agreement (including the releases therein), will not be bound by any further orders or judgments entered for or against the Settlement Class, and will preserve their right to independently pursue any claims they may have against Settling Entities.

21. The Claims Administrator shall promptly log each Request for Exclusion that it receives and promptly notify Class Counsel and Settling Entities' Counsel within one (1) Business Day of receiving any Requests for Exclusion.

22. The Claims Administrator shall furnish Class Counsel and Settling Entities' Counsel with copies of any and all Requests for Exclusion, objections, notices of intention to appear, and other communications that come into its possession (except as otherwise expressly provided in the Settlement Agreement) within three (3) Business Days of receipt.

23. On or before <u>July 22, 2025</u>, the Claims Administrator shall provide a final report to the Parties' Counsel summarizing the number of

Requests for Exclusion (i.e., requests to opt out), a list of all individuals who have timely and validly excluded themselves from the Settlement in accordance with the requirements of the Settlement and this Order, and any other information requested by the Parties' Counsel. This report must be supplemented as appropriate to account for timely opt-outs not yet received by the Claims Administrator prior to the creation of the report described herein. Class Counsel shall file the opt-out list and the declaration of the Claims Administrator attesting to the accuracy of such list with the Court.

24. All Claim Forms shall be submitted by Settlement Class Members to the Claims Administrator as directed in the Class Notice no later than <u>July 15, 2025</u>.

25. The Claims Administrator shall promptly process and review all Claim Forms and Releases for timeliness and eligibility to participate in the Settlement. On or before <u>July 30, 2025</u>, the Claims Administrator will file for Court review a declaration describing the proposed distribution of Settlement Benefits.

26. To effectuate the Settlement and the Notice Plan, the Claims Administrator shall be responsible for:

   (a) establishing a post office box/mailing address (to be identified in the Long Form Notice, the Short Form Notice and on the Settlement Website), an email address, a toll-free interactive voice response telephone system, and a

Settlement Website for purposes of communicating with Settlement Class Members;

(b) effectuating the Notice Plan;

(c) accepting and maintaining documents sent from Settlement Class Members, including Claim Forms, and other documents relating to the Settlement and its administration;

(d) determining the timeliness and validity of each Claim Form submitted by Settlement Class Members;

(e) corresponding with Settlement Class Members regarding any deficiencies in their Claim Forms;

(f) calculating and distributing each Authorized Claimant's Settlement Payment;

(g) determining the timeliness and validity of all Requests for Exclusion received from Settlement Class Members;

(h) preparing the opt-out list and a declaration attaching and attesting to the accuracy of such list, and providing the same to Class Counsel and Settling Entities' Counsel; and

(i) providing Class Counsel and Settling Entities' Counsel with copies of any Requests for Exclusion (including all documents submitted with such requests).

27. All costs incurred by the Claims Administrator in effectuating the Notice Plan and administering the Settlement, including any Taxes and Claims Administration Costs, shall be paid from the Settlement Fund, pursuant to the Settlement Agreement without further order of the Court.

28. The Claims Administrator shall maintain a copy of all paper communications related to the Settlement for a period of one (1) year after distribution of Settlement Payments to Authorized Claimants and shall maintain a copy of all electronic communications related to the Settlement for a period of two (2) years after the distribution, after which time all such materials shall be destroyed, absent further direction from the Parties or the Court.

29. The Court preliminarily approves the establishment of the Settlement Fund Account as defined and in the manner called for in the Settlement Agreement as a qualified settlement fund pursuant to Section 468B of the Internal Revenue Code of 1986, as amended, and the Treasury Regulations promulgated thereunder.

30. Neither the Settlement Agreement, whether or not it shall become final, nor any negotiations, documents, and discussions associated with it, nor the Final Approval Order and Final Judgment are or shall be deemed or construed to be an admission, adjudication, or evidence of:

    (a) any violation of any statute or law or of any liability or wrongdoing by Settling Entities or any Released Party;
    (b) the truth of any of the claims or allegations alleged in the Action;
    (c) the incurrence of any damage, loss, or injury by any Person; or
    (d) the propriety of certification of a class other than solely for

17

>
> the purposes of the Settlement.
>
> All rights of Plaintiffs and Settling Entities are reserved and retained if the Settlement does not become final in accordance with the terms of the Settlement Agreement.

31. Class Counsel shall file their motions for payment of attorneys' fees and expenses, Incentive Awards, and final approval of the Settlement no later than <u>June 30, 2025</u>. Any reply memoranda in support of the motions shall be filed no later than <u>August 19, 2025</u>.

32. If the Settlement is approved by the Court following the Fairness Hearing, a Final Approval Order and Judgment will be entered as described in the Settlement Agreement.

33. The Court may, for good cause, extend any of the deadlines set forth in this Order without notice to Settlement Class Members, other than which may be posted at the Court or on the Settlement Website.

34. In the event that the Settlement is terminated in accordance with its provisions, the Settlement Agreement and all proceedings had in connection therewith, including but not limited to all negotiations, documents, and discussions associated with it, and any Requests for Exclusion from the Settlement previously submitted and deemed to be valid and timely, shall be null and void and be of no force and effect, except as expressly provided to the contrary in the Settlement Agreement, and shall be without

prejudice to the *status quo ante* rights of the Parties.

35. A fairness hearing shall be held on <u>Monday August 25, 2025, at 10:00 a.m.</u> before the undersigned in Courtroom 3, Robert V. Denney Federal Building, 100 Centennial Mall North, Lincoln, Nebraska. The time and date of the fairness hearing will be included in each notice of settlement. The purpose of the fairness hearing will be to:

    (a) determine whether the proposed settlement is fair, reasonable, and adequate, and should be finally approved;
    (b) determine whether an order and judgment should be entered dismissing the claims of the class members and bringing the litigation of those claims to a conclusion; and
    (c) consider other settlement-related matters, including appropriate attorney's fees.

    The Court may adjourn, continue, and reconvene the fairness hearing by oral announcement without further notice to the class members, and the Court may consider and grant final approval of the proposed settlement, with or without minor modification, and without further notice to class members, other than that which may be posted at the Court or on the Settlement Website at www.NelnetSettlement.com.

36. On or before <u>April 11, 2025</u>, the defendants shall serve all notices required by the Class Action Fairness Act, 28 U.S.C. 1715(d), and shall promptly file a declaration with the Court certifying that

19

such notices were served.

37. During the Court's consideration of the proposed settlement and pending further order of the Court, all proceedings in this action, other than proceedings necessary to carry out the terms and provisions of the proposed settlement, or as otherwise directed by the Court, are stayed and suspended.

Dated this 31st day of March, 2025.

BY THE COURT:

John M. Gerrard
Senior United States District Judge