IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

WILLIAM SPEARMAN, et al.,
individually and on behalf of all
others similarly situated,

        Plaintiffs,

vs.

NELNET SERVICING, LLC and
EDFINANCIAL SERVICES, LLC,

        Defendants.

4:22-CV-3191

MEMORANDUM AND ORDER

This matter is before the Court on the plaintiffs' motions for final approval of class action settlement (filing 165) and for attorney's fees, costs, and service awards (filing 168). As required by Fed. R. Civ. P. 23(e)(2), the Court held a hearing on those motions on May 5, 2026. The plaintiffs' submissions and other materials in the case file establish that class certification is appropriate under Rules 23(a) and 23(b)(3); the proposed settlement is fair, reasonable, and adequate under Rule 23(e)(2); and the requested attorneys' fees and costs, and the class representative service awards, are reasonable under Rule 23(h). The motions will be granted.

## BACKGROUND

This case involves a data security breach that occurred from June to July 2022, when an unauthorized third party accessed the class members' student loan account registration information on systems controlled by one of the defendants, Nelnet Servicing, LLC (the "Data Security Incident"). *See* filing 110-1 at 5. Approximately 2.5 million student borrowers had loans that originated with either EdFinancial Services, LLC, or the Oklahoma Student

Loan Authority. Those borrowers' "Personal Information" was compromised, including names, addresses, email addresses, phone numbers, and Social Security numbers. Filing 110-1 at 5. The plaintiffs sought relief for themselves and others similarly situated under a number of legal theories, including negligence, breach of implied contract, unjust enrichment, breach of confidence, invasion of privacy, and various state consumer protection statutes. Filing 51 at 66-156.

The parties executed the settlement agreement (filing 110-1) in August 2024, a little less than two years after the plaintiffs initially filed suit. The Court, on the plaintiff's unopposed motion pursuant to Fed. R. Civ. P. 23(e), certified the settlement class, preliminarily approved the settlement agreement, and approved the form and manner of notice to the class. Filing 146; filing 162. The Court found, among other things, that this action could be maintained as a class action; that the prerequisites to class certification under Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation) had been satisfied; and that certification of the settlement was superior to other available methods of the fair and efficient resolution of this controversy, because the questions of law and fact common to the class members predominated over any questions affecting individual members, satisfying Rule 23(b)(3). Filing 146 at 1-3.

The Court certified the settlement class as all "Persons in the United States whose Personal Information was compromised in the Data Security Incident," with some exclusions. Filing 146 at 6-7. The Court designated a class representative, appointed settlement class counsel and a settlement administrator, and scheduled (and later rescheduled) a fairness hearing. Filing 146 at 7; *see* filing 162 at 4. And the Court approved the forms of notice and the notice plan (filing 111) submitted by the parties. Filing 146 at 8.

The certified settlement class consisted of 2,502,916 individuals, who were emailed and, where emails were unavailable, post-mailed the Court-approved class action notices. *See* filing 167 at 3. The notice informed class members that they could submit an objection to either the Court or the settlement administrator, exclude themselves from the class, or file a claim before March 5, 2026. *See* filing 167 at 12 (email notice); filing 167 at 15 (short form mailed notice); filing 167 at 17 (long form mailed notice). No objections to the settlement agreement were received by the claims administrator, the parties, or the Court. *See* filing 167 at 7. The parties filed the present motions in advance of the fairness hearing, held on May 4, 2026. No class members or objectors appeared at the hearing.

## FINAL APPROVAL OF SETTLEMENT AGREEMENT

The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the Court's approval. Rule 23(e). The Court acts as a fiduciary who must serve as a guardian of the rights of absent class members. *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 932 (8th Cir. 2005); *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 123 (8th Cir. 1975). Under Rule 23(e), the Court must conduct a hearing to assess the fairness of the settlement, and may intrude on the parties' private contract to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned. *In re Wireless Tel. Fed.*, 396 F.3d at 934. Specifically, the Court must consider whether the class representatives and class counsel have adequately represented the class; whether the proposal was negotiated at arm's length; and whether the proposal treats class members equitably relative to each other. Rule 23(e)(2).

In determining whether a settlement is fair, reasonable, and adequate, the most important consideration is the strength of the case for the plaintiffs on the merits, balanced against the amount offered in settlement. *Pollard v. Remington Arms Co.,* 896 F.3d 900, 907 (8th Cir. 2018) (citing *Petrovic v. Amoco Oil Co.,* 200 F.3d 1140, 1150 (8th Cir. 1999)); *see also In re Wireless Tel. Fed.,* 396 F.3d at 933; *Grunin,* 513 F.2d at 124. The Court also considers the defendants' financial condition, the complexity and expense of further litigation, and the amount of opposition to the settlement. *Marshall v. Nat'l Football League,* 787 F.3d 502, 508 (8th Cir. 2015). In examining a proposed settlement for approval or disapproval, the Court does not try the case; the purpose of a compromise is to avoid the delay and expense of trial. *See Grunin,* 513 F.2d at 124; *DeBoer v. Mellon Mortg. Co.,* 64 F.3d 1171, 1178 (8th Cir. 1995).

In this case, the Court finds that the appointed class representatives and their counsel fairly and adequately represented the interests of the class members in connection with the settlement agreement, and that the class representatives and the settling defendants were represented by able and experienced counsel. The settlement agreement was the product of good-faith, arm's-length negotiations by the class representatives, the defendants, and their respective counsel.

With respect to notice, the Court reaffirms its earlier finding that the form, content, and method of disseminating notice to the class members were adequate and reasonable and constituted the best notice practicable under the circumstances, satisfying Rule 23(c)(2)(B) and due process. The notice was reasonably calculated, under all the circumstances, to apprise the interested parties of the pendency of the action and afforded them an opportunity to present objections. *See Grunin,* 513 F.2d at 120. It also reasonably conveyed

the required information, and afforded a reasonable time for those interested to make any appearance. *See id.* The contents fairly apprised the prospective members of the class of the terms of the proposed settlement (including attorney's fees and expenses), and outlined the options open to them in connection with the proceedings. *Id.* at 122.

The settlement administrator sent 2,226,500 class action notices via email, after removing invalid or duplicative emails. Of those, 1,945,221 emails were delivered to settlement class members. Filing 167 at 4. The administrator also mailed 539,986 short-form notices, for class members with unknown, invalid, or otherwise "bad" email addresses. Filing 167 at 5. It's unclear how many mailed notices were returned, but 640 were able to be remailed. Filing 167 at 5. The administrator also implemented a "media plan" to reach class members, using targeted ads on digital devices. *See* filing 167 at 5-6. This yielded "3,352,210 impressions and 1,884 clicks." Filing 167 at 6.

Eleven verified class members excluded themselves from the settlement within the deadline. Filing 177 at 9. As of May 4, 2026, 1,035,674 claims forms were filed, though only 308,531 forms were "verified" as submitted by eligible class members. *See* filing 177 at 3. The settlement administrator also indicated it received "a surge of calls and emails" just before the March 5 deadline, and has continued to receive these calls. Filing 173 at 2. Late claim submissions— whether submitted minutes or months after the deadlines—were rejected, but the claimants advised that they may contest the determination by submitting a request for review to this Court. Filing 177 at 3.

At the fairness hearing, the settlement administrator and class counsel addressed the disparity between the claims submitted and the claims verified—Nelnet services many different loan providers, but only individuals with loans originating with two specific providers (EdFinancial and the

Oklahoma Student Loan Authority) were impacted by the alleged data breach. As class counsel explained, "People thought they were class members when they were not," just because Nelnet was their loan servicer. Individuals who submitted claims, but could not be "matched" to someone with a loan originating from one of the specific providers, had their claims rejected.

The response rate from validated class members, around 12%, is relatively high for data breach cases like this. *See, e.g., In re Wawa, Inc. Data Sec. Litig.,* No. 19-cv-6019, 2024 WL 1557366, at *17 (E.D. Pa. Apr. 9, 2024) (approving settlement with claims rate of 2.56%); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 321 (N.D. Cal. 2018) (1.8% rate approved); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-MD-2522, 2017 WL 2178306 (D. Minn. May 17, 2017), *aff'd*, 892 F.3d 968 (8th Cir. 2018) (0.23% rate approved). The parties did their best to afford class members the opportunity to obtain relief, and the results validate those efforts, satisfying the Federal Rules and due process.

The settlement established a $10 million settlement fund, to be used to pay for taxes and tax-related expenses, notice and administrative expenses (approximately $852,721, *see* filing 177 at 6), attorneys' fees and expenses and service award payments (discussed below), credit monitoring and identity theft protection, and approved claims for out-of-pocket and other expenses (up to $5,000 per class member). *See* filing 110-1 at 21-22. After those payments, the remaining money in the settlement is to be distributed on a *pro rata* basis to validated class members who submitted a claim but had no out-of-pocket or other expenses.

The settlement bears a reasonable relationship to the case's merits. The plaintiffs, in briefing, acknowledge the risk of succeeding on the merits after the time and expense of trial. Filing 166 at 16-17. In particular, the plaintiffs

acknowledged the difficulty in proving causation and of maintaining a class through trial. Filing 166 at 18-19. As defense counsel articulated at the fairness hearing, this was a contested case, and there are valid defenses, especially considering the data breach was caused by an intentional criminal actor.

The costs of further litigation also demonstrate the reasonableness of the settlement. Data breach cases are complex, and would rely on extensive electronic discovery and potential discovery disputes, and expert analysis of the dark web and the information available on it. The settlement treats class members equitably, allowing members to submit claims for individualized lost time and out-of-pocket losses stemming from the data breach. *See* filing 110-1 at 28. Those who suffered more are able to be compensated equitably for those damages.

As a whole, the Court finds the settlement is fair, adequate, and reasonable. The settlement appropriately reflects the merits of the plaintiff's case and the complexity and expense of further litigation. *Marshall,* 787 F.3d at 508. The settlement also had little opposition, with only a handful of class members opting out, and none objecting. *See id.*; *In re Anthem,* 327 F.R.D. at 320-21. The settlement provides equitable relief to the class members. The settlement is approved.

## ATTORNEY FEES AND SERVICE AWARDS

In a certified class action, the Court may award reasonable attorney's fees and costs authorized by law or by the parties' agreement. Rule 23(h). The Court must be vigilant in protecting the rights of absent class members, including the right not to have their recovery reduced by excessive attorney's fees. *In re T-Mobile Customer Data Sec. Breach Litig.,* 111 F.4th 849, 858 (8th Cir. 2024); Rule 23(e)(2)(C)(iii).

Courts use two main methods when awarding attorney's fees in this kind of case: the "lodestar method," or the percentage method. *In re T-Mobile,* 111 F.4th at 858. When using the percentage method, a lodestar crosscheck helps a court evaluate whether a percentage award would result in a windfall, though such a crosscheck is not required. *Id.* 861-62. Generally, courts permit a fee award that represents a reasonable "multiplier" of the lodestar calculation, though the Eighth Circuit has determined that a fee award that is more than five times the lodestar calculation is "high." *See id.* at 861.

The standards to be considered in calculating attorney's fees under a lodestar approach are (1) the number of hours spent in various legal activities by the individual attorneys, (2) the reasonable hourly rate for the individual attorneys, (3) the contingent nature of success, and (4) the quality of the attorneys' work. *Jorstad v. IDS Realty Trust,* 643 F.2d 1305, 1312-13 (8th Cir. 1981); *see also Grunin,* 513 F.2d at 127. The "reasonable hourly rate" for purposes of a lodestar analysis is the "hourly amount to which attorneys of like skill in the area would typically be entitled for a given type of work on the basis of an hourly rate of compensation." *Jorstad,* 643 F.2d at 1313. The starting point is multiplying the hours worked and typical hourly rates; only after such a calculation do other, less objective factors come into the equation. *Grunin,* 513 F.2d at 127.

The plaintiffs' counsel here requests one-third of the $10 million settlement fund in attorney's fees and costs, or $3.33 million. The requested percentage falls within the typical range of fee awards approved in the Eighth Circuit. *See Huyer v. Buckley,* 849 F.3d 395, 399 (8th Cir. 2017) (percentage awards between 25-36 percent of settlement funds are frequently awarded).

A lodestar crosscheck indicates the requested amount would not be a windfall. Based on the hours worked and the hourly fees provided by the

8

attorneys (filing 170-1 at 5; filing 170-2 at 4-5; filing 170-3 at 4; filing 170-4 at 4; filing 170-5 at 4), supplemented by the billing records demonstrating what work was performed (filing 180), the initial lodestar calculation is $4,209,196.50. That number is actually *higher* than the percentage amount requested.

The lodestar crosscheck includes hours worked on a parallel case in Oklahoma, based on the Oklahoma Loan Servicing Agency's alleged involvement in the data breach. Generally, attorneys are entitled to a fee from a "common fund" that they are responsible for recovering. 5 William B. Rubenstein, Newberg on Class Actions § 15:59 (6th ed. Dec. 2025 Update). That entitlement extends to fees for work performed outside the court exercising jurisdiction for the fund. *Id.* The key inquiry is whether the work performed did, in fact, benefit the current class's fund. *Id.*; *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115, 1121 (9th Cir. 2002); *accord Jenkins by Agyei v. State of Mo.*, 862 F.2d 677, 678-79 (8th Cir. 1988) ("While the work performed involved the election process, it was to further the goals sought in litigation," and attorneys could be awarded fees related to that work). The Court is satisfied that the work in the Oklahoma case furthered the goals sought in this litigation and helped create the settlement fund, so the hours worked in the Oklahoma case justify the fee award sought in this case.

While the attorneys in this case bill at significantly higher rates than attorneys in the general locality, the fee award is not unreasonable. *See Jorstad*, 643 F.2d at 1313. The highest billed rate is over $1,700 per hour, and the average billed rate, based on all the attorneys involved, is around $873 per hour. That is much higher than this Court is used to seeing from Nebraska lawyers—but as counsel pointed out, consumer protection class action cases, especially those involving multidistrict litigation, require some specialty. *See*

filing 169 at 13. Regardless, even reducing the average attorney rate by half, the requested fees are 1.5 times the lodestar crosscheck. Such a multiplier is reasonable when considering the significant opposition encountered, the motions practice and discovery that have been recorded in this case, and the fact that counsel have risked several years on a case that would yield them nothing if they lost at or before trial. *See In re T-Mobile,* 111 F.4th at 862 (discussing *In re Visa Check/Mastermoney Antitrust Litig.,* 297 F. Supp. 2d 503, 522 (E.D.N.Y. 2003), approving an award with a lodestar multiplier of 3.5 for similar work).

Counsel for both parties were able to come to a comprehensive, fair, and reasonable settlement that affords the class adequate relief as required by Rule 23(e). The requested fee award is reasonable and not a windfall. *See* Rule 23(h); *In re T-Mobile,* 111 F.4th at 862. The costs requested, totaling $65,000, are well-supported and reasonable. *See* filing 170 at 15. The most significant costs came from the plaintiff's share of mediation fees, which resulted in the approved settlement; the remaining costs consist of mailing and filing fees. *Id.* Additionally, the Court finds that the proposed service award for each of the twenty-seven named plaintiffs, $1,500 (for a total of $40,500), is reasonable given each plaintiffs' involvement in this case. *See* filing 169 at 24-25; filing 170 at 15-16. The plaintiffs' motion will be granted in full, and this case will be dismissed.

IT IS ORDERED:

1.  The plaintiffs' motion for final approval of class action settlement (filing 165) is granted.

10

2. The plaintiffs' motion for attorney's fees, costs, and service awards (filing 168) is granted.

3. The settlement agreement (filing 110-1) is approved in all respects, and the parties are directed to carry out the settlement agreement in accordance with all of its terms and provisions, including the termination provisions. Unless otherwise noted, the Court generally adopts the definitions contained therein for purposes of this Order.

4. Pursuant to Rule 23, for settlement purposes only, this action is certified as a class action, and the settlement class is certified, defined as: "All Persons in the United States whose Personal Information was compromised in the Data Security Incident," as those terms are defined in the settlement agreement. Excluded from the class are:

   a. The Settling Entities, any Person in which the Settling Entities have a controlling interest, and the Settling Entities' officers, directors, legal representatives, successors, subsidiaries, and assigns;

   b. Any judge, justice, or judicial officer presiding over this action and the members of their immediate families and judicial staff;

11

c. Any Person who timely and validly opted out of the Settlement, whose names are listed in Attachment 1 (*see* filing 172 at 4); and

d. Any Person found by a court of competent jurisdiction to be guilty under criminal law of initiating, causing, aiding, or abetting the Data Security Incident or who pleads guilty or *nolo contendere* to any such charge.

5. Ian Scott, Jessica Alexander, Pamela Bump, Bridget Cahill, Lesly Canales, Melissa Charbonneau, Douglas Conley, Noah Helvey, Dallin Iler, Dustin Jones, Kayli Lazarz, Brittni Linn, Delilah Oliveira, Devinne Peterson, Eric Polanco, Justin Randall, Sofia Rodriguez, Joshua Sanchez, Charles Sangemeister, William Spearman, Taylor Vetter, Rachel Woods, Garner J. Kohrell, Olivia Covington, Alexis Luna, MaKayla Nelson, and Mary Traynor are, for settlement purposes only, designated as the settlement class representatives.

6. Lowey Dannenberg, P.C., and Silver Golub & Teitell LLP are appointed as settlement class counsel.

7. Within the time periods set forth in the settlement agreement, the settlement benefits provided for in the agreement shall be paid to the class members submitting valid claim forms, pursuant to the terms and conditions of the settlement agreement.

12

8. The plaintiffs and the releasing parties are bound by the settlement agreement and this final approval order and judgment, and the action and the released claims against any of the released parties, as provided under the settlement agreement, are hereby dismissed with prejudice and released.

9. All settlement class members and their legally authorized representatives, unless they have submitted a timely and valid request to opt out from the settlement class are hereby enjoined

   a. from filing, commencing, prosecuting, intervening in, or participating as a plaintiff, claimant, or class member in any other lawsuit or administrative, regulatory, arbitration, or other proceeding in any jurisdiction based on the Released Claims;

   b. from filing, commencing, or prosecuting a lawsuit or administrative, regulatory, arbitration, or other proceeding as a class action on behalf of any Settlement Class Members (including by seeking to amend a pending complaint to include class allegations or seeking class certification in a pending action), based on the Released Claims; and

   c. from attempting to effect an opt-out of a group, class, or subclass of individuals in any lawsuit or administrative,

13

regulatory, arbitration, or other proceeding based on the Released Claims.

10. Nothing in this Order or the Settlement Agreement shall be construed as, or used as an admission by or against, the Settling Entities of any fault, wrongdoing, or liability on the part of the Settling Entities or of the validity or certifiability for litigation of any claims.

11. The class representatives are each awarded a service award in the amount of $1,500, to be paid out of the Settlement Fund in accordance with the Settlement Agreement.

12. Class counsel are awarded attorneys' fees in the amount of $3,333,333.33, and costs and expenses in the amount of $65,000. Such amounts shall be paid by the settlement administrator pursuant to and consistent with the terms of the settlement.

13. The Court reserves exclusive jurisdiction over the implementation and enforcement of the Settlement Agreement, the Settlement contemplated thereof, and over the enforcement of this Final Approval Order and Judgment. The Court also retains exclusive jurisdiction to resolve any disputes that arise out of or relate to the Settlement Agreement, the Settlement, or the Settlement Fund, to consider or approve administration costs and fees, including but not limited to fees and expenses incurred to administer

14

the Settlement after the entry of the Final Approval Order and Judgment, to consider or approve the amounts of distributions to Class Members, and to approve any potential cy pres distribution.

14. This action is dismissed with prejudice.

15. A separate judgment will be entered.

Dated this 21st day of May, 2026

BY THE COURT:

John M. Gerrard
Senior United States District Judge